


FILED
CLERK, U.S. DISTRICT COURT
DEC 13 2012
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY



LORI E. PEGG (SBN 129073)
DANNY CHOU (SBN 180240)
Danny.Chou@cco.sccgov.org
KAVITA NARAYAN (SBN 264191)
Kavita.Narayan@cco.sccgov.org
Office of the County Counsel
County of Santa Clara
70 West Hedding Street, 9th Floor
San Jose, California 95110
Tel: (408) 299-5930
Fax: (408) 292-7240

ERIC R. HAVIAN (SBN 102295)
erh@pcsf.com
STEPHEN HASEGAWA (SBN 198472)
ssh@pcsf.com
EDWARD H. ARENS (SBN 259155)
eha@pcsf.com
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, California 94105
Tel: (415) 836-9000
Fax: (415) 836-9001

Attorneys for Intervenor COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA, et al., ex rel. DAVID SHERWIN,

Plaintiffs,

v.

OFFICE DEPOT, INC., a Delaware corporation,

Defendant.

Case No. 2:12-cv-09952-R-(CW)
Hon. Manuel L. Real

**COMPLAINT-IN-INTERVENTION OF COUNTY OF SANTA CLARA**

(1) Violation of False Claims Act, Cal. Gov't Code §§ 12650 et seq.
(2) Breach of Contract
(3) Fraud

**JURY TRIAL DEMANDED**

Date: N/A (no hearing required)

Pursuant to section 12652(c)(8)(E) of the California Government Code, Plaintiff County of Santa Clara (the "County"), having intervened in this action, hereby alleges as follows:

1. The County incorporates by reference the Corrected First Amended Complaint of *Qui Tam* Plaintiff David Sherwin, filed on January 20, 2012 (the "*Qui Tam* FAC").

2. This is an action to recover damages and civil penalties arising from false claims made by defendant Office Depot, Inc. ("Office Depot" or "Defendant") in violation of the California False Claims Act ("CFCA"), Cal. Gov't Code § 12650 *et seq.*

**I. INTRODUCTION**

3. The U.S. Communities Government Purchasing Alliance ("U.S. Communities") is a nonprofit organization that maintains a variety of procurement contracts for the purchase of goods and services by state and local public entities. U.S. Communities selects "lead" public entities to negotiate and manage the contracts with various suppliers. By agreement with the lead entity and the supplier, U.S. Communities then extends the terms of the lead entity's contract to each of its members, through an "administrative agreement" between itself and the supplier. State and local public entities nationwide participate in U.S. Communities to lighten their contracting burden, and because they believe U.S. Communities' contracts provide them with the best prices and terms available.

4. U.S. Communities' largest contract is a supply contract for office and stationery supplies and products (the "USC contract"). From 1996 to 2010, the USC contract was negotiated and managed by the County of Los Angeles ("L.A. County"), which acted as the lead public entity. Public entities nationwide could adopt or subscribe to the USC contract by virtue of an administrative agreement between U.S. Communities and Office Depot. Over the life of the USC contract, hundreds or thousands of state and local public entities, including the County,

bought their office supplies from Office Depot pursuant to the USC contract's terms. The USC contract was Office Depot's largest individual contract.

5. The USC contract included a guarantee that all public entities participating in the USC contract, including the County, would receive Office Depot's "most favored public entity" pricing.

6. Since being awarded the USC contract, however, Office Depot negotiated contracts with public entities outside U.S. Communities at prices lower than those in the USC contract. Under the "most favored public entity" terms of the USC contract, Office Depot was required to incorporate those more favorable prices into the USC contract immediately. Office Depot failed to incorporate the lower prices, however, because it wanted to win new business without giving up the extra revenue it was receiving through the USC contract's higher prices. Office Depot's failure to incorporate the more favorable prices into the USC contract resulted in millions of dollars in overcharges to the County.

7. Office Depot also engaged in various other fraudulent conduct through which it overcharged the County, including overstating its costs for certain items, which allowed it to charge the County its minimum "floor" price for those items, when it fact it should have charged the County its normal fixed discount price. To overstate the cost of an item, Office Depot both padded its invoiced cost from the manufacturer with other costs, and failed to factor in any manufacturer rebates it had received for the item.

8. Next, Office Depot increased its list prices in violation of the USC contract. The USC contract restricts Office Depot to raising its prices only twice a year. Moreover, it sets many prices based on the manufacturer's (not Office Depot's) "list" price. Office Depot, however, knowingly increased its prices more than twice a year by manipulating the list price of its private label brand products for which it was the manufacturer and thus controlled the list price. Office Depot's prices for various private-label brand items sometimes increased daily on its website

for USC contract customers. Moreover, Office Depot replaced items sold under third party brands, whose list prices it could not manipulate, with its private-label brand items, whose list prices it could increase.

9. Finally, Office Depot improperly discontinued items on the USC contract's heavily discounted "core" list, knowing that the County would be forced to order the same items at the contract's more expensive discounted wholesale price.

10. Through each of these fraudulent schemes, described in detail below, Office Depot overcharged the County by several million dollars.

## II. PROCEDURAL BACKGROUND

11. On March 20, 2009, *Qui Tam* Plaintiff David Sherwin ("Relator") filed a Complaint pursuant to the California False Claims Act, Cal. Gov't Code §§ 12650-12655, seeking to recover damages and civil penalties arising from Defendant's actions in presenting, or causing to be presented, false claims, and Defendant's actions in presenting, or causing to be presented, false records and statements to the County and other governmental entities (the "*Qui Tam* Action"). Relator filed the *Qui Tam* FAC on January 20, 2012.

12. By notice filed August 19, 2011, the County intervened in the *Qui Tam* Action. *See* Cal. Gov't Code § 12652(c)(8)(E). The County incorporates the *Qui Tam* FAC and all of its allegations by reference herein. As to allegations in the *Qui Tam* FAC based on non-documentary evidence, the County incorporates those allegations herein upon information and belief.

## III. PARTIES

13. The County of Santa Clara is a political subdivision of the State of California, governed by the statutes of the State of California and the Charter of the County of Santa Clara, with the power to sue and be sued. The County purchased supplies from Office Depot under the terms of the USC contract.

14. The Relator is David Sherwin, a resident of Florida. The County is informed and believes, and therefore alleges, that Relator was employed by Office

Depot as an Account Manager III in its Business Solutions Division ("BSD") from 1996 to April 11, 2008. The County is informed and believes, and therefore alleges, that as an Office Depot Account Manager III, Relator personally handled the accounts for numerous school districts, cities, and counties.

15. Defendant Office Depot is a Delaware corporation with headquarters at 6600 North Military Trail, Boca Raton, Florida 33496. Office Depot is a national supplier of office products and services. It has two business segments in North America: the Retail Division and BSD. BSD sells both nationally-branded and private-label office supplies, including general supplies (*e.g.*, pens and pencils), paper, technology products, and office furniture. It sells these products directly to customers through catalogs and the Internet, as well as by entering into supply contracts with large and medium-sized customers. BSD's contract customers include state and local public entities. From 1995 to 2011, BSD conducted business with many of these public entities, including County, pursuant to the USC contract, which was its single largest contract.

## IV. JURISDICTION AND VENUE

16. This Court has jurisdiction over the Qui Tam Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

17. The Court has personal jurisdiction over Defendant because Defendant conducts business in the State of California and sells office products to various California agencies and political subdivisions.

18. Venue is proper in accordance with 28 U.S.C. § 1441(a) because this district and division embrace the place in which the Qui Tam Action was pending prior to removal under 28 U.S.C. § 1453.

## V. THE COUNTY'S SUPPLY CONTRACTS WITH OFFICE DEPOT

19. U.S. Communities is a nonprofit instrumentality of government designed to assist government agencies and educational institutions in making purchases of products and services. It is headquartered in Walnut Creek, California.

Its Advisory Board is made up of purchasing officials from various local government agencies across the United States. The founding co-sponsors of U.S. Communities are the National Association of Counties, National League of Cities, Association of School Business Officials International, the United States Conference of Mayors and the National Institute of Governmental Purchasing.

20. All U.S. Communities contracts are competitively solicited by a lead public entity. The lead public entity negotiates the terms of the contract on behalf of all other U.S. Communities members, pursuant to state joint powers agreements. *See, e.g.*, Cal. Gov't Code §§ 6500, 6502 ("Two or more public agencies by agreement may jointly exercise any power common to the contracting parties"). These members include more than 31,000 public entities throughout the United States, who use various U.S. Communities contracts and suppliers to procure over a billion dollars annually in goods and services.

21. One of the contracts that U.S. Communities offers to its members is the USC contract. U.S. Communities members order approximately $700 million worth of materials each year under the USC contract, making it easily the largest individual office supplies contract in the country.

22. At all relevant times, L.A. County served as the lead public entity that solicited and executed the USC contract with Office Depot on behalf of U.S. Communities. L.A. County awarded the initial USC contract to Office Depot in 1995. L.A. County again awarded the USC contract to Office Depot in 2001 pursuant to Master Agreement No. 41421, which expired on January 1, 2006. In 2005, L.A. County awarded Office Depot the USC Contract pursuant to Master Agreement No. 42595, effective January 2006. Master Agreement No. 42595 expired on January 1, 2011 and was not renewed.

**A. U.S. Communities Master Agreement No. 42595**

23. On November 8, 2005, L.A. County issued Master Agreement No. 42595 for Office and Stationery Supplies and Products to Office Depot on behalf of

U.S. Communities, and the contract became effective on January 2, 2006 ("2006 Contract"). *See* Exhibit 1, incorporated herein. The 2006 Contract expired on January 1, 2010 with a provision for two one-year extensions. *See id.* at ¶5.2.1. L.A. County exercised the first extension (through January 1, 2011) but declined to exercise the second extension, instead re-bidding the contract in 2010. L.A. County did not award the new contract to Office Depot.

24. The 2006 Contract designated U.S. Communities as "the agency to provide administrative services related to purchases by other governmental entities ... under this Agreement." *Id.* at ¶36.0.

25. In the 2006 Contract, Office Depot agreed to offer the L.A. County its lowest prices offered to governmental entities within California. The cover page to the 2006 Contract contained a best price guarantee, which provided in full:

> PRICE GUARANTEE: Unless otherwise provided herein, prices are maximum for the period of this agreement. In the event of a price decline, or, should you at any time during the life of this agreement sell the same material or service under similar quantity and deliver conditions to the State of California, or legal district thereof, or to any county or Municipality within the State of California at prices below those stated herein, you will immediately extend such lower prices to Los Angeles County.

Exhibit 1.

26. In addition, the 2006 Contract contained a "Most Favored Public Entity" clause, which in full provided:

> VENDOR represents that the price charged to COUNTY in this Agreement do [sic] not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under

> similar terms and conditions. If VENDOR'S prices decline, or should VENDOR, at any time during the term of this Master Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in this Master Agreement, then such lower prices shall be immediately extended to COUNTY.

Exhibit 1, at ¶23.0.

27. An identical "Most Favored Public Entity" clause had been a provision of Master Agreement No. 41421. In the course of negotiating that contract with L.A. County, Office Depot proposed an exception to the Most Favored Public Entity clause that would have limited the clause to Office Depot's lowest terms for comparably-sized customers *excluding* governmental agencies. L.A. County rejected this exception, and it did not become part of Master Agreement No. 41421 or Master Agreement No. 42595.

28. In addition to these provisions, Office Depot signed nationwide "Supplier Commitments" as part of its bid to L.A. County and of its administrative agreement with U.S. Communities. The Supplier Commitments were signed by BSD Vice President for Government and Education Robert Cetina, the same Office Depot executive who signed Master Agreements No. 41421 and 42595. As a condition of its continued partnership with U.S. Communities, Office Depot signed the following "Pricing Commitment":

> U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a

federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.

Exhibit 2, incorporated herein, at 2. In affirming the Supplier Commitments, Office Depot acknowledged that they are "the foundation of the relationship between U.S. Communities and its suppliers." *Id.* Additionally, Office Depot agreed to U.S. Communities' "Public Agency Solicitation Response Guidelines," confirming that it would respond to any bid or request for proposal from a public agency (outside the USC contract) by offering pricing that was either higher or the same as its USC contract pricing. Office Depot affirmed that "[i]f competitive conditions require[] pricing lower than the standard U.S. Communities contract pricing, the supplier can submit lower pricing *through the U.S. Communities contract.* If successful the sales would be reported under U.S. Communities." Exhibit 2, at 5 (emphasis added). These Supplier Commitments, which were part of L.A. County's contract solicitation, were incorporated by reference in the 2006 Contract. Exhibit 1 at 12-13, ¶ 1.1.

29. The 2006 Contract also incorporated by reference L.A. County's Request for Proposal ("RFP"). Exhibit 1 at 12-13, ¶ 1.1. L.A. County's RFP included the Supplier Commitments described above and three additional relevant provisions. Paragraph 22 of the RFP's Terms and Conditions of Purchase read:

MOST FAVORED CUSTOMER: Vendor represents that the prices charged County in this Purchase Order do not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions.

Paragraph 16 of the RFP's bidders' instructions read, in relevant part:

If prices decline, or should vendor at any time during the life of said agreement sell the same materials or service under similar quantity and delivery conditions to the State of California, or any county, municipality or legal district of the State of California at prices below those quoted herein,

such lower prices shall be immediately extended to the County of Los Angeles.

(All-caps formatting omitted.) Finally, Attachment E to the RFP repeated the Supplier Commitments described above and, at Paragraph 2.0, stated that a supplier's "commitment to guarantee lowest government pricing" was a "minimum qualification" for bidders.

30. The 2006 Contract contained five pricing schedules. The first two schedules appeared at Exhibits A and A-1 to the agreement. In general, under the two schedules, the contract provided for fixed prices for specific items identified as "core" products, and for specified discounts off of its published list prices, subject to a 15% gross profit ("GP") floor for all other items (*i.e.*, "non-core" items). *See* Exhibit 1, at ¶6.2.1. Most items identified as "non-core" products were priced at a 45% discount from Office Depot's supplier catalog, subject to a 15% GP floor, at a 70% discount off Office Depot's Frequently Ordered Products ("MFOI") catalog, again subject to a 15% GP floor, or at a 10% discount from Office Depot's wholesale catalog. Certain "non-core" products, such as technology and paper products, were priced at Office Depot's cost plus a gross margin ("GM") percentage.

31. The County purchased supplies from Office Depot pursuant to the pricing schedules set forth in Exhibits A and A-1 of the 2006 Contract.

32. The 2006 Contract provided that "Price changes (increases) from price lists will be allowed only on a semi-annual basis on January 1st and July 1st of each contracting year." Exhibit 1, at ¶6.2.1. Moreover, it stated that Office Depot "shall advise [L.A. County] in writing of any proposed price increases or manufacturer's discount structure changes." *Id.* at ¶6.2.2.

33. In March 2006, the 2006 Contract was amended to include a rebate structure giving customers up to a 5% volume rebate. *Id.* at 41 (Amendment 01). In May 2006, the rebate structure was amended to offer high-volume customers a

choice between the rebate and an increased discount on some or all items. *Id.* at 40 (Amendment 02).

34. In March 2009, the 2006 Contract was amended to replace the five pricing schedules with a single pricing schedule. Under the new pricing schedule, the prices for all products listed in Office Depot's supplier catalog were fixed, with core products identified as "best value" items. Products not listed in Office Depot's supplier catalog were priced at a 10% discount off the list price shown on Office Depot's website on the date of purchase. The prices in Office Depot's supplier catalog were fixed for a set period depending on the product. Core products were subject to annual price changes on January 1 of each year, with Office Depot required to provide 60 days' written notice of any changes. Most non-core products were subject to price changes semi-annually on January 1 and July 1 of each year, with the same written notice requirement. (Paper, ink, and toner were subject to more frequent price changes, with 30 days' written notice required.)

**B. The County Purchased Supplies from Office Depot Under the USC Contract**

35. Office Depot sold office supplies to the County from April 1, 2007 to January 1, 2011 pursuant to the terms of the USC contract.

36. The County's contracting policies contain a competitive bidding requirement for supply contracts worth over $100,000. The competitive bidding requirement contains a limited exemption, however, for purchases made from another government agency, including purchases made under a contract that was competitively awarded to a third party by another government agency, provided the contract's prices are fair and reasonable. The USC contract is a contract awarded competitively by a governmental agency to a third party within the meaning of this exemption.

37. Beginning on April 1, 2007, County purchased office supplies from Office Depot under the terms of the 2006 Contract. The County adopted the 2006

Contract without competitive bidding, in accordance with the County's governmental agency exemption.

38. On April 3, 2007, the County notified Office Depot that it intended to award Office Depot a contract incorporating the prices and discount terms of the USC contract. A little over a year later, on June 19, 2008, the County executed Contract No. 5500001618 (the "County Contract") with Office Depot, with an effective date of April 1, 2007. *See* Exhibit 3, incorporated herein.

39. The County Contract contains a Most Favored Public Entity provision:

> Contractor represents that the price charged to County in this Agreement do [*sic*] not exceed existing selling prices to other customers for the same and substantially similar items or services for comparable quantities under similar terms and conditions.

Exhibit 3, at ¶12.1.

> If Contractor's prices decline, or should Contractor, at any time during the term of this Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in this Agreement, then such lower prices shall be immediately extended to County.

*Id.* at ¶12.2.

40. Office Depot's employees represented to the County at all relevant times that the County's purchases were processed pursuant to the pricing provisions of the USC contract.

## VI. SUPPLEMENTAL FACTUAL ALLEGATIONS

41. Between April 1, 2007 and January 1, 2011, Office Depot knowingly violated its contract with the County through a variety of underhanded pricing practices, including without limitation the following:

- First, Office Depot entered into office supply contracts with public entities outside the USC contract at prices lower than those in the USC contract, and intentionally did not extend those lower prices to the County as was required under the USC contract and the County Contract, which incorporated the USC contract's "Most Favored Public Entity" provision and Office Depot's "Pricing Commitment" to U.S. Communities.
- Second, Office Depot routinely charged the County the supposed minimum price set by the 15% GP floor, rather than the 45% or higher discount from list pricing, by misrepresenting that its cost for the item, and hence the GP floor, was higher than it actually had been. Thus, the County regularly paid Office Depot a fraudulently inflated "minimum" price rather than the appropriate discounted price.
- Third, Office Depot intentionally did not apply manufacturer rebates either to its list price or to its cost when calculating the GP floor, thereby causing the County to pay a higher price under both the discounted price and the alternative minimum (GP floor) price.
- Fourth, Office Depot regularly increased its prices, and did so on more than two occasions annually (sometimes daily), in knowing violation of the USC contract and County Contract, which allowed price changes only on January 1 and July 1 of each year.
- Fifth, Office Depot overcharged the County by improperly discontinuing core list items so that future orders for those items, which were previously priced at heavily discounted core list prices, would

now be priced at only a 10% discount off the wholesale catalog list price.

**A. Office Depot Knowingly Overcharged the County By Not Offering It Its Guaranteed "Most Favored Public Entity" Prices**

42. Office Depot defrauded the County by charging it higher prices than the prices it offered to certain other governmental entities in California, despite promising in the USC Contract and County Contract, as well as the signed "Pricing Commitment" to U.S. Communities incorporated in the contract, that it would provide the County with its "Most Favored Public Entity" pricing. Office Depot knew it was offering other government customers significantly better prices than it was offering the County, but chose not to report those better prices to L.A. County or the County, or to otherwise extend them to the USC contract or the County Contract, both in knowing violation of its contractual obligations. As a result, the County overpaid Office Depot by millions of dollars for office supplies.

43. As described above, the USC contract contained several clauses guaranteeing L.A. County, and by extension County, Office Depot's best pricing available to any public entity in California (the "MFPE provision"). *See* ¶¶25–28.

44. Notwithstanding these promises, Office Depot entered into at least two contracts with California public entities – the City and County of San Francisco and the City of Berkeley – that offered pricing more favorable than that in the USC contract and County Contract. At the time it entered into the contracts, Office Depot knew it was obligated to extend the new contracts' lower prices to the USC contract. In both cases, however, Office Depot knowingly failed to incorporate the lower prices into the USC contract. Office Depot additionally failed to incorporate the lower prices into the County Contract.

**1. Office Depot's Contract with the City and County of San Francisco**

45. In August 2004, the City and County of San Francisco, California ("San Francisco") issued Contract Proposal No. 96703 for office supplies and

related services. The term of the proposed contract was November 1, 2004 to April 30, 2007. The contract proposal included a bid sheet consisting of two sections. Section A covered specific core items (called "contract items" in the San Francisco contract, but referred to herein as "core items" for ease of comparison to other contracts) whose historical usage represented 55% of the San Francisco's total. The bid sheet called out each item by manufacturer number and sought the bidder's fixed price for that item (or an alternative) for the contract term. Section B covered non-core items (called "non-contract" items in the San Francisco contract, but referred to as "non-core items" herein), which the bid sheet defined as "all items not represented in Section A [*i.e.*, not represented on the core item list] or 45% of total spend." Section B called for non-core items to be priced at discount percentages. It stated that

> A Gross Margin "floor," as defined as a minimum gross margin on the item after discount applied, will only be accepted as a minimum gross margin on the item after application of discount off list. Any vendor either imposing a "floor" above cost after submittal will automatically disqualify the vendor from an award or accordingly be subject to immediate termination of the contract.

46. The Section B bid sheet identified sixteen categories with a total list price of $4,181,135 based on San Francisco's 2003 off-contract purchases. The bid sheet sought the bidder's discount percentage off the stated manufacturer's list price for each category.

47. Office Depot submitted a bid to San Francisco, including completed Section A and B bid sheets. *See* Exhibit 4, incorporated herein (Office Depot's bid and San Francisco's contract acceptance); Exhibit 5, incorporated herein (Section A

and B bid sheets). San Francisco accepted Office Depot's bid on January 5, 2005. *See* Exhibit 4.

48. Under its contract with San Francisco, Office Depot agreed to fixed prices for the items on San Francisco's contract list (Section A). *See* Exhibit 5. For most non-core items (Section B), Office Depot offered discounts of 70-72% off the manufacturer's list price. *See id.* For non-core art supplies and office furniture, these discounts were 45-50% of the manufacturer's list price. *See id.*

49. Office Depot's contract with San Francisco did not employ gross profit or gross margin floors. On November 23, 2004, while San Francisco was evaluating Office Depot's bid, Office Depot Regional Sales Director Patrick Welch clarified to San Francisco's Assistant Director of Purchasing that "Relative to your questions concerning the use of gross margin floors in our price offering, I reiterate that Office Depot has not utilized gross margin floors in our price offering."

**2. Office Depot's Contract with the City of Berkeley**

50. In approximately June 2006, Office Depot responded to a request for proposal from the City of Berkeley, California ("Berkeley") for the procurement of office supplies. *See* Exhibit 6, incorporated herein. Similar to the USC and San Francisco contracts, Office Depot's bid priced core and non-core items differently. Core items received fixed pricing while non-core items received "an overall 55% mixed discount structure from our current BSD catalog's Manufacturer's Suggested List Price." *See id.* In a signed letter from Office Depot Account Manager Earl Ante to Berkeley's Finance/Purchasing Department, Office Depot specified that its mixed discount structure calculated the discounts "on the average blended discount of manufacturers list price," whereby "[s]ome items within the [non-core] categories may reflect a higher than 55% discount while other items may be less." *Id.* Office Depot provided Berkeley with the particular line-item discounts it would provide for non-core items.

51. Office Depot also offered Berkeley a 1% rebate on orders placed through its website.

52. Berkeley accepted Office Depot's bid in approximately July 2006, with the contract to run from 2007 to 2009.

**3. Office Depot's Contracts with San Francisco and Berkeley Provided Those Entities With Lower Prices than those Provided to the County**

53. Office Depot offered San Francisco and Berkeley substantially lower prices than it offered to the County. Under its contract with the County and its commitments to U.S. Communities, Office Depot was required to immediately extend those more favorable prices to the County. Office Depot knowingly failed to do so. Consequently, Office Depot defrauded the County by the difference between the lower prices it charged to San Francisco or Berkeley and the higher prices it charged to the County for the same or equivalent items.

54. As described above, the USC contract and County Contract generally call for a 45% discount, with a 15% GP floor, for non-core items. San Francisco, meanwhile, received non-core item discounts of 45% *minimum*, with most products discounted at 70-72%, and no GP floor. Berkeley, furthermore, received discounts on non-core items at an average blended rate of 55%, also with no GP floor. Most non-core items purchased under the USC contract would have received lower prices under the San Francisco and Berkeley contracts, either because of the more favorable discount structures for non-core items under those contracts or, in some cases, because those items were entitled to low core-item pricing under the San Francisco and Berkeley core item lists.

55. Records of the County's purchases from Office Depot, which reflect Office Depot's actual claims for payment from the County for purchases under the USC contract, confirm that Office Depot overcharged the County by failing to extend the pricing under the San Francisco and Berkeley contracts to the County. These records document thousands of purchase transactions made by the County

under the USC contract. Below are representative examples showing how Office Depot overcharged the County relative to San Francisco and Berkeley. Each transaction set forth below identifies an actual transaction between Office Depot and the County under the USC contract (and describes the County's actual payments under each transaction, pursuant to actual claims for payment that Office Depot submitted to the County), the prices for the same item at the same time under the San Francisco and Berkeley contracts, and the percentage by which the price actually charged to the County exceeded the price for the item under the San Francisco and Berkeley contracts.

**a) Toner Items**

56. The USC contract, County Contract, San Francisco contract, and Berkeley contract all include toner products among their non-core items. The USC contract and County Contract priced "toner items" at 45% off the manufacturer's list price with a 15% GP floor or at 10% off Office Depot's wholesale catalog. Office Depot's contract with San Francisco priced "toner, ink & ribbons" at 71% off the manufacturer's list price. Office Depot's contract with Berkeley priced "toner, ink & ribbons" at the 55% average blended discount. Office Depot's sales records for the County demonstrate the price differences for each of these discounts:

| Date | Product Description | Quantity Sold | List Price | Price Charged to Santa Clara County | San Francisco Contract Price | Difference from San Francisco Contract Price | Berkeley Contract Price | Difference from Berkeley Contract Price |
|---|---|---|---|---|---|---|---|---|
| Apr-07 | INK,CARTRIDGE,DESIGNJET,C | 10 | $40.32 | $26.30 | $11.69 | 56% | $18.14 | 31% |
| Oct-07 | CARTRIDGE,LASER,HP Q5942X | 5 | $314.82 | $202.66 | $91.30 | 55% | $141.67 | 30% |
| Nov-07 | CARTRIDGE,HP,LJ,4250/4350 | 5 | $207.76 | $133.74 | $60.25 | 55% | $100.00 | 25% |

**b) Paper Products**

57. Office Depot also overcharged the County for paper products under the USC contract and County Contract. The USC contract and County Contract priced paper at cost plus 17% GM from the manufacturer's catalog, cost plus 25% from Office Depot's wholesale catalog, or cost plus 17% GM from Office Depot's

frequently-ordered products ("MFOI") catalog. By contrast, Office Depot's contract with San Francisco priced paper products at 72% off the manufacturer's list price, while the Berkeley contract priced paper products at its 55% average blended discount. Applying those terms to the County's purchasing records shows the following:

| Date | Product Description | Quantity Sold | List Price | Price Charged to Santa Clara County | San Francisco Contract Price | Difference from San Francisco Contract Price | Berkeley Contract Price | Difference from Berkeley Contract Price |
|---|---|---|---|---|---|---|---|---|
| Jan-08 | NOTEBOOK,OUTLNK,8.5X11 | 1 | $25.89 | $17.51 | $7.25 | 59% | $11.65 | 33% |
| Oct-07 | NOTE,OD,3" X 3",18/PK,YEL | 10 | $19.19 | $10.55 | $5.37 | 49% | $8.64 | 18% |
| Aug-07 | NOTE,OD,3" X 3",18/PK,YEL | 10 | $19.19 | $10.55 | $5.76 | 45% | $8.64 | 18% |
| Oct-07 | NOTE,OD,1.5"X2",12PK,YELL | 20 | $7.16 | $3.94 | $2.15 | 45% | $3.22 | 18% |

### c) Technology

58. Technology products are non-core items under the USC contract, County Contract, San Francisco contract, and Berkeley contract. The USC contract and County Contract priced "technology products" at Office Depot's cost plus a 13% GM from the manufacturer's list price, or alternately at cost plus a 22% GM from the wholesale catalog. For MFOI catalog (*i.e.*, frequently ordered) items, the price was Office Depot's cost plus a 13% GM. Meanwhile, Office Depot offered "technology" products to San Francisco at 71% off the manufacturer's list price, and to Berkeley at its 55% average blended discount. Those discounts, applied to Office Depot's sales records to the County, show that the County was overcharged:

| Date | Product Description | Quantity Sold | List Price | Price Charged to Santa Clara County | San Francisco Contract Price | Difference from San Francisco Contract Price | Berkeley Contract Price | Difference from Berkeley Contract Price |
|---|---|---|---|---|---|---|---|---|
| 14-Jan-08 | DRIVE,FLASH,4GB,ATIVA,BLU* | 30 | $79.99 | $79.99 | $23.20 | 71% | $36.00 | 55% |
| 10-Jan-08 | HEADSET,WIRELESS,CS50* | 6 | $299.99 | $269.99 | $87.00 | 68% | $135.00 | 50% |
| 10-Jan-08 | MOUSE,OPTICAL,WIRELESS,50 | 2 | $49.99 | $29.99 | $14.50 | 52% | $22.50 | 25% |

### d) General Supplies

59. The USC contract, County Contract, San Francisco contract, and Berkeley contract each include general supplies among their non-core items. The

USC contract priced "general office supplies" at 45% off the manufacturer's list price with a 15% GP floor, at 10% off Office Depot's wholesale catalog, and at 70% off the manufacturer's list price with a 15% GP floor for items ordered from the MFOI catalog. Office Depot's contract with San Francisco lacked a separate category for "general supplies," but priced corresponding items, such as binders, calendars, labels, and pens and pencils, at either 70% or 71% off the manufacturer's list price. The Berkeley contract, meanwhile, priced such general supplies at the 55% average blended discount. Office Depot sales records for the County show that the County was substantially overcharged for general supplies:

| Date | Product Description | Quantity Sold | List Price | Price Charged to Santa Clara County | San Francisco Contract Price | Difference from San Francisco Contract Price | Berkeley Contract Price | Difference from Berkeley Contract Price |
|---|---|---|---|---|---|---|---|---|
| | **PLANNERS/CALENDARS** | | | | | | | |
| Nov-08 | WALL,MTHLY,20X30,W/CR | 25 | $24.49 | $13.47 | $7.35 | 45% | $11.02 | 18% |
| Sep-08 | CALENDAR,OD,DSKPD,RY,22X1 | 3 | $3.59 | $2.56 | $1.08 | 58% | $1.62 | 37% |
| Nov-08 | PLNR,WB,WKLY,81/4X107/8,B | 2 | $21.49 | $11.82 | $6.45 | 45% | $9.67 | 18% |
| | **BINDERS** | | | | | | | |
| Apr-07 | BINDER,CAMBRIDGE CITY,ZIP | 1 | $18.30 | $10.08 | $5.49 | 46% | $8.24 | 18% |
| Jan-08 | BINDER,DP,WPSBD,14-7/8X11 | 12 | $9.36 | $5.62 | $2.81 | 50% | $4.21 | 25% |
| | **LABELS** | | | | | | | |
| Sep-07 | LABEL,LSR,ADDR,WHT,3000CT | 20 | $43.26 | $18.54 | $12.98 | 30% | $7.35 | 60% |
| Jun-08 | LABEL,LSR,ADDR,WHT,3000CT | 35 | $43.26 | $18.54 | $12.98 | 30% | $7.35 | 60% |
| Oct-08 | LABEL,LSR,ADDR,WHT,3000CT | 30 | $44.56 | $18.54 | $13.37 | 28% | $7.35 | 60% |

60. The above examples, which are drawn from Office Depot's actual claims for payment from the County, are representative of the overcharges paid by the County for the duration of the USC contract. Although the San Francisco and Berkeley contract pricing models might occasionally have resulted in higher prices for some individual items than the USC contract, the aggregate difference between the pricing models employed in the San Francisco and Berkeley contracts and the pricing model employed in the USC contract over their common time period results in a substantial overcharge to the County.

61. Office Depot knew the prices it offered to San Francisco and Berkeley were significantly lower than those it offered to the County. Under Office Depot's

corporate structure, an account manager, district manager, and regional sales director would all have had a role in negotiating the San Francisco and Berkeley contracts. Authorization to enter into the contracts would come from the Vice President for the Western Region, Pat Welch, who had overall authority over all government pricing within California, with additional oversight by the Western Region manager of Office Depot's public sector business and by Robert Cetina. Office Depot was organized so that the individuals in each of these positions were also responsible for marketing to and/or managing customers with USC contracts. Furthermore, because L.A. County was the lead public entity on the USC contract, the same senior Western Region managers who approved the USC contract and County Contract, including Pat Welch, who executed the County Contract on behalf of Office Depot, and Robert Cetina, were the ones to approve the San Francisco and Berkeley contracts.

62. Under the terms of the USC contract and County Contract, Office Depot was obligated to provide the County with its best governmental pricing. Office Depot simply ignored that obligation when it charged County in excess of that amount. Even if Office Depot interpreted the USC contract and County Contract to permit Office Depot to charge County more than it charged other governmental customers, Office Depot fraudulently misrepresented its understanding of its contractual obligations to the County through false Supplier Commitments and other false sales and marketing tactics.

63. The County entered into the County Contract with Office Depot based on the terms of the USC contract, including the "Supplier Commitments" to the USC contract, as well as Office Depot's representations about the benefits to the County of joining the USC contract. The Supplier Commitments represented that Office Depot's pricing under the USC contract was its best pricing to government customers. When marketing the USC contract to customers, Office Depot and its agents consistently represented that U.S. Communities members would receive

Office Depot's best governmental pricing, without qualification. Based on these terms and representations, the County believed when it entered into the County Contract that it would receive Office Depot's best government pricing. The Country later became aware that Office Depot, at the time it negotiated the County Contract, had existing contracts with San Francisco and Berkeley at prices lower than those in the County Contract. Office Depot's representations to the County that it would receive its best pricing to government customers were therefore false. The false representations were an essential inducement to the County's decision to enter into the County Contract with Office Depot and to purchase office supplies thereunder. Office Depot thereby fraudulently induced County to do business with Office Depot.

**B. Office Depot Inflated the 15% Gross Profit Floor Charged to Real Parties by Misrepresenting its Costs**

64. Under the 2006 Contract and the County Contract, Office Depot charged the County for non-core items at the greater of either (a) a set discount off the manufacturer's list price, or (b) Office Depot's minimum "floor" price for the items, which was its cost for the items plus 15% GP.

65. Office Depot's "cost" under the minimum floor price provision should have been calculated as what it actually paid to the manufacturer for the item sold (after factoring in all applicable rebates and discounts). The additional 15% GP above that cost was to compensate Office Depot for its operational expenses (such as transportation, overhead, and labor costs), and provide a reasonable profit margin.

66. Office Depot keeps its costs confidential and does not disclose them to customers. As a consequence, public entities have no way to compare the cost on their invoice to the price Office Depot paid the supplier for the item, because Office Depot does not divulge the price it paid. Thus, whenever Office Depot charges the customer at the GP floor, the customer must trust Office Depot to have reported its cost honestly.

67. Office Depot misrepresented its costs as a matter of course so that its GP floor price consistently exceeded its discounted list price. As a result, Office

Depot converted the "minimum" GP floor into a surcharge, added whenever the discounted list price was too low for its liking.

68. For example, if Office Depot pays a manufacturer $1.00 for a binder with a $5.00 list price in the manufacturer's catalog, the price for the binder to the customer under the USC contract is $2.75. The price is first calculated as the manufacturer's list price minus the 45% discount: $5.00 – $2.25 = $2.75. Office Depot then automatically calculates the GP floor. Under this scenario, GP would be the $1.00 cost to Office Depot plus a 15% markup, or $1.15. The $1.15 GP floor is then compared automatically to the $2.75 discounted manufacturer's list price, with the customer paying Office Depot the higher of the two prices, or $2.75. If, however, Office Depot misrepresents that it paid the manufacturer $3.00 for the binder instead of $1.00, then its GP floor becomes $3.45 ($3.00 x 1.15). The inflated amount becomes the price charged to the customer, because it exceeds the $2.75 discounted manufacturer's list price. By overstating its costs, Office Depot receives an extra 70 cents for the binder.

69. Office Depot did not always use its actual invoiced cost to compute the GP floor, instead padding the GP floor by adding in miscellaneous costs. As set forth above, the USC contract and County Contract already compensated Office Depot for its "miscellaneous costs" through the 15% margin added to its invoiced cost. Thus, the additional costs were improper. Office Depot added them for a simple reason: to inflate the GP floor until it exceeded the discounted manufacturer's list price, thereby increasing the customer's end price.

70. Such manipulations increased the County's costs substantially. On information and belief, Office Depot charged the County the GP floor price for far more items than was actually warranted. The County therefore lost much of the benefit of the fixed discounts L.A. County had negotiated.

### C. Office Depot Did Not Apply Manufacturer Rebates to its Discounted Manufacturer's List Price or When Calculating its GP Floor Price

71. Office Depot receives significant manufacturer rebates that reduce the net price Office Depot pays to its suppliers substantially. The company negotiates the rebates with manufacturers based on the dollar amount of Office Depot's purchases of their wares. For large suppliers, Office Depot may bargain for a refund of 15% or more on its purchases. Manufacturer rebates are negotiated at the highest levels of Office Depot's management, which keeps the rebate percentages confidential.

72. The USC contract's and County Contract's discount from the manufacturer's list price includes a 15% GP floor. Calculated fairly, the GP floor represents Office Depot's cost from the manufacturer plus a 15% markup that accounts for Office Depot's operational expenses. A rebate from the manufacturer affects Office Depot's cost for the item from the manufacturer, and accordingly must be applied when calculating the GP floor.

73. Office Depot excluded manufacturer rebates from its calculation of the GP floor. It therefore charged Plaintiffs a higher "minimum" price based on costs it did not fully incur. For example, if Office Depot paid $50.00 to its supplier for an item with a $100 list price, a 45% discount off list price would be $55.00, but, as a result of the GP floor, the actual sale price would be $57.50 ($50.00 cost + 15% GP, or $7.50, = $57.50). If the manufacturer gives Office Depot a 20% rebate on the item as a result of volume purchasing, however, Office Depot's cost for the item is only $40 ($50 initial cost minus $10 rebate). In that case, the price to the customer should be the discounted list price, $55.00 (45% discount off of a $100 list price), because that price is greater than the GP floor ($40.00 cost + 15% GP, or $6.00, equals $46.00 price floor). Office Depot's failure to factor the rebate into its cost calculation would result, in this example, in an overcharge of $2.50.

74. On information and belief, Office Depot's failure to apply manufacturer rebates when calculating the GP floor was a conscious decision made on a national basis by senior executives in the company's government and education business.

75. Moreover, Office Depot similarly excluded manufacturer rebates from the discounted manufacturer's list price. Thus, regardless of whether the company charged the customer under the discounted manufacturer's list price or the GP floor, it excluded its rebates from its pricing calculations.

**D. Office Depot Increased Its Prices Regularly, In Knowing Violation of the Contract**

76. The USC contract and County Contract allowed Office Depot to increase its prices on only two dates each year: January 1 and July 1. *See* ¶ 32. If Office Depot increased prices on those dates, it was required to inform L.A. County of the increases. *Id.*

77. With complete disregard for these contract terms, Office Depot increased the prices it charged to USC contract customers, including County, more than twice a year and without disclosure.

78. First, from the beginning of the USC contract Office Depot lacked a system for keeping the list prices in its catalogs firm for six-month increments. On information and belief, the company used its global pricing system for the USC contract, the same as for its other contracts. List prices changed regularly in the global system, as hundreds of suppliers intermittently changed their prices. The system did not allow Office Depot to change the price of an item in the global system while keeping the original price firm for U.S. Communities members. Thus, Office Depot contracted to hold its USC contract prices firm but used a system that could not do so. Office Depot knew its price changes were not in compliance with its contract, but viewed the contract term as burdensome and made no effort to honor it.

79. Second, Office Depot manipulated the pricing of its private-label products. Unlike products from other suppliers, Office Depot sets the list price of its private-label products, including the Office Depot, Foray, and Ativa brands. Office Depot exploited that freedom by increasing the list price of those products in modest increments repeatedly, sometimes multiple times in a week. These list price increases were unannounced and intentionally hard for customers to spot. Though they appeared on Office Depot's website, customers could not uncover the overcharges without comparing new and old invoices, which Office Depot knew its customers rarely did.

80. Office Depot understood the opportunity its private-label products represented. By the end of 2007, increasing the sales percentage of private-label products had become a major initiative of the company. Private-label products often replaced products from other suppliers on the USC contract core item list. Office Depot benefited from the increased sales of its private-label products through the USC contract because it was steadily increasing the list price of those products.

**E. Office Depot Overcharged the County For Core List Items**

81. On information and belief, Office Depot charged Plaintiffs 10% off the wholesale catalog price for core list products that should have received core list pricing, which was significantly lower than 10% off the wholesale catalog price for those products. The company accomplished this fraud by choosing not to keep the items in stock, thereby giving it a pretense for calling the items "discontinued," and removing them from the core list. Once the items were removed from the core list, Office Depot applied the wholesale price, and not the agreed-upon core item price, to the discontinued items. As a result, Office Depot reduced the City's discount significantly (while at the same time reducing Office Depot's own operational expenses, because it could have the items shipped directly from the wholesaler to the City). Office Depot discontinued the core list items solely to change the items'

pricing, not because the items were discontinued by the manufacturer or otherwise no longer available.

82. Moreover, Office Depot replaced many of the discontinued items on the core list with equivalent products from its private labels, thereby enabling it to control those items' list price. *See supra*, at ¶ 79. Thus, the customer overpaid whether it chose to order the discontinued item no longer on the core list, or the substituted private-label item on the core list.

**COUNT I**
**Violations of the California False Claims Act**
**Cal. Gov't Code §§ 12651(a)(1) and (a)(2)**

83. The County realleges and incorporates by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

84. This is a claim for treble damages and forfeitures under the California False Claims Act, Cal. Gov't Code §§ 12650 *et seq.*

85. Pursuant to Cal. Gov't Code § 12651(a)(1), through the acts described above, Defendant, its agents, employees and co-conspirators, knowingly presented and caused to be presented to officers and/or employees of the County false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval from the County.

86. Pursuant to Cal. Gov't Code § 12651(a)(2), through the acts described above, Defendant, its agents, employees and co-conspirators, knowingly made, used, and caused to be made and used false records and statements, which also omitted material facts, in order to induce the County to approve and pay false and fraudulent claims.

87. Pursuant to Cal. Gov't Code § 12651(a)(1), through the acts described above, Defendant, its agents, employees and co-conspirators, fraudulently induced the County to enter into the County Contract by representing falsely that the pricing in the USC contract was Defendant's best pricing for governmental customers, including without limitation by representing falsely in the Supplier Commitments

that Defendant's pricing "is the lowest available pricing (net to buyer) to state and local agencies nationwide."

88. The County was unaware of the falsity of the records, statements, representations, and claims made and submitted by Defendant, its agents, employees, and co-conspirators, and as a result thereof, paid money that it otherwise would not have paid, and was deprived of money, property or services, as a result of Defendant's actions.

89. By reason of the payment made by the County as a result of Defendant's fraud, the County has suffered damages in an amount to be determined at trial.

90. The County is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by Defendant.

**COUNT II**
**Violations of the California False Claims Act**
**Cal. Gov't Code § 12651(a)(8)**

91. The County realleges and incorporates by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

92. This is a claim for treble damages and forfeitures under the California False Claims Act, Cal. Gov't Code §§ 12650 *et seq.*

93. Pursuant to Cal. Gov't Code § 12651(a)(8), Defendant, its agents, employees, and co-conspirators, benefitted from inadvertent submissions of false claims, subsequently discovered the falsity of the claims, and failed to disclose the false claims to the County within a reasonable time after discovering that the claims were false.

94. By reason of Defendant's failures to disclose the false claims to the County, the County has suffered damages in an amount to be determined at trial.

95. The County is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made used or presented by Defendant.

**COUNT III**
**Breach of Contract**

96. The County realleges and incorporates by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

97. The County entered into agreements with Defendant ("the Agreements") whereby Defendant sold, and the County purchased, office supplies pursuant to the terms of the USC contract.

98. Defendant entered into agreements with U.S. Communities whereby Defendant agreed to abide by certain commitments in exchange for the right to sell office supplies to governmental entities under the USC contract (the "Administrative Agreements").

99. When it entered into the Administrative Agreements, Defendant and U.S. Communities intended the terms of the Administrative Agreements to ultimately benefit the County.

100. Accordingly, the County was an intended third-party beneficiary of the Administrative Agreements.

101. Under the terms of the Agreements and the Administrative Agreements, Defendant was obligated to provide the County with its most favored public entity prices.

102. Under the terms of the Agreements, Defendant was obligated to calculate its minimum floor price as its actual invoiced cost plus 15% GP and to factor manufacturer rebates into the actual invoiced cost.

103. As set forth above, Defendant did not provide the County with its most favored public entity pricing.

104. As set forth above, Defendant added costs to its actual invoiced cost before calculating its 15% GP and did not factor manufacturer rebates into its actual invoiced cost.

105. Accordingly, Defendant breached its obligations under the Agreements.

106. Defendant's breach of its obligations under the Agreements has proximately caused reasonably foreseeable damages to the County.

107. As a result of Defendant's wrongful conduct, the County has suffered damages in an amount to be determined at trial.

**COUNT IV**
**Fraud**

108. The County realleges and incorporates by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

109. Through the acts described above, Defendant made misrepresentations and omissions of material fact concerning the cost and price of products sold to the County under the USC contract.

110. Defendant made these misrepresentations and omissions of material fact with knowledge of their falsity and/or with reckless disregard for their truth.

111. Defendant made these misrepresentations and omissions of material fact intending that the County, directly or indirectly, would rely on their accuracy in beginning or continuing to do business with Defendant and in purchasing goods from Defendant under the USC contract.

112. The County justifiably relied on these misrepresentations and omissions of material fact concerning the cost and price of products sold to it under the USC contract when it purchased products from Defendant under the USC contract.

113. As a result of Defendant's wrongful conduct, the County has suffered damages in an amount to be determined at trial.

114. In addition to compensatory damages, given Defendant's bad faith and/or malicious, willful, reckless, wanton, or fraudulent conduct, the County is entitled to recover punitive damages.

**PRAYER**

Wherefore, Plaintiff County of Santa Clara prays for judgment against Defendant Office Depot as follows:

1. As to Counts I and II, that the Court enter judgment against Defendant in an amount equal to three times the amount of damages sustained by the County as a result of Defendant's actions in violation of the California False Claims Act, as well as a civil penalty of $10,000 for each violation of Cal. Gov't Code § 12651;

2. As to Count III, that the Court enter judgment against Defendant in an amount equal to all damages proximately caused by Defendant's conduct in an amount to be proven at trial;

3. As to Count IV, that the Court enter judgment against Defendant in an amount equal to all damages proximately caused by Defendant's conduct in an amount to be proven at trial; and

4. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: December 13, 2012

By: [signature]

ERIC R. HAVIAN (SBN 102295)
STEPHEN HASEGAWA (SBN 198472)
EDWARD H. ARENS (SBN 259155)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, California 94105
Tel: (415) 836-9000
Fax: (415) 836-9001

LORI E. PEGG (SBN 129073)
DANNY CHOU (SBN 180240)
KAVITA NARAYAN (SBN 264191)
Office of the County Counsel
County of Santa Clara
70 West Hedding Street, 9th Floor
San Jose, California 95110
Tel: (408) 299-5930
Fax: (408) 292-7240

Attorneys for Intervenor COUNTY OF SANTA CLARA

PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 The Embarcadero, Suite 300, San Francisco, CA 94105.

On December 13, 2012, I served the foregoing document described as: COMPLAINT-IN-INTERVENTION OF COUNTY OF SANTA CLARA in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Mark Allen Kleiman<br>Law Offices of Mark Allen Kleiman<br>2907 Stanford Avenue<br>Venice, CA 90292<br>Telephone No.: (310) 306-8094<br>Facsimile No.: (310) 406-8491<br>Email: mkleiman@quitam.org<br><br>Altomease R. Kennedy<br>McKnight & Kennedy LLC<br>Lee Plaza, Suite 1010<br>8601 Georgia Avenue<br>Silver Spring, MD 20910<br>Telephone: 301-565-5281<br>Facsimile: 301-565-5285<br>Email: akennedy@mcknightandkennedy.com | Attorneys for Cities of Lakewood, Livermore, Los Angeles, Pico Rivera, Pomona, Porterville, San Bernardino, Santa Fe Springs, Santa Maria, and West Covina; San Joaquin County Office of Education, Stanislaus County Office of Education, Merced Union High School District; the School Districts of Azusa, Baldwin Park, Monrovia, and Rowland; and for *Qui Tam* Plaintiff David Sherwin. |
| Arnold M. Alvarez-Glasman, Esq.<br>Teresa Chen, Esq.<br>Alvarez-Glasman & Colvin<br>13181 Crossroads Parkway North<br>Suite 400, West Tower<br>City of Industry, CA 91746 | Attorneys for City of West Covina, City of Pico Rivera, City of Pomona<br><br>Telephone No.: (562) 699-5500<br>Facsimile No.: (562) 692-2244 |
| D. Stephen Schwabauer, City Attorney<br>Janice D. Magdich, Deputy City Attorney<br>City of Lodi<br>221 West Pine Street<br>Lodi, CA 95240 | Attorneys for City of Lodi<br><br>Telephone No.: (209) 333-6701<br>Facsimile No.: (209) 333-6807 |
| Lori E. Pegg, Acting County Counsel<br>Winifred Botha, Assistant County Counsel<br>Greta S. Hansen, Lead Deputy County Counsel<br>Office of the County Counsel<br>70 West Hedding Street, East Wing, 9th Floor<br>San Jose, CA 95110-1770 | Attorneys for County of Santa Clara<br><br>Telephone No.: (408) 299-5930<br>Facsimile No.: (408) 292-7240<br>Email: greta.hansen@cco.sccgov.org |

| | |
|---|---|
| Laurie Rittenberg<br>Managing Assistant City Attorney<br>Los Angeles City Attorney's Office<br>800 City Hall East<br>200 N. Main Street<br>Los Angeles, California 90012 | Attorneys for City of Los Angeles<br><br>Telephone No.: (213) 473-6848<br>Facsimile No.: (213) 473-6818<br>Email: Laurie.Rittenberg@lacity.org |
| Arthur G. Wille<br>Deputy County Counsel<br>*[service via email]*<br>Email: awille@co.fresno.ca.us | Attorneys for County of Fresno<br><br>Telephone No.: (559) 600-3479<br>Facsimile No.: (559) 600-3480 |
| Heather C. McLaughlin<br>Office of City Attorney<br>*[service via email]*<br>Email: Heather.McLaughlin@ci.benicia.ca.us | Attorneys for City of Benicia<br><br>Telephone No.: (707) 746-4216<br>Facsimile No.: (707) 745-1196 |
| Dean R. Derleth<br>G. Ross Tinrdle, III<br>Melanie N. Donnelly<br>Best Best & Krieger, LLP<br>300 South Grand Ave., 25th Floor<br>Los Angeles, CA 90071 | Attorneys for Cities of: Downey, Corona, Ontario, Maywood, Indian Wells, Clearlake, Santee, Covina, Shafter, Fontana, Palm Desert, Arcadia, Claremont, Woodland; and Attorneys for El Centro Elementary School District and San Diego County Superintendent of Schools<br><br>Telephone No.: (213) 617-8100<br>Facsimile No.: (213) 617-7480<br>Email: Dean.Derleth@bbklaw.com<br>Ross.Trindle@bbklaw.com<br>Melanie.Donnelly@bbklaw.com |
| James F. Penman, City Attorney<br>Diane C. Roth, Sr. Assistant City Attorney<br>300 North "D" Street<br>San Bernardino, CA 92418 | Attorneys for City of San Bernardino<br><br>Telephone No.: (909) 384-5355<br>Facsimile No.: (909) 384-5238 |
| Brita J. Bayless, City Attorney<br>Michelle Sheidenberger, Deputy City Attorney<br>311 Vernson Street<br>Roseville, CA 95678 | Attorneys for City of Roseville<br><br>Telephone No.: (916) 774-5325<br>Facsimile No.: (916) 773-7348 |
| Lisa A. Goldfien<br>Deputy City Attorney II<br>City of San Rafael<br>1400 Fifth Avenue<br>San Rafael, CA 94901 | Attorneys for City of San Rafael<br><br>Telephone No.: (415) 485-3080<br>Facsimile No.: (415) 485-3109<br>Email: lisa.goldfien@cityofsanrafael.org |

| | |
|---|---|
| City of Santa Maria<br>*[service via email]*<br>Wendy Stockton, wstockton@ci.santa-maria.ca.us; Julie Orozco, jorozco@ci.santa-maria.ca.us; Anna Padilla, apadilla@ci.santa-maria.ca.us | Attorneys for City of Santa Maria<br><br>Telephone No.: (805) 925-0951<br>Facsimile No.: (805) 928-1275 |
| Linda Trang<br>Office of Long Beach City Attorney<br>333 W. Ocean Blvd., 11th Floor<br>Long Beach, CA 90802 | Attorneys for City of Long Beach<br><br>Telephone No.: (562) 570-2294<br>Facsimile No.: (562) 436-1579<br>Email: linda.trang@longbeach.gov |
| Kathleen Bales-Lange<br>County Counsel for County of Tulare<br>Harold W. Wood, Jr., Chief Deputy<br>Desire Y. Serrano, Deputy<br>2900 West Burrell, County Civic Center<br>Visalia, CA 93291 | Attorneys for Plaintiff School Districts – Allensworth Elementary School, Alpaugh Unified, Cutler-Orosi Joint Unified School District, Exeter Union High School District, Exeter Union School District, Farmersville Unified School District, Kings River Union Esd, Oak Valley Union Elementary, Pleasant View Elementary School District, Strathmore Union Elementary, Sundale Elementary School District, Terra Bella Union Elementary School District, Tulare City Elementary, Tulare Joint Union High, Visalia Unified School District, Superintendent, Tulare County Office of Education, Sunnyside Union Elementary School District<br><br>Telephone No.: (559) 636-4961<br>Facsimile No.: (559) 737-4319 |
| Chesley D. Quaide<br>Atkinson, Andelson, Loya, Ruud & Romo<br>5075 Hopyard Road, Suite 210<br>Pleasanton, CA 94588 | Attorneys for Hilmar Unified School District, Jefferson School District, Lakeport Unified School District, LeGrand Union Elementary School District, Lincoln Unified School District, Los Banos Unified School District, Merced Union High School District, Merced County Office of Education, New Hope Elementary School District, San Carlos School District, San Joaquin County Office of Education, Stanislaus County Office of Education, Weaver Union School District<br><br>Telephone No.: (925) 227-9200<br>Facsimile No.: (925) 227-9202<br>Email: cquaide@aalrr.com |

| | |
|---|---|
| Francis J. Burke, Jr.<br>Aaron Belzer<br>Seyfarth Shaw LLP<br>2029 Century Park East, Suite 3500<br>Los Angeles, CA 90067 | Attorneys for Defendant Office Depot<br><br>Telephone No.: (310) 277-7200<br>Facsimile No.: (310) 201-5219 |
| Daniel Franklin Katz<br>Juli Ann Lund<br>Paul T. Hourihan<br>William P. Ashworth<br>Williams and Connolly LLP<br>725 Twelfth Street NW<br>Washington, DC 20005-5901 | Attorneys for Defendant Office Depot<br><br>Telephone No.: (202) 434-5143<br>Facsimile No.: (202) 434-5029 |

**[X] (By United States Mail)** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

**[X] (By Electronic Service)** Based on an agreement of the parties to accept electronic service, I caused the documents to be sent to the person at the electronic service addresses above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this declaration was executed on December 13, 2012.

C Zengel

CHRISTINE ZENGEL

# EXHIBIT 1

TERM CONTRACT AWARD

INTERNAL SERVICES DEPARTMENT



NUMBER : 42595
BUYER : PAYTON PRICE
BUYER PHONE : (323) 267-2575-0000
T-NUMBER :
DATE ISSUED : 11/08/05
VENDOR NUMBER : 001059 -03
VENDOR PHONE : (818) 837-2580-511
REQ AGENCY : IS9000

INTERNAL SERVICES DEPARTMENT

AGENCY REQ NO. :
REQ NO. : 11022107
FISCAL YEAR : 06
EFFECTIVE DATE : 01/02/06
EXPIRATION DATE: 01/01/10

OFFICE DEPOT-BUSINESS SERVICES
225 PARKSIDE DR.
SAN FERNANDO, CA 91340-3033

OFFICE AND CLASSROOM SUPPLIES

The County of Los Angeles accepts your offer to furnish our requirements (and such requirements as may be ordered by cities and/or districts indicated herein) of the listed commodity, or service, as needed, subject to conditions of the stated quotation and as provided herein. All Purchase Agreements, Purchase Orders and Contracts will be deemed to be made and entered into the State of California under the constitution and laws of this state and are to be so construed.

PRICE GUARANTEE: Unless otherwise provided herein, prices are maximum for the period of this agreement. In the event of a price decline, or, should you at any time during the life of this agreement sell the same material or service under similar quantity and deliver conditions to the State of California, or legal district thereof, or to any county or Municipality within the State of California at prices below those stated herein, you will immediately extend such lower prices to the County of Los Angeles.

ATTENTION: VENDOR/DEPARTMENT - SPECIAL NOTE: County departments are not authorized to use this agreement as a purchasing source for products not specifically covered herein. Changes of items, equipment, or modifications to prices, specifications, or conditions, etc., of this agreement can be made only by the Purchasing Agent by issuance of official amendment and in accordance with properly authorized changes agreed upon prior to consummation.

Los Angeles County will not pay for items not listed below that have not been processed in accordance with the above paragraph. Vendor will incur payment problems.

County's Quality Assurance Plan. The County or its agent will evaluate Contractor's performance under this agreement on not less than an annual basis. Such evaluation will include assessing Contractor's compliance with all contract terms and performance standards. Contractor deficiencies which County determines are severe or continuing and that may place performance of the agreement in jeopardy if not corrected will be reported to the Board of Supervisors. The report will include improvement/corrective action measures taken by the County and Contractor. If improvement does not occur consistent with the corrective action measures, County may terminate this agreement or impose other penalties as specified in this agreement.

Payton Price
COUNTY OF LOS ANGELES

✓ [signature] 11/29/05
VENDOR SIGNATURE/DATE

PSCONT, INFORMS 1595

Reviewed and approved as to form and legality by: Office Depot Legal Department

Attorney / Paralegal: [signature]

Date: 11/29/05

(1)

| STANDARD TERMS AND CONDITIONS | TERM CONTRACT | |
|---|---|---|
| NUMBER :42595<br>T-NUMBER : | VENDOR: OFFICE DEPOT-BUSINESS SERVICES | PAGE<br>2 |

CONTRACTOR RESPONSIBILITY AND DEBARMENT

1. A responsible Contractor is a Contractor who has demonstrated the attribute of trustworthiness, as well as quality, fitness, capacity and experience to satisfactorily perform the contract. It is the County's policy to conduct business only with responsible contractors.

2. The Contractor is hereby notified that, in accordance with Chapter 2.202 of the County Code, if the County acquires information concerning the performance of the contractor on this or other contracts which indicates that the Contractor is not responsible, the County may, in addition to other remedies provided in the contract, debar the Contractor from bidding on County contracts for a specified period of time not to exceed 3 years, and terminate any or all existing contracts the Contractor may have with the County.

3. The County may debar a contractor if the Board of Supervisors finds, in its discretion, that the Contractor has done any of the following: (1) violated any term of a contract with the County, (2) committed any act or omission which negatively reflects on the Contractor's quality, fitness or capacity to perform a contract with the County or any other public entity, or engaged in a pattern or practice which negatively reflects on same, (3) committed an act or offense which indicates a lack of business integrity or business honesty, or (4) made or submitted a false claim against the County or any other public entity.

4. If there is evidence that the Contractor may be subject to debarment, the Department will notify the Contractor in writing of the evidence which is the basis for the proposed debarment and will advise the Contractor of the scheduled date for a debarment hearing before the Contractor Hearing Board.

5. The Contractor Hearing Board will conduct a hearing where evidence on the proposed debarment is presented. The Contractor and/or the Contractor's representative shall be given an opportunity to submit evidence at that hearing. After the hearing, the Contractor Hearing Board shall prepare a proposed decision, which shall contain a recommendation regarding whether the contractor should be debarred, and, if so, the appropriate length of time of the debarment. If the Contractor fails to avail itself of the opportunity to submit evidence to the Contractor Hearing Board, the Contractor may be deemed to have waived all rights of appeal.

6. A record of the hearing, the proposed decision and any other recommendation of the Contractor Hearing Board shall be presented to the Board of Supervisors. The Board of Supervisors shall have the right to modify, deny or adopt the proposed decision and recommendation of the Hearing Board.

7. These terms shall also apply to (subcontractors/subconsultants) of County Contractors.

PROHIBITION AGAINST USE OF CHILD LABOR

VENDOR shall:

1. Not knowingly sell or supply to COUNTY any products, goods, supplies or other personal property produced or manufactured in violation of child labor standards set by the International Labor Organizations through its 1973 Convention Concerning Minimum Age for Employment.

2. Upon request by COUNTY, identify the country/countries of origin of any products, goods, supplies or other personal property bidder sells or supplies to COUNTY, and

3. Upon request by COUNTY, provide to COUNTY the manufacturer's certification of compliance with all international child labor conventions.

Should COUNTY discover that any products, goods, supplies or other personal property sold or supplied by VENDOR to COUNTY are produced in violation of any international child labor conventions, VENDOR shall immediately provide an alternative, compliant source of supply.

Failure by VENDOR to comply with the provisions of this clause will be grounds for immediate cancellation of this Purchase Order or termination of this Agreement and award to an alternative vendor.

| STANDARD TERMS AND CONDITIONS | TERM CONTRACT | |
|---|---|---|
| NUMBER :42595<br>T-NUMBER : | VENDOR: OFFICE DEPOT-BUSINESS SERVICES | PAGE<br>3 |

A. Jury Service Program.

This Contract is subject to the provisions of the County's ordinance entitled Contractor Employee Jury Service ("Jury Service Program") as codified in Sections 2.203.010 through 2.203.090 of the Los Angeles County Code.

B. Written Employee Jury Service Policy.

1. Unless Contractor has demonstrated to the County's satisfaction either that Contractor is not a "Contractor" as defined under the Jury Service Program (Section 2.203.020 of the County Code) or that Contractor qualifies for an exception to the Jury Service Program (Section 2.203.070 of the County Code), Contractor shall have and adhere to a written policy that provides that its Employees shall receive from the Contractor, on an annual basis, no less than five days of regular pay for actual jury service. This policy may provide that Employees deposit any fees received for such jury service with the Contractor or that the Contractor deduct from the Employee's regular pay the fees received for jury service.

2. For purposes of this Section, "Contractor" means a person, partnership, corporation or other entity which has a contract with the County or a subcontract with a County contractor and has received or will receive an aggregate sum of $50,000 or more in any 12-month period under one or more County contracts or subcontracts. "Employee" means any California resident who is a full time employee of Contractor. "Full time" means 40 hours or more worked per week, or a lesser number of hours if the lesser number is a recognized industry standard and is approved as such by the County. If Contractor uses any subcontractor to perform services for the County under the Contract, the subcontractor shall also be subject to the provisions of this Section. The provisions of this Section shall be inserted into any such subcontract agreement and a copy of the Jury Service Program shall be attached to the agreement.

3. If Contractor is not required to comply with the Jury Service Program when the Contract commences, Contractor shall have a continuing obligation to review the applicability of its "exception status" from the Jury Service Program, and Contractor shall immediately notify County if Contractor at any time either comes within the Jury Service Program's definition of "Contractor" or if Contractor no longer qualifies for an exception to the Program. In either event, Contractor shall immediately implement a written policy consistent with the Jury Service Program. The County may also require, at any time during the Contract and at its sole discretion, that Contractor demonstrate to the County's satisfaction that Contractor either continues to remain outside of the Jury Service Program's definition of "Contractor" and/or that Contractor continues to qualify for an exception to the Program.

4. Contractor's violation of this Section of the contract may constitute a material breach of the Contract. In the event of such material breach, County may, in its sole discretion, terminate the Contract and/or bar Contractor from the award of future County contracts for a period of time consistent with the seriousness of the breach.

| STANDARD TERMS AND CONDITIONS | TERM CONTRACT | |
|---|---|---|
| NUMBER :42595<br>T-NUMBER : | VENDOR: OFFICE DEPOT-BUSINESS SERVICES | PAGE<br>4 |

. PRICE SPECIFIC CONTRACTS AND PURCHASE ORDERS

Vendors are entitled to receive payment for goods received by, or services provided to the County specific to the Contract or Purchase Order price amount. Under no circumstances will those Suppliers, Contractors or Vendors who supply goods or otherwise contract services with the County of Los Angeles be entitled to or paid for expenditures beyond the Contract or Purchase Order amounts.

| PRICE SHEET | | TERM CONTRACT | | | |
|---|---|---|---|---|---|
| NUMBER : 42595<br>T-NUMBER : | | VENDOR : OFFICE DEPOT-BUSINESS SERVICES | | | PAGE 5 |
| LINE NO. | COMMODITY/SERVICE DESCRIPTION | QUANTITY FROM/TO | UNIT | UNIT PRICE | DISCOUNT OFF CATALOG PRICE |
| | UNLESS SPECIFIED ELSEWHERE SHIP TO:<br><br>COUNTY WIDE | | | | |
| 00001 | COMMODITY CODE: 615-99-035866<br><br>BRAND: OFFICE DEPOT<br><br>OFFICE SUPPLIES -COMPLETE LINE - PRICING BASED ON DISCOUNTS OFF MANUFACTURER'S PUBLISHED PRICE LIST/CATALOG AND COST PLUS PERCENTAGES<br><br>REFERENCE THE EXHIBIT 'A' DOCUMENT WITHIN THE MASTER AGREEMENT FOR PRICING<br><br>TO INCLUDE: GENERAL OFFICE SUPPLIES, PAPER PRODUCTS, TECHNOLOGY PRODUCTS, FURNITURE AND TONER PRODUCTS<br><br>NOTE:<br>THE FOLLOWING ITEMS ARE EXCLUDED FROM THIS AGREEMENT/CONTRACT FOR THE COUNTY OF LOS ANGELES:<br>PAPER - FOR COPIERS AND PRINTERS<br>COMPUTERS AND COMPUTER PERIPHERALS<br>PHOTOCOPIERS<br>TONER PRODUCTS<br>CAMERAS, FILM AND ACCESSORIES<br>JANITORIAL PRODUCTS<br>FOOD ITEMS<br>REFRIGERATORS<br>AUDIO-VISUAL ITEMS<br>FURNITURE (PURCHASE OR RENTAL)<br>CLASSROOM SUPPLIES<br>ARTS & CRAFT ITEMS | | | | |
| 00002 | COMMODITY CODE: 615-99-035866<br><br>BRAND: OFFICE DEPOT<br><br>OFFICE SUPPLIES - CORE LIST OF MOST FREQUENTLY ORDERED ITEMS (MFOI) - PRICING IS FIRM FOR A PERIOD OF ONE (1) YEAR FROM COMMENCEMENT OF AGREEMENT/CONTRACT PERIOD.<br><br>REFERENCE THE EXHIBIT 'A' DOCUMENT WITHIN THE MASTER AGREEMENT FOR CORE LIST OF ITEMS AND PRICING. | | | | |

PSPRSH, INFORMS 1995

| PRICE SHEET | | TERM CONTRACT | | | |
|---|---|---|---|---|---|
| NUMBER : 42595<br>T-NUMBER : | | VENDOR : OFFICE DEPOT-BUSINESS SERVICES | | | PAGE 6 |
| LINE NO. | COMMODITY/SERVICE DESCRIPTION | QUANTITY FROM/TO | UNIT | UNIT PRICE | DISCOUNT OFF CATALOG PRICE |
| 00003 | COMMODITY CODE: 615-99-035866<br><br>BRAND: OFFICE DEPOT<br><br>CLASSROOM SUPPLIES - COMPLETE LINE - PRICING BASED ON DISCOUNT OFF MANUFACTURER'S PUBLISHED PRICE LIST/CATALOG AND COST PLUS PERCENTAGES<br><br>REFERENCE THE EXHIBIT 'A-1' DOCUMENT WITHIN THE MASTER AGREEMENT FOR PRICING.<br><br>TO INCLUDE: ART AND CRAFTS PRODUCTS AND CLASSROOM PAPER PRODUCTS | | | | |
| 00004 | COMMODITY CODE: 615-99-035866<br><br>BRAND: OFFICE DEPOT<br><br>CLASSROOM SUPPLIES - CORE LIST OF MOST FREQUENTLY ORDERED ITEMS (MFOI) - PRICING IS FIRM FOR A PERIOD OF ONE (1) YEAR FROM COMMENCEMENT OF AGREEMENT/ CONTRACT PERIOD.<br><br>REFERENCE THE EXHIBIT 'A-1' DOCUMENT WITHIN THE MASTER AGREEMENT FOR ITEMS AND PRICING<br><br>PRICES, TERMS AND CONDITIONS ARE IN ACCORDANCE WITH REQUEST FOR PROPOSAL (RFP) NO. 218955 AND OFFICE DEPOT'S RESPONSE TO RFP NO. 218955.<br><br>MAIL PURCHASE ORDERS TO:<br>OFFICE DEPOT - BUSINESS SERVICES<br>VENDOR NO. 051258-15<br>ATTENTION: JEAN DAVIS<br>6304 WOODSIDE COURT<br>COLUMBIA, MD 21046<br>(800) 890-4914, EEXT. 3560<br>FEIN: 59-2663954<br><br>RESELLER'S TAX PERMIT NO./ CERTIFICATE OF REGISTRATION NO.:<br>SR Z OHC 99-801149 | | | | |

| PRICE SHEET | | TERM CONTRACT | | | |
|---|---|---|---|---|---|
| NUMBER : 42595<br>T-NUMBER : | | VENDOR : OFFICE DEPOT-BUSINESS SERVICES | | | PAGE 7 |
| LINE NO. | COMMODITY/SERVICE DESCRIPTION | QUANTITY FROM/TO | UNIT | UNIT PRICE | DISCOUNT OFF CATALOG PRICE |
| | REFERENCE MASTER AGREEMENT NO. 42595 BY AND BETWEEN THE COUNTY OF LOS ANGELES AND OFFICE DEPOT FOR OFFICE AND CLASSROOM SUPPLIES<br><br>VENDOR CONTACT FOR LOS ANGELES COUNTY: SAM CISTERNINO (800) 488-2018, EXT. 585<br><br>ISD - PURCHASING DIVISION CONTACT: MARY WALCOTT (323) 267-2208 | | | | |

PSPRSH, INFORMS 1995

# INTERNAL SERVICES DEPARTMENT

# PURCHASING DIVISION

# MASTER AGREEMENT

# NO. 42595

# BY AND BETWEEN

# COUNTY OF LOS ANGELES

# AND

# OFFICE DEPOT

# FOR

# OFFICE AND CLASSROOM SUPPLIES




8

MASTER AGREEMENT BETWEEN
COUNTY OF LOS ANGELES
AND OFFICE DEPOT

FOR OFFICE AND CLASSROOM SUPPLIES

**TABLE OF CONTENTS**


1.0 PURPOSE .... 1
- 1.1 Priority of Interpretation .... 1
- 1.2 Entire Master Agreement .... 1

2.0 DEFINITIONS .... 2
- 2.1 Day(s) .... 2
- 2.2 Eligibility Vendor .... 2
- 2.3 Fiscal Year .... 2
- 2.4 Normal Working Hours .... 2
- 2.5 Master Agreement .... 2

3.0 CHANGE NOTICES AND AMENDMENT .... 3
- 3.1 Master Agreement Changes .... 3

4.0 WORK .... 3
- 4.1 Non-transferable Responsibilities .... 3
- 4.2 Assignment and Subcontracting .... 3
- 4.3 Time is of the Essence .... 3

5.0 TERM OF AGREEMENT .... 4
- 5.1 Term .... 4
- 5.2 Extension .... 4

6.0 METHOD OF PURCHASE, INVOICING AND PAYMENTS .... 4
- 6.1 Purchase Order(s) .... 4
- 6.2 Pricing and Discounts .... 4
- 6.3 Warranty and Product Compliance .... 5
- 6.4 Invoice and Payment Terms .... 5
- 6.5 Product/Equipment Pricing and Maintenance .... 5
- 6.6 Independent CONTRACTOR Status .... 6

7.0 INDEMNIFICATION AND INSURANCE .... 6
- 7.1 Indemnification .... 7
- 7.2 Insurance .... 7
- 7.3 Liability Insurance .... 7
- 7.4 Failure to Procure Insurance .... 8

8.0 RECORDS, DOCUMENTS AND AUDITS .... 8
- 8.1 Publicity .... 9

9.0 EMPLOYMENT ELIGIBILITY VERIFICATION .... 9


9

10.0 CAPTIONS AND PARAGRAPH HEADINGS .......... 9

11.0 WAIVER .......... 9

12.0 GOVERNING LAW, JURISDICTION AND VENUE .......... 10

13.0 SEVERABILITY .......... 10

14.0 HIRING POLICIES .......... 10
14.1 Prohibition of Hiring .......... 10

15.0 TERMINATION FOR GRATUITIES .......... 10

16.0 TERMINATION FOR INSOLVENCY .......... 10

17.0 TERMINATION FOR DEFAULT .......... 11

18.0 TERMINATION FOR CONVENIENCE .......... 11

19.0 TERMINATION FOR FAILURE TO OPERATE IN ORDINARY COURSE .......... 12

20.0 COUNTY AUDIT SETTLEMENTS .......... 12

21.0 CONFLICT OF INTEREST .......... 12

22.0 FORCE MAJEURE .......... 13

23.0 MOST FAVORED PUBLIC ENTITY .......... 13

24.0 DAMAGE TO COUNTY FACILITIES, BUILDINGS OR GROUNDS .......... 13

25.0 RESTRICTIONS ON LOBBYING .......... 13
25.1 COUNTY Projects .......... 13

26.0 NOTICES .......... 13

27.0 AUTHORIZATION WARRANTY .......... 14

28.0 VARIATION OF TERMS .......... 14

29.0 CANCELLATION OF ORDERS .......... 14

30.0 NON-EXCLUSIVE AGREEMENT .......... 14

31.0 COMPLIANCE WITH APPLICABLE LAW .......... 14

32.0 FAIR LABOR STANDARDS .......... 15

33.0 NONDISCRIMINATION AND AFFIRMATIVE ACTION .......... 15

34.0 CONSUMPTION REPORTS/ITEM NUMBERS/RESTRICTED PURCHASES .... 16



35.0 ORDERING REQUIREMENTS .......... 16

36.0 PARTICIPATING MUNICIPALITIES .......... 17

37.0 EXCLUSIONS .......... 17

AUTHORIZATION OF MASTER AGREEMENT .......... 18

EXHBIITS

EXHIBIT A - PRICING AND DISCOUNTS

EXHIBIT B - VENDOR'S PROPOSAL (Not Attached)

EXHIBIT C - COUNTY'S REQUEST FOR PROPOSALS (Not Attached)

EXHIBIT D - VENDOR'S EEO CERTIFICATION

**MASTER AGREEMENT BETWEEN
COUNTY OF LOS ANGELES
AND OFFICE DEPOT**

**FOR OFFICE AND CLASSROOM SUPPLIES**

1.0 PURPOSE

This Office and Classroom Supplies Master Agreement (hereafter "Master Agreement") is made and entered into by and between the County of Los Angeles (hereafter "COUNTY"), and Office Depot (hereafter 'VENDOR").

WHEREAS, COUNTY AND VENDOR agree that VENDOR will offer to provide COUNTY, COUNTY employees and others as more fully described herein with Office and Classroom Supplies (Office Supplies only for COUNTY), hereafter sometimes referred to as the ("Product").

WHEREAS, VENDOR is in the business of selling and supplying Office and Classroom Supplies, and

WHEREAS, VENDOR is willing and able to offer, deliver, service and support the Product it offers to, COUNTY departments/divisions, COUNTY offices/organizations, COUNTY employees, and any other entities as set forth herein (hereafter "Customer(s)"). This document, together with the Exhibits identified in Paragraph 1.1 (Priority of Interpretation), defines the scope of this Agreement.

1.1 Priority of Interpretation

This document without Exhibits is referred to as the "Base Agreement." The Base Agreement and Exhibit A are attached to and form a part of this Master Agreement. Exhibits B and C, referenced below but not attached, are hereby incorporated herein by reference. Any reference throughout the Base Agreement and each of its Exhibits to the "Master Agreement" shall, unless the context clearly denotes otherwise, denote the Base Agreement with all Exhibits hereby incorporated. In the event of any conflict or inconsistency in the definition or interpretation of any word, responsibility, schedule, or the contents or description of any task, deliverable, service, or other work, or otherwise, between the Base Agreement and the Exhibits, or between Exhibits, such conflict or inconsistency shall be resolved by giving precedence first to the body of this Master Agreement, and then to the Exhibits according to the following priority:



1. EXHIBIT A – PRICING AND DISCOUNTS
2. EXHIBIT B – VENDOR'S Proposal (Not Attached)
3. EXHIBIT C – COUNTY'S Request for Proposals (RFP/Not Attached)
4. EXHIBIT D - VENDOR's EEO Certification

1.2 Entire Master Agreement

This Master Agreement incorporates and supersedes all previous agreements, written and oral, and all prior and contemporaneous communications between the parties,



regarding this subject. COUNTY reserves the right to initiate change to any provision of the Master Agreement. All such changes shall be accomplished only by mutual signed Agreements, as provided under the Paragraph 1.2. No change hereto shall be valid unless in the form of a signed Amendment prepared and approved pursuant to Subparagraph 3.0 (Change Notices and Amendments).

2.0 DEFINITIONS:

The following terms shall have the following meaning and use herein. Capitalized terms used in this Master Agreement, not defined in this Paragraph 2.0 shall have the meaning ascribed to them elsewhere in this Master Agreement or in the Exhibits.

2.1 "Day(s)" means calendar day(s) unless otherwise specified.

2.2 "Eligible Vendor" identifies a Vendor whose evidences of insurance, as required by Paragraph 7.0 (Indemnification and Insurance), have all been received by the Internal Services Department (ISD) Purchasing Division, as set forth in Section 26.0 (Notices), and are valid and in effect at the time of a given Purchase Order solicitation under this Master Agreement.

2.3 Fiscal Year

"Fiscal Year" means the twelve (12) month period beginning July 1st and ending June 30th.

2.4 Normal Working Hours

"Normal Working Hours" means one of the followiing work schedules, according to individual COUNTY department policy, excluding COUNTY holidays:

A. "5/40" which is normally eight (8) hours per day Monday through Friday ("Working Days"), with starting and ending times departmentally established;

B. "9/80", which is a flexibly arranged nine (9) hours on each of eight Working Days in a given two-week period, plus 8 hours arranged, per department policy, on the ninth Working Day; or

13

C. "4/40", which is a flexibly arranged ten (10) hours on each of four fixed Working Days each week, with starting and ending times departmentally established.

2.5 Master Agreement

"Master Agreement" means COUNTY's standard agreement entitled "Office and Classroom Supplies Master Agreement," as specified in Paragraph 1.1, copies of which are separately executed between COUNTY and individual Qualified Vendors, and which sets forth the terms and conditions for the provision of Office and Classroom Supplies, Master Agreement to COUNTY. COUNTY shall execute Master Agreements with as



many vendors as COUNTY deems qualified and appropriate for COUNTY needs. All Master Agreements shall be undertaken with terms of equal duration as set forth in Paragraph 5.0 (Terms of Agreement). Undertaking this Master Agreement does not grant any right to compensation to VENDOR, or to vendors in the aggregate.

3.0 CHANGE NOTICES AND AMENDMENTS

3.1 Master Agreement Changes:

3.1.1 For any change which affects the period of performance, payments, or any term condition included in this Master Agreement, a negotiated Amendment to this Master Agreement shall be prepared and executed by COUNTY's Purchasing Agent, or designee and VENDOR"s originally executing Authorized Officials, or designees.

3.1.2 For any change which does not affect the, period of performance, payments, or any rights or obligations of this Master Agreement, a Change Notice shall be prepared and executed by COUNTY's Purchasing Agent, or designee and VENDOR.

4.0 WORK

VENDOR shall fully complete and timely deliver, pursuant to standards, requirements, and schedules either presently incorporated in or to be developed hereunder, all tasks, deliverables, sub-deliverables, goods, services, and other work as set forth herein and elsewhere hereunder.

4.1 Non-transferable Responsibilities

No assumption or takeover of any of VENDOR's duties, responsibilities, or obligations, or performance of same by any entity other than VENDOR whether through assignment, subcontract, delegation, merger, buyout, or any other mechanism, with or without

consideration, for any reason whatsoever, may occur without COUNTY's express prior written approval.

If any such assumption, takeover, or unauthorized performance does occur without such prior written approval, this Agreement will become void for failure of its essential purpose. Such act is therefore a material breach of this Agreement, upon which COUNTY may pursue any lawful remedy.

4.2 Assignment and Subcontracting

VENDOR shall not assign its rights, delegate its duties or subcontract any performance of our Agreement without the express prior written consent of COUNTY. Any assignment, delegation or subcontract without such express prior written consent shall be null and void and shall constitute a material breach of this Agreement, upon which COUNTY may immediately terminate the Agreement in accordance with the provisions of paragraph 17.0 (TERMINATION BY DEFAULT).

4.3 Time is of the Essence



Time is of the Essence. If any anticipated or actual delays arise, VENDOR shall immediately so notify COUNTY. Regardless of notice if deliveries are not made at the time agreed upon, COUNTY may, at its sole discretion, terminate this Agreement and proceed pursuant to Paragraph 17.0 (TERMINATION BY DEFAULT).

5.0 TERM OF AGREEMENT

5.1 Term

This Master Agreement shall go into effect for a four (4) year period effective January 2, 2006 as indicated on the signature page hereof and shall expire at the close of COUNTY business on January 1, 2010, unless sooner terminated, in whole or in part, as provided herein.

5.2 Extension

5.2.1 The COUNTY's Purchasing Agent may exercise the option to extend the Master Agreement period for two (2) additional twelve (12) month periods as set forth in Paragraph 3.0 (Change Notices and Amendments), of this Master Agreement.

5.2.2 COUNTY shall notify VENDOR of any determination to extend this Agreement no less than thirty (30) days prior to the beginning of this relevant option year .

6.0 METHOD OF PURCHASE, INVOICING AND PAYMENTS

6.1 Purchase Order(s)

6.1.1 COUNTY shall purchase the items listed herein by issuance of a formal purchase order. Such purchase order shall contain the terms and conditions applicable for that purchase, notwithstanding anything herein to the contrary. The purchase order, as specifically noted, shall govern and control the applicable purchase. Preprinted additional or different terms and conditions on the purchase order will be of no force or effect.

6.1.2 VENDOR shall not deliver products and/or goods to COUNTY as loaner equipment or for trial unless and until a "No Charge" purchase order and loan agreement is received by VENDOR from COUNTY's ISD - Purchasing Division.

6.2 Prices, Discounts and Changes

6.2.1 Vendor agrees for the period of this Agreement that prices for products covered herein will be based on a Discount from Manufacturers' current published price lists or Cost Plus Percentage, except for those identified in EXHIBITS A and A-1 as Core Products. Price changes (increases) from price lists will be allowed only on a semi-annual basis on January 1st and July 1st of each contracting year.

6.2.2 Vendor shall advise the Los Angeles County ISD Purchasing Division in writing of any proposed price increases or manufacturer's discount structure changes, identifying Agreement by number, providing a copy of the proposed price list and/or acceptable evidence of change in manufacturers discount structure. VENDOR will be responsible for furnishing and delivering approved price lists to all County departments and other participating government entities. It also shall be VENDOR's responsibility to keep COUNTY and participating government entities informed of any other changes.



Unless otherwise qualified, revisions shall be effective on the seventh (7) business day after such notification and receipt thereof. Upward revisions shall be subject to acceptance by COUNTY.

6.2.3 If an increase in price is determined not to be acceptable by COUNTY, VENDOR will be obligated to furnish the ordered products at the previous price(s).

6.2.4 COUNTY reserves the right to review discount structures at the end of the initial twelve (12) months of the proposed Agreement and amend same if such is in the best interest of the COUNTY. A primary consideration will be the then current annual dollar volume as opposed to the original dollar estimate of the Agreement (including volume generated by all participating agencies).

6.2.5 Notwithstanding anything herein to the contrary for thirty (30) days from date of delivery to Customer, should Customer find a lower price, offered in Southern California, for the same product, payment terms, quantity and delivery terms and conditions set forth in the applicable purchase order and this Agreement, VENDOR shall, upon presentation of authentic, (e.g., sales invoice, advertisement(s) proof of such, immediately refund the difference to Customer. This paragraph shall not apply to special and/or one-time offers, liquidation sales and discounted product(s). Further, COUNTY contract VENDORS and non-authorized resellers where required by the manufacturers, are excluded.

6.3 Warranty and Product Compliance

6.3.1 All equipment provided to COUNTY must be brand new, unused, and be approved by either U.L., L.A. City Testing Lab, Factory Mutual Corp, or ETL testing labs. Further, equipment provided to COUNTY shall meet other such standards as the COUNTY may require.

6.4 Invoices and Payment Terms

6.4.1 In no event shall the COUNTY be liable for any late fees or charges.

6.4.2 Invoices shall bear upon their face the Purchase Order number which appears in the upper right-hand corner hereof. Invoices must state what they cover, as the case may be, complete or partial delivery, and must show unit and unit prices. Invoices will not be paid unless and until the requirements have been fully met. When price shown is a delivered price, all transportation and delivery charges must be prepared in full to destination.

6.4.3 Unless otherwise set forth on the applicable purchase order, payment terms are net thirty (30) days from receipt of a properly prepared and submitted invoice. Invoices shall only be issued after COUNTY's acceptance of the goods and/or products. Discounts shall be set forth herein.

6.5 Product Pricing and Maintenance

6.5.1 VENDOR will be solely responsible for the maintenance of the Agreement and will document all additions, deletions, manufacturers' discontinuances of products, and all associated variables, including pricing revisions. Any changes, substitutions, additions,



deletions and/or pricing revisions must be reviewed and approved by the COUNTY and VENDOR in writing prior to any inclusion to the Agreement.

6.5.2 COUNTY"s Purchasing Agent designee will notify VENDOR in writing of formal approval within seven (7) days after VENDOR submittal of any change to the catalogs.

6.5.3 Said notification and approval shall be binding upon the COUNTY and VENDOR. Upon such approval the Agreement shall be deemed to be amended to include such Changes. All documentation and formal approvals and revised copies of the effected Agreement page(s) reflecting current release revisions will be submitted to:

COUNTY OF LOS ANGELES
Internal Services Department
Purchasing Division
1100 N. Eastern Avenue, Room G115
Los Angeles, CA 90063
Attn: Mary Walcott, Purchasing & Contracts Analyst II

6.5.4 COUNTY'S Purchasing Agent designee will notify VENDOR of acceptance of any and all catalog revisions prior to any purchases. Notification shall be sent to:

Office Depot
Business Services Division
13405 Kildare Place
Bradenton, FL 34202
Attn: David Swanstrom, Director of Local Government Services

6.5.5 Catalogs shall have complete descriptions of each item.

6.6 Independent CONTRACTOR Status

6.6.1 This Master Agreement is by and between COUNTY and VENDOR and is not intended, and shall not be construed, to create the relationship of agent, servant, employee, partnership, joint venture, or association, as between COUNTY and VENDOR. The employees and agents of one party are not the employees or agents of the other party for any purpose whatsoever.

6.6.2 VENDOR understands and agrees that all persons performing work pursuant to this Master Agreement are, for purposes of worker's compensation liability, solely employees of VENDOR and not employees of COUNTY. VENDOR shall be solely liable and responsible for furnishing any and all workers' compensation benefits to any person as a result of any injuries arising from or connected with any work performed by or on behalf of VENDOR hereunder.

6.6.3. The employees and agents of each party, shall while on the premises of the other party, comply with all rules and regulations of the premises, including, but not limited to, security and requirements.

7.0 INDEMNIFICATION AND INSURANCE



7.1 Indemnification

VENDOR agrees to indemnify, defend and hold harmless COUNTY, COUNTY Special Districts, and Participating Government entities and their elected and appointed officers, employees, and agents, from and against any and all liability and expense, including defense costs and legal fees, arising from or connected with claims and lawsuits connected with VENDOR's operations, goods and/or commodities or services provided hereunder as well as for damage or workers' compensation benefits relating to VENDOR's and its subcontractors operations and services, which result from bodily and/or personal injury, death, or property damage (including physical damage to VENDOR's and its subcontractors' property, or property in the care, custody, or control of VENDOR and/or its subcontractor(s). This indemnity shall include, but not be limited to claims for or by reason of any actual or alleged infringement of any United States patent or copyright or any actual or alleged trade secret disclosure.

7.2 Insurance

Without limiting VENDOR's indemnification of COUNTY, and during the term of this Agreement, VENDOR shall provide and maintain at its own expense the below-described programs of insurance. Such programs and evidence of insurance shall be satisfactory to COUNTY and shall be primary to and not contributing with any other insurance maintained by COUNTY. Certificates or other evidence of coverage shall be delivered to:

County of Los Angeles
Internal Services Department
Purchasing Division
1100 N. Eastern Avenue, Room G115
Los Angeles, CA 90063
Attn: Mary Walcott, Purchasing & Contracts Analysts II

Prior to commencing performance under this Agreement, shall specifically identify this Agreement, and shall contain the express condition that COUNTY is to be given written notice by certified mail at least thirty (30) days in advance of any modification or termination of insurance.

7.3 Liability Insurance

7.3.1 Any and all insurance described below shall be endorsed naming the County of Los Angeles as an additional insured, and shall include:

7.3.2 General liability insurance written on a commercial general liability form or on a comprehensive general liability form covering the hazards of premises/operations, products/completed operations, contractual, broad form property damage, independent contractors, and personal and advertising injury with a combined single limit of not less than One Million Dollars ($1,000,000) per occurrence.

A. If written with an annual aggregate limit, the policy limit shall be three times the above required occurrence limit.



B. If written on a claims made form, the VENDOR shall provide an extended two (2) year reporting period commencing upon expiration or termination of this Agreement.

7.3.3 Comprehensive Auto Liability insurance endorsed for all owned, non-owned and hired vehicles with a combined single limit of not less than Three Hundred Thousand Dollars ($300,000) per occurrence.

7.3.4 A program of Workers' Compensation insurance in an amount and form to meet all applicable requirements of the California Labor Code including employer's liability with a limit no less than One Million Dollars ($1,000,000), covering all persons performing work on behalf of VENDOR and all risks to such persons under this Agreement.

7.3.5 Crime Coverage: Insurance in an amount not less than $1,000,000 covering against loss of money, securities, or other property referred to hereunder which may result from employee dishonesty, forgery or alteration, theft, disappearance and destruction, computer fraud, burglary and robbery. Such insurance shall name COUNTY as loss payee.

7.4 Failure to Procure Insurance

Failure on the part of VENDOR to obtain and maintain all required insurance coverage is a material breach upon which COUNTY may, in its sole discretion, immediately suspend VENDOR's performance or terminate this Agreement.

8.0 RECORDS, DOCUMENTS AND AUDITS

VENDOR shall maintain accurate and complete financial records of its activities and operations relating to this Agreement in accordance with generally accepted accounting principles. VENDOR shall also maintain accurate and complete employment and other records relating to its performance of this Agreement. VENDOR agrees that COUNTY, or its authorized representatives, shall have access to and the right to examine, audit, excerpt, copy or transcribe any pertinent transaction, activity, or records relating to this Agreement. All financial records, timecards and other employment records, and proprietary data and information, shall be kept and maintained by VENDOR and shall be made available to COUNTY during the terms of this Agreement and for a period of four (4) years thereafter unless COUNTY's written permission is given to dispose of any such material prior to such time. All such material shall be maintained by VENDOR at a location in Los Angeles County, provided that if any such material is located outside Los Angeles County, then, at COUNTY's option, VENDOR shall pay COUNTY for travel, per diem, and other costs incurred by COUNTY to examine, audit, excerpt, copy or transcribe such material at such other location.

In the event that an audit is conducted of VENDOR specifically regarding this Agreement by any Federal or State auditor, or by any auditor or accountant employed by VENDOR or otherwise, then VENDOR shall file a copy of the audit report with COUNTY's Auditor-Controller within thirty (30) days of VENDOR's receipt thereof, unless otherwise provided by applicable Federal or State law or under this Agreement. COUNTY shall make a reasonable effort to maintain the confidentiality of such audit r eport(s).



Failure on the part of VENDOR to comply with the provisions of this Paragraph 8.0 shall constitute a material breach upon which COUNTY may terminate or suspend this Agreement.

8.1. Publicity

VENDOR shall not disclose any details in connection with this Agreement to any person or entity except as may be otherwise provided herein or required by law. However, in recognizing VENDOR' need to identify its services and related clients to sustain itself, COUNTY shall not inhibit VENDOR from publishing its role under this Agreement, with the following conditions:

A. VENDOR shall develop all publicity material in a professional manner.

B. During the term of this Agreement, VENDOR shall neither, authorize another to, nor publish or disseminate any commercial advertisements, press release, feature articles, or other materials using the name of COUNTY without the prior written consent of COUNTY's Purchasing Agent. COUNTY shall not unreasonably withhold written consent, and approval by COUNTY may be assumed in the event no adverse comments are received in writing within two (2) weeks after submittal of written request for such consent.

C. VENDOR may, without the prior written consent of COUNTY, indicate in its proposals and sales materials that it has been awarded this Agreement with the County of Los Angeles, provided that the requirements of this Paragraph 8.0 shall apply.

9.0 EMPLOYMENT ELIGIBILITY VERIFICATION

VENDOR warrants that it fully complies with all Federal statutes and regulations regarding the employment of aliens and others and that all its employees performing work under this Master Agreement meet the citizenship or alien status requirements set forth in Federal statutes and regulations. VENDOR shall indemnify, defend, and hold harmless COUNTY, its officers, participating government agencies and employees from and against any emptier sanctions and any other liability which may be assessed against VENDOR or COUNTY in connection with any alleged violation of any Federal statutes or regulations pertaining to the eligibility for employment of any persons performing work hereunder.

10.0 CAPTIONS AND PARAGRAPH HEADINGS

Captions and paragraph headings used in this Master Agreement are for convenience only and are not a part of this Master Agreement and shall not be used in construing this Master Agreement.

11.0 WAIVER

No waiver by either party of any breach of any provision of this Master Agreement shall constitute a waiver of any other breach or of such provision. Failure of either party to enforce at any time, or from time to time, any provision of this Master Agreement shall not be construed as a waiver thereof. The rights and remedies set forth in this Paragraph 11.0 are non-exclusive and cumulative.



12.0 GOVERNING LAW, JURISDICTION AND VENUE

This Master Agreement shall be governed by, and construed in accordance with, the laws of the State of California. VENDOR agrees and consents to the exclusive jurisdiction of the courts of the State of California for all purposes regarding this Master Agreement and further agrees and consents that venue of any action brought hereunder shall be exclusively in the County of Los Angeles, California.

13.0 SEVERABILITY

If any provision of this Master Agreement or the application thereof to any person or circumstances is held invalid, the remainder of this Master Agreement and the application of such provision to other persons or circumstances shall not be affected, unless the essential purposes of this Master Agreement shall be materially impaired thereby.

14.0 HIRING POLICIES

14.1 Prohibition of Hiring

VENDOR and COUNTY agree that, during the term of this Agreement and for a period of six (6) months following its termination, neither party shall in any way induce or persuade any employee of one party to become an employee or agent of the other party. No bar exists to any hiring initiated through a public announ cement.

15.0 TERMINATION FOR GRATUITIES

COUNTY may, by written notices to VENDOR, terminate the right of VENDOR to proceed under this Master Agreement upon one (1) day's written notice, if it is found that gratuities in the form of entertainment, gifts, or otherwise were offered or given by, or any agent or representative of VENDOR, to any officer or employee of COUNTY with a view toward securing a contract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respects to the performing, of such contract. In the event of such termination, COUNTY shall be entitled to pursue the same remedies against VENDOR as it could pursue in the event of default by VENDOR.

16.0 TERMINATION FOR INSOLVENCY

COUNTY may terminate this Master Agreement forthwith in the event of the occurrence of any of the following:

A. Insolvency of VENDOR. VENDOR shall be deemed to be insolvent if it has ceased to pay its debts for at least sixty (60) days in the ordinary course of business, whether or not a petition has been filed under the Federal Bankruptcy Code and whether or not VENDOR is insolvent within the meaning of such laws.

B. The filing of a voluntary or involuntary petition regarding VENDOR under the Federal Bankruptcy Code.
C. The appointment of a Receiver or Trustee for VENDOR.
D. The execution by VENDOR of a general assignment for the benefit of creditors.

The rights and remedies of COUNTY provided in this Paragraph 16.0 shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Master Agreement.

17.0 TERMINATION FOR DEFAULT

COUNTY may, by written notice to VENDOR, terminate the whole or any part of this Master Agreement if, in the judgment of COUNTY's Purchasing Agent:

A. VENDOR has materially breached this Master Agreement as elsewhere provided herein: or
B. VENDOR fails to timely provide and/or satisfactorily perform any task, deliverable, service, or other work required under this Master Agreement hereunder; or
C. VENDOR has assigned or delegated its duties or subcontracted any performance of this Agreement without prior written consent by COUNTY as elsewhere provided.

VENDOR shall not be liable for any excess costs if its failure to perform under this Master Agreement, arises from force majeure, i.e., causes beyond the control and without the fault or negligence of VENDOR. If the failure to perform is caused by the default of a subcontractor, and if such default arises out of causes beyond the control of both VENDOR and subcontractor, and without the fault or negligence of either, VENDOR shall not be liable for any such excess costs for failure to perform, unless the goods or services to be furnished by the subcontractor were obtainable from other sources in sufficient time to permit VENDOR to meet the requirements. As used in this subparagraph the terms "subcontractor" and "subcontractors" mean subcontractor(s) at any tier.

If, after COUNTY has given notice of termination under the provisions of the Paragraph 17.0, it is determined by COUNTY that VENDOR was not in default under these provisions, or that the default was excusable under these provisions, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to Paragraph 18.0 (Termination for Convenience).

The rights and remedies of COUNTY provided in this Paragraph 17.0 are non-exclusive and cumulative.

18.0 TERMINATION FOR CONVENIENCE

This Master Agreement, may be terminated, when such action is deemed by COUNTY to be in its best interest. Termination shall be effected by delivery to VENDOR of a notice of termination specifying the extent to which performance of Agreement is



terminated and the date upon which such termination becomes effective, which shall be no less than ten (10) days after the notice is sent.

After receipt of a notice of termination, VENDOR shall submit its termination claim and invoice to COUNTY, in the form and with any certifications as may be prescribed by COUNTY. Such claim and invoice shall be submitted promptly, but not later than three months from the effective date of termination. Upon failure of VENDOR to submit its termination claim and invoice within the time allowed, COUNTY may determine on the basis of information available to COUNTY, the amount if any, due to VENDOR in respect to the termination, and such determination shall be final. When such determination is made, COUNTY shall pay VENDOR the amount so determined.

VENDOR shall honor purchase orders accepted on or before the effective date of termination.

19.0 TERMINATION FOR FAILURE TO OPERATE IN ORDINARY COURSE

VENDOR's stability was and/is a primary basis for entering into and continuing with this Agreement, therefore, COUNTY may terminate this Agreement by thirty (30) days written notice should vendor fail to continue to do business in the ordinary course.

20.0 COUNTY AUDIT SETTLEMENTS

If, at any time during or after the term of this Master Agreement, representatives of COUNTY conduct an audit of VENDOR regarding the work performed under this Master Agreement, and if such audit finds that COUNTY's dollar liability for any such work is less than payments made by COUNTY to VENDOR, then the difference shall be either repaid by VENDOR to COUNTY by cash payment upon demand or, at the sole option of COUNTY, deducted from any amounts due to VENDOR from COUNTY. If such audit finds that COUNTY's dollar liability for such work is more than the payments made by COUNTY to VENDOR, then the difference shall be paid to VENDOR by COUNTY by cash payment.

21.0 CONFLICT OF INTEREST

No COUNTY employee whose position with COUNTY enables such employee to influence the award or conduct of this Master Agreement, and no spouse or economic dependent of such employee, shall be employed in any capacity by VENDOR or have any other direct or indirect financial interest in this Master Agreement. No officer or employee of, nor any individual possessing any direct or indirect financial interest in, VENDOR, may in any way participate in COUNTY's approval, or ongoing evaluation, of such work, or in any way attempt to influence COUNTY's approval or ongoing evaluation of such work.

VENDOR shall comply with all conflict of interest laws, ordinances and regulations now in effect or hereafter to be enacted during the term of this Master Agreement. VENDOR warrants that it is not now aware of any facts which create a conflict of interest. If VENDOR hereafter becomes aware of any facts which might reasonably be expected to create a conflict of interest, it shall immediately make full written disclosure of such facts to COUNTY. Full written disclosure shall include, but is not limited to, identification of all persons implicated and a complete description of all relevant circumstances.



22.0 FORCE MAJEURE

Neither party will be liable for delays in performance beyond reasonable control, including, but not limited to, fire, flood, acts of God, or restriction of civil or military authority.

23.0 MOST FAVORED PUBLIC ENTITY

VENDOR represents that the price charged to COUNTY in this Agreement do not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions.

If VENDOR'S prices decline, or should VENDOR, at any time during the term of this Master Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in this Master Agreement, then such lower prices shall be immediately extended to COUNTY.

24.0 DAMAGE TO COUNTY FACILITIES, BUILDING OR GROUNDS

VENDOR shall repair, or cause to be repaired, at its own cost, any and all damage to COUNTY facilities, buildings, or grounds caused by VENDOR or employees, subcontractors or agents of VENDOR. Such repairs shall be made immediately after VENDOR has become aware of such damage, but in no event later than thirty (30) days after the occurrence.

If VENDOR fails to make timely repairs, COUNTY may make any necessary repairs. All costs incurred by COUNTY, as determined by COUNTY, as determined by COUNTY, for such repairs shall be repaid by VENDOR by cash payment upon demand or COUNTY may deduct such cost from any amounts due to VENDOR from COUNTY.

25.0 RESTRICTION ON LOBBYING

25.1 <u>COUNTY Projects</u>

VENDORS, and each COUNTY lobbyist or COUNTY lobbying firm as defined in COUNTY Code Section 2.160.010 retained by VENDORS, shall fully comply with COUNTY's Lobbyist Ordinance, COUNTY Code Chapter 2.160. Failure on the part of VENDOR or any COUNTY lobbyist or COUNTY lobbying firm retained by VENDOR to fully comply with COUNTY's Lobbyist Ordinance shall constitute a material breach of this



Agreement, upon which COUNTY may immediately terminate or suspend this Agreement.

26.0 NOTICES

All notices or demands required or permitted to be given or made under this Agreement shall be in writing and shall be hand-delivered with signed receipt or mailed by first-class registered or certified mail, postage prepaid, addressed to the parties at the following addressee:



If to COUNTY: County of Los Angeles
Internal Services Department
Purchasing Division
1100 N. Eastern Avenue, Room G115
Los Angeles, CA 90063
Attn: Mary Walcott, Purchasing & Contracts Analyst II

If to VENDOR: Office Depot
Business Services Division
13405 Kildare Place
Bradenton, FL 34202
Attn: David Swanstrom, Director of Local Government Services

Addresses may be changed upon ten (10) days prior written notice.

27.0 AUTHORIZATION WARRANTY

VENDOR represents and warrants that the person executing this Agreement for VENDOR is an authorized agent who has actual authority to bind VENDOR to each and every term, condition and obligation of this Agreement and that all requirements of VENDOR have been fulfilled to provide such actual authority.

28.0 VARIATION OF TERMS

The parties hereto agree that the terms and conditions contained herein shall prevail notwithstanding any variations on any acknowledgements, invoices or such other documents submitted by VENDOR. Any addendum hereto shall become binding upon the parties only after signature by authorized representatives of both parties.

29.0 CANCELLATION OF ORDERS

COUNTY may cancel any purchase order with respect to any Supplies or Product ordered without incurring any cancellation charges by giving VENDOR notice of such cancellation at least ten (10) days prior to the scheduled delivery date specified in COUNTY's order.

30.0 NON-EXCLUSIVITY

This Agreement is non-exclusive and shall not in any way preclude COUNTY from entering into similar agreement and/or arrangements with other vendors or from acquiring similar, equal or like goods and/or services from other entities or sources.

COUNTY makes no representation that it or any governmental entity will purchase any minimum quantities or dollar amounts.

31.0 Compliance with Applicable Law



VENDOR shall comply with all applicable Federal, State and local laws, rules, regulations, and ordinances, and all provisions required thereby to be included in this Master Agreement are hereby incorporated herein by reference.

VENDOR warrants that the products shipped may be used in a customary manner without violation of any law, ordinance, rule or regulation of any government or administrative body. These laws, ordinances, rules or regulations include, but are not limited to, CAL/OSHA and County Code Title 27 and Ordinance No. 4388 (electrical approval) and are incorporated herein by reference.

VENDOR shall indemnify and hold harmless COUNTY from and against any and all liability, damages, costs, and expenses, including, but not limited to, defense costs and attorneys' fees, arising from or related to any violation on the part of VENDOR, its employees, agents, or subcontractors of any such laws, rules, regulations, and ordinances.

32.0 Fair Labor Standards

VENDOR shall comply with all applicable provisions of the Federal Fair Labor Standards Act (FLSA), and shall indemnify, defend, and hold harmless COUNTY, its officers, employees, and agents from any and all liability, including, but not limited to, wages, overtime pay, liquidated damages, penalties, court costs, and attorneys' fees arising under any wage and hour law, including, but not limited to, FLSA, for work performed by VENDOR's employees for which COUNTY may be found jointly or solely liable.

33.0 Nondiscrimination and Affirmative Action

VENDOR certifies and agrees that all persons employed by it, its affiliates, subsidiaries or holding companies are and will be treated equally without regard to or because of race, color, religion, ancestry, national origin, sex, age, or physical or mental handicap, in compliance with all applicable Federal and State anti-discrimination laws and



regulations. VENDOR shall certify to, and comply with, the provisions of Exhibit A (VENDOR'S EEO Certification).

VENDOR shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, religion, ancestry, national origin, sex, age, or physical or mental handicap, in compliance with all applicable Federal and State anti-discrimination laws and regulations. Such action shall include, but is not limited to: employment, ugrading, demotion, transfer, recruitment or recruitment advertising, layoff or termination, rates of pay other forms of compensation, and selection for training, including apprenticeship.

VENDOR certifies and agrees that it will deal with its subcontractors, bidders or vendors without regard to or because of race, color, religion, ancestry, national origin, sex, age, or physical or mental handicap.

VENDOR certifies that it is in compliance with all federal, state, and local laws, including, but not limited to:

A. Title VI. Civil Rights Act of 1964;
B. Section 504, Rehabilitation Act of 1973;
C. Age Discrimination Act of 1975;



D. Title IX, Education Amendments of 1973, as applicable; and
E. Title 43, Part 17, Code of Federal Regulations, Subparts A & B;

And that VENDOR shall subject no person, on the grounds of race, creed, color, national origin, political affiliation, marital status, sex, age, or handicap, to discrimination as to any privileges or uses granted by this Agreement or under any project, program or activity supported by this Agreement.

VENDOR shall allow COUNTY representatives access to its employment records during regular business hours to verify compliance with the provisions of this Paragraph 33.0 when so requested by COUNTY.

If COUNTY finds that any of the provisions of this Paragraph 33.0 have been violated, such violation shall constitute a material breach of this Agreement upon which COUNTY may terminate or suspend this Agreement. While COUNTY reserves the right to determine independently that the anti-discrimination provisions of this Agreement have been violated, in addition, a determination by the California Fair Employment Practices Commission or the Federal Equal Employment Opportunity Commission that VENDOR has violated State or Federal anti-discrimination laws or regulations shall constitute a finding by COUNTY that VENDOR has violated the anti-discrimination provisions of this Agreement.

The parties agree that in the event VENDOR violates the anti-discrimination provisions of this Agreement, COUNTY shall, at its option, be entitled to the sum of Five Hundred Dollars ($500) for each such violation pursuant to California Civil Code Section 1671 as liquidated damages in lieu of terminating or suspending this Agreement.

34.0 CONSUMPTION REPORTS/ITEM NUMBERS/RESTRICTED PURCHASES

Each COUNTY department procurement office and participating agency is to be assigned a customer number to be used in identifying each sale and proper billing address. VENDOR is required to furnish to the COUNTY'S Internal Services Department (ISD) - Purchasing Division, monthly computer based usage reports of purchases separated by individual COUNTY departments, and/or delivery locations, and employee purchases, listing quantities of separate items purchased and total dollars expended. Usage reports listing items in alphabetical order and descending dollar volume order must also be furnished.

VENDOR must provide any other usage reports that COUNTY departments or participating agencies may require for their internal controls.

Computer generated requests for restricted items shall cause a message (on screen or verbally as appropriate) informing requestor of such restriction.

35.0 ORDERING REQUIREMENTS

VENDOR shall provide the ability for unlimited amount of users to order via on-line communication with the vendor's computer system by COUNTY-owned PC/CRT terminals and printers, or by FAX, telephone, direct mail or walk-in orders.



VENDOR shall design an Input Screen/Order Form to be used on all orders (which may be supported by normal COUNTY Purchase Order Form). Cost of input form creation, programming, future changes or modifications, and maintenance shall be exclusively for VENDOR'S account.

36.0 PARTICIPATING MUNICIPALITIES

The COUNTY has designated U.S. Communities Purchasing and Finance Agency (U.S. Communities) as the agency to provide administrative services related to purchases by other governmental entities (Participating Public Agencies) under this Agreement. At COUNTY'S sole discretion and option, and upon VENDOR entering into the requisite U.S. Communities Administration Agreement, Participating Public Agencies may acquire items listed in this Agreement. Such acquisition(s) shall be at the prices stated in this Agreement, or lower. In no event shall COUNTY be considered a dealer, remarketer, agent or representative of VENDOR.

37.0 EXCLUSIONS:

The following items are excluded from purchase by the County of Los Angeles:

29

Classroom Supplies (including Arts & Crafts), Paper, Computers & Computer Peripherals, Cameras, Film & Accessories, Photocopiers, Toner Products, Janitorial Equipment & Supplies, Food Products, Refrigerators, Audio-Visual Equipment & Supplies and Furniture.



**AUTHORIZATION OF MASTER AGREEMENT**

**BY AND BETWEEN**

**COUNTY OF LOS ANGELES**

**AND**

**OFFICE DEPOT**

---

**FOR**

**OFFICE AND CLASSROOM SUPPLIES**

IN WITNESS WHEREOF, the County of Los Angeles has caused this Agreement to be subscribed by its Purchasing Agent and VENDOR has caused this Agreement to be subscribed in its behalf by its duly authorized officer, this 2nd day of January, 2006.

**AUTHORIZATION OF MASTER AGREEMENT**

**BY AND BETWEEN**

**COUNTY OF LOS ANGELES**

**AND**

**OFFICE DEPOT**

**FOR**

**OFFICE AND CLASSROOM SUPPLIES**

IN WITNESS WHEREOF, the County of Los Angeles has caused this Agreement to be subscribed by its Purchasing Agent and VENDOR has caused this Agreement to be subscribed in its behalf by its duly authorized officer, this 2nd day of January, 2006.

COUNTY OF LOS ANGELES

By [signature]

Name: Payton Price

Title: Purchasing Agent Designee

VENDOR

By: [signature]

Name: Robert Cetina

Title: V.P. BSG

Reviewed and approved as to form and legality
by: Office Depot Legal Department

Attorney / Paralegal: [signature]

Date: 11/29/05



31

# EXHIBIT A

## OFFICE SUPPLIES PRICING AND DISCOUNTS

All in-stock items shown in the Office Depot General Line Catalogs and United Business Products Catalogs shall be priced at the following Discounts from the Manufacturer's list price, Cost Plus Percentage or at the prices as referenced in the attached spreadsheets (Core Products). **Note:** LL stands for Mfg. List Price Less, GP stands for Gross Profit and GM stands for Gross Margin.

**TONER ITEMS:**

| | |
|---|---|
| Discount allowed from Supplier Catalog: | LL 45% w/15% GP floor |
| Discount allowed from Wholesale Catalog: | LL 10% |

**FURNITURE:**

| | |
|---|---|
| Discount allowed from Supplier Catalog: | LL 45% w/15% GP floor |
| Discount allowed from Wholesale Catalog: | LL 10% |

**GENERAL OFFICE SUPPLIES:**

| | |
|---|---|
| Discount allowed from Supplier Catalog: | LL 45% w/15% GP floor |
| Discount allowed from Wholesale Catalog: | LL 10% |
| Discount allowed for General Office and Stationery Supplies-Most Frequently Ordered Items (MFOI) | LL 70% w/15% GP floor |

**TECHNOLOGY PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Supplier Catalog: | Cost Plus 13 GM |
| Cost Plus Percentage allowed from Wholesale Catalog: | Cost Plus 22 GM |
| Cost Plus Percentage allowed for MFOI General Office and Stationery Supplies | Cost Plus 13 GM |

**PAPER PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Supplier Catalog: | Cost Plus 17 GM |
| Cost Plus Percentage allowed from Wholesale Catalog: | Cost Plus 25 GM |
| Cost Plus Percentage allowed for MFOI General Office and Stationery Supplies | Cost Plus 17 GM |

**CATALOG PRODUCTS MARKED M AND S:**

| | |
|---|---|
| Discounts allowed for products in Catalogs marked M and S: | LL 10% |

| | |
|---|---|
| **CORE PRODUCTS:** | **Fixed Price** |

Note: Office Paper Products prices will float based upon market costs.
All other Office Supply Products prices are firm for the first twelve (12) months of the Agreement.

**EXHIBIT A – 1**

**CLASSROOM SUPPLIES**
**PRICING AND DISCOUNTS**

All in-stock items shown in the Office Depot School Supply Book, S. P. Richards Business School Catalog, Office Depot General Line Catalog and United Business Products shall be priced at the following Discounts from the Manufacturer's list price, Cost Plus Percentage or at the prices as referenced in the attached spreadsheets (Core Products). **Note**: LL stands for Mfg. List Price Less, GP stands for Gross Profit and GM stands for Gross Margin.

**CLASSROOM SUPPLIES:**

| | |
|---|---|
| Discount allowed from Supplier Catalog GP floor | LL 45% w/15% |
| Discount allowed from Wholesale Catalog: | LL 10% |
| Discount allowed for MFOI General Office and GP floor Stationery Supplies | LL 70% w/15% |

**ARTS AND CRAFTS:**

| | |
|---|---|
| Discount allowed from Supplier Catalog: floor | LL 45% w/15% GP |
| Discount allowed from Wholesale Catalog: | LL 10% |
| Discount allowed for MFOI General Office and floor Stationery Supplies | LL 70% w/15% GP |

**PAPER PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Supplier Catalog: | Cost Plus 17 GM |
| Cost Plus Percentage allowed from Wholesale Catalog: | Cost Plus 25 GM |

**CATALOG PRODUCTS MARKED M AND S:**

Discounts allowed for products in Catalogs marked M and S: LL 10%

**CORE PRODUCTS :** **Fixed Price**

Note: Classroom Paper Products prices will float based upon market costs. All other Classroom Products prices are firm for the first twelve (12) months of the Agreement.

## EXHIBIT A - 3

## OFFICE SUPPLIES
## PRICING AND DISCOUNTS ALTERNATE OPTION

Exhibit A-3 may be used as an alternate pricing option in place of Exhibit A. All items shown on the Office Depot Web site shall be priced at the following Discounts or at the prices as referenced in the attached spreadsheets (Core Products). **Note**: WL stands for Office Depot Web price Less, GP stands for Gross Profit and GM stands for Gross Margin.

**TONER ITEMS:**

| | |
|---|---|
| Discount allowed from Web Site: | WL 10% |
| Discount allowed from Wholesale Catalog: | WL 10% |

**FURNITURE:**

| | |
|---|---|
| Discount allowed from Web Site: | WL 10% |
| Discount allowed from Wholesale Catalog: | WL 10% |

**GENERAL OFFICE SUPPLIES:**

| | |
|---|---|
| Discount allowed from Web Site: | WL 10% |
| Discount allowed from Wholesale Catalog: | WL 10% |

**TECHNOLOGY PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Web Site: | WL 10% |
| Cost Plus Percentage allowed from Wholesale Catalog: | WL 10% |

**PAPER PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Web Site: | WL 10% |
| Cost Plus Percentage allowed from Wholesale Catalog: | WL 10% |

**CORE PRODUCTS:** **Fixed Price**

Note: Office Paper Products prices will float based upon market costs.
All other Office Supply Products prices are firm for the first twelve (12) months of the Agreement.



## EXHIBIT A – 4

## CLASSROOM SUPPLIES
## PRICING AND DISCOUNTS ALTERNATE OPTION

Exhibit A-4 may be used as an alternate pricing option in place of Exhibit A-1. All items shown on the Office Depot Web site shall be priced at the following Discounts or at the prices as referenced in the attached spreadsheets (Core Products). **Note:** WL stands for Office Depot Web price Less, GP stands for Gross Profit and GM stands for Gross Margin.

**CLASSROOM SUPPLIES:**

| | |
|---|---|
| Discount allowed from Web Site: | WL 10% |
| Discount allowed from Wholesale Catalog: | WL 10% |

**ARTS AND CRAFTS:**

| | |
|---|---|
| Discount allowed from Web Site: | WL 10% |
| Discount allowed from Wholesale Catalog: | WL 10% |

**PAPER PRODUCTS:**

| | |
|---|---|
| Cost Plus Percentage allowed from Web Site: | WL 10% |
| Cost Plus Percentage allowed from Wholesale Catalog: | WL 10% |

**CORE PRODUCTS :** **Fixed Price**

Note: Classroom Paper Products prices will float based upon market costs. All other Classroom Products prices are firm for the first twelve (12) months of the Agreement.

**EXHIBIT A - 5**

**Additional Services**

**Copy and Print Services**

| | |
|---|---|
| Copy and Print Services | Retail – 15% |

**Promotional Products**

| | |
|---|---|
| Promotional Products | Promotional Catalog - 5% * |

*Additional fees will apply for imprinting and shipping



**EXHIBIT B**

**VENDOR'S PROPOSAL**

(VENDOR's proposal is not attached hereto.)
(The Vendor's proposal is incorporated herein.)

**EXHIBIT C**

**COUNTY'S REQUEST FOR PROPOSALS (RFP)**

(County's Request for Proposal is not attached hereto.)
(The County's Request for Proposal is incorporated herein.)

**EXHIBIT D**

**VENDOR'S EEO CERTIFICATION**

Office Depot
Vendor's Name

2200 Old Germantown Rd, Delray Beach, Fl
Address

59-266-3954
Internal Revenue Service Employer Identification Number

GENERAL CERTIFICATION

In accordance with Section 4.32.010 of the Code of the County of Los Angeles, the Contractor, supplier, or vendor certifies and agrees that all persons employed by such firm, its affiliates, subsidiaries, or holding companies are and will be treated equally by the firm without regard to or because of race, religion. Ancestry, national origin, or sex and in compliance with all anti-discrimination laws of the United States of America and the State of California.

VENDOR'S SPECIFIC CERTIFICATIONS

1. The Vendor has a written policy statement prohibiting discrimination in all phases of employment. Yes X No. ____

2. The Vendor periodically conducts a self analysis or utilization analysis of its work force. Yes X No ____

3. The Vendor has a system for determining if its employment practices are discriminatory against protected groups. Yes X No ____

4. Where problem areas are identified in employment practices, the Vendor has a system for taking reasonable corrective action, to include establishment of goals or timetables. Yes X No ____

Robert Cetina U.P. BSG
Name and title of signer

[signature]
Signature

11/29/2005
Date

Reviewed and approved as to form and legality
by: Office Depot Legal Department

Attorney / Paralegal: [signature]
Date: 11/29/05

06/15/06 14:12 FAX 323 415 86 LA CO. ISD 002

May. 24. 2006 10:52AM Charles Schwab No. 3793 P. 2

TERM CONTRACT AMENDMENT

INTERNAL SERVICES DEPARTMENT

| | |
|---|---|
| NUMBER | 42595 |
| AMENDMENT | 02 |
| BUYER: | MARY WALCOTT |
| BUYER PHONE : | (323) 267 2208 0000 |
| T NUMBER : | |
| DATE ISSUED : | 05/02/06 |
| VENDOR NUMBER | 051258 14 |
| VENDOR PHONE : | (800) 650-1222 |
| REQ AGENCY : | 159000 |

INTERNAL SERVICES DEPARTMENT

| | |
|---|---|
| AGENCY REQ NO | |
| REQ NO. | 11022107 |
| FISCAL YEAR : | 06 |
| EFFECTIVE DATE : | 01/02/06 |
| EXPIRATION DATE: | 01/01/10 |
| TYPE CHANGE : | ADMINISTRATIVE CHANGE |

OFFICE DEPOT
PO BOX 70049
LOS ANGELES, CA 90074 0049

OFFICE AND CLASSROOM SUPPLIES

AMENDMENT #2 IS ISSUED TO INCORPORATE THE FOLLOWING:

CUSTOMERS WITH SPEND OF $1,000,000 AND ABOVE HAVE THE OPTION OF 1) RECEIVING AN ANNUAL REBATE, 2) AN INCREASED DISCOUNT ON ALL ITEMS OR 3) MUTUALLY AGREED TO ADDITIONAL LIST OF ITEMS ADDED TO THEIR CONTRACT WITH A HIGHER DISCOUNT ON THE PRODUCTS.

IF THE ADDITIONAL DISCOUNT ON ALL OR INDIVIDUAL ITEMS IS SELECTED AND THE PROJECTED VOLUMES DECLINE OVER PRIOR YEAR BY 20%, OFFICE DEPOT RESERVES THE RIGHT WITH 60 DAYS WRITTEN NOTICE TO ADJUST THE ADDITIONAL DISCOUNT TO REFLECT THE PROPER DISCOUNT TIER.

BAISIS: EMAIL RECEIVED FROM DAVID SWANSTROM, OFFICE DEPOT, DATED 4/19/06

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Mary Walcott 5/3/06
COUNTY OF LOS ANGELES

VENDOR SIGNATURE DATE

90

TERM CONTRACT

AMENDMENT

INTERNAL SERVICES DEPARTMENT



NUMBER : 42595
AMENDMENT : 01
BUYER : MARY WALCOTT
BUYER PHONE : (323) 267-2208-0000
T-NUMBER :
DATE ISSUED : 03/20/06
VENDOR NUMBER : 051258 -14
VENDOR PHONE : (800) 650-1222
REQ AGENCY : IS9000
INTERNAL SERVICES DEPARTMENT
AGENCY REQ NO. :
REQ NO. : 11022107
FISCAL YEAR : 06
EFFECTIVE DATE : 01/02/06
EXPIRATION DATE: 01/01/10

TYPE CHANGE : ADMINISTRATIVE CHANGE

OFFICE DEPOT
PO BOX 70049
LOS ANGELES, CA 90074-0049

OFFICE AND CLASSROOM SUPPLIES

AMENDMENT #1 IS ISSUED TO INCORPORATE THE FOLLOWING CHANGES:

1) INCORPORATE REBATE STRUCTURE AS FOLLOWS:

| ANNUAL PURCHASES | REBATE |
|---|---|
| $500K - $1M | 0.5% |
| $1M - $3.5M | 2.0% |
| $3.5M + | 5.0% |

2) INCORPORATE DELIVER TERMS TO BE FOB DESTINATION FREIGHT PRE-PAID AND ALLOWED.

ALL REMAINING TERMS AND CONDITIONS REMAIN THE SAME.

Mary Walcott 3/20/06
COUNTY OF LOS ANGELES

VENDOR SIGNATURE/DATE

FRONT INFORMS 1956

3/21/06

41

# EXHIBIT 2

**ATTACHMENT H**




*Government Purchasers Saving You Money*

**Founding Co-Sponsors**








U.S. Communities Purchasing & Finance Agency (U.S. Communities) is a non-profit instrumentality of government established by state and local government to assist public agencies reduce the cost of purchased goods and finance purchased goods. The Association of School Business Officials, International (ASBO), the National Association of Counties (NACo), the National Institute of Governmental Purchasing (NIGP), the National League of Cities (NLC), and the United States Conference of Mayors (USCM), jointly sponsor the U.S. Communities Government Purchasing Alliance (U.S. Communities).

Designed in cooperation with an Advisory Board of state and local government purchasing officials, U.S. Communities pools the purchasing power of public agencies, achieves bulk volume discounts on behalf of public agencies, competitively solicits quality products through a lead public agency and provides a purchasing forum for public agencies nationwide.

**The following document contains an explanation of the commitments, requirements and expectations of all suppliers that enter into an administrative agreement with U. S. Communities. Please review and provide the signature of a Corporate Officer at the end of each section.**

ATTACHMENT H

## SUPPLIER COMMITMENTS

U.S. Communities asks each supplier to make three basic commitments to ensure the overall success of the program:

**Corporate Commitment** – A commitment that U.S. Communities has the support of senior management, and that the U.S. Communities contract is the supplier's primary offering to state and local government agencies nationwide. The supplier shall make its existing state and local public agency clients aware of its U.S. Communities contract, and upon the state or local public agency's request, such agency will be transitioned to the supplier's U.S. Communities Contract.

**Pricing Commitment** – A commitment that supplier's U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.

**Sales Commitment** – A commitment that the supplier will aggressively market U.S. Communities nationwide and that the sales force will be trained, engaged and commited to offering U.S. Communities to state and local public agencies nationwide, with a further commitment that all U.S. Communities sales be accurately and timely reported.

**The Corporate, Pricing and Sales Commitments are the foundation of the relationship between U.S. Communities and its suppliers. The Commitments are not negotiable. If a supplier is found to be in violation and/or non-compliance with one or more of the U.S. Communities Commitments, the supplier will have ninety days to provide resolution and come into compliance. Failure to do so will result in removal from the U.S. Communities national program.**

Name: Robert Cetina
Title: Vice President – Government and Education Services
Signature: [signature]



Version 3.1

ATTACHMENT H

## SUPPLIER PROGRAM STANDARDS

We recognize that each supplier has a successful business and may choose to manage its U.S. Communities program in a variety of ways that best suit the supplier's business model, organization and market approach. The following are Program Standards intended to assist the supplier in successfully implementing the U.S. Communities contract:

**U.S. Communities Administration Agreement** - The supplier is required to execute the U.S. Communities Administration Agreement ("Agreement") prior to the award of the U.S. Communities contract. The Agreement outlines the supplier's general duties and responsibilities in implementing the U.S. Communities contract.

**National Account Management Team** – The supplier shall provide a National Account manager with the authority and responsibility for the overall success of the U.S. Communities contract within the supplier's organization. The supplier shall also designate a Lead Referral Contact Person, responsible for receiving communications from U.S. Communities concerning new public agency registrations and for ensuring timely follow up by the supplier's staff to requests for contact from public agencies. Additionally, the supplier shall provide the personnel necessary to implement and support a supplier-based internet web page dedicated to the supplier's U.S. Communities program and linked to the U.S. Communities web site.

**State and Local Agency Access** - Establish the following communication links to facilitate customer access and communication:

- A dedicated U.S. Communities internet web-based homepage with:
  - -U.S. Communities standard logo with Founding Co-Sponsors;
  - -Copy of original Request for Proposal or Invitation to Bid;
  - -Copy of contract and amendments between lead public agency and supplier;
  - -Summary of products and pricing;
  - -Electronic link to U.S. Communities' online registration page;
  - -Other promotional material as desired.
- A dedicated toll free national hotline for U.S. Communities
- A fax number for inquiries and orders
- A dedicated e mail address for general inquiries, "uscommunities@(name of supplier.com)

**Electronic Registration** - The supplier is responsible for ensuring that each Participating Public Agency has completed U.S. Communities' online registration process prior to processing the Participating Public Agency's first sales order.

**Sales Report** - The supplier is responsible for reporting all Participating Public Agency sales within 30 days of the end of each calendar quarter in the prescribed format set forth in the Agreement.

ATTACHMENT H

**Administrative Fees** - The supplier is responsible for paying to U.S. Communities an administrative fee on all Participating Public Agency sales volumes within 30 days of the end of each calendar quarter as set out in the Agreement.

**Quarterly Review** - U.S. Communities will schedule a quarterly meeting with the supplier to evaluate the supplier's performance of Supplier Commitments and Program Standards outlined herein.

**U.S. Communities Awareness** - U.S. Communities is responsible for marketing the overall U.S. Communities concept and program to Participating Public Agencies. U.S. Communities marketing is intended to supplement and enhance the direct sales effort of the supplier. The supplier assists by providing camera-ready logos and by participating in related trade shows and conferences. U.S. Communities employs a national marketing team, a web based registration and lead referral system, a network of national and state sponsors, direct mail, the Internet and newsletters and other publications to increase U.S. Communities awareness.

**Supplier Sales** - Supplier is responsible for proactive direct sales of supplier's goods and services to public agencies nationwide and the timely follow up to leads established by U.S. Communities. Use of product catalogs, targeted advertising, direct mail and other sales initiatives are encouraged. All sales materials are to use the U.S. Communities logo. U.S. Communities will provide each Supplier with its logo and the standards to be employed in the use of the logo. At a minimum, the supplier's sales initiatives should communicate:

- Contract was competitively solicited by a Lead Public Agency;
- Best government pricing
- No cost to participate
- Non-exclusive contracts

**Sales Force Training** - Supplier is responsible for the training of its national sales force on the U.S. Communities contract. U.S. Communities is available to train regional or district managers and generally assist with the education of sales personnel. At a minimum, sales training should include:

- Key features of U.S. Communities contract
- Working knowledge of National Sponsors and U.S. Communities Organization and Solicitation Process
- Awareness of the range of public agencies that can access U.S. Communities

Name: Robert Cetina

Title: Vice President – Government and Education Services

Signature:

**ATTACHMENT H**

PUBLIC AGENCY SOLICITATION RESPONSE GUIDELINES

While it is the objective of the U.S. Communities program to have public agencies piggyback on the contracts rather than issue their own bids and RFP's, U.S. Communities recognizes that for various reasons many public agencies will issue their own solicitations. The following options are available to U.S. Communities Suppliers when responding to Public Agency solicitations.

1. Respond to the bid or RFP with pricing that is higher (net to buyer) than the Suppliers' U.S. Communities contract pricing.
2. Respond to the bid or RFP with pricing that is higher (net to buyer) than the Suppliers U.S. Communities contract pricing. If an alternative response is permitted offer the U.S. Communities contract as an alternative for their consideration.
3. Respond with your U.S. Communities contract pricing. If successful the sales would be reported under U.S. Communities.
4. If competitive conditions required pricing lower than the standard U.S. Communities contract pricing, the supplier can submit lower pricing through the U.S. Communities contract. If successful the sales would be reported under U.S. Communities.
5. Do not respond to the bid or RFP. Make the U.S. Communities contract available to the agency to compare against their solicitation responses.

**Name:** Robert Cetina

**Title:** Vice President – Government and Education Services

**Signature:** [signature]

 Version 3.1

# EXHIBIT 3



County of Santa Clara
Office of County Executive
Procurement Department
2310 N. First Street Suite 201
San Jose, CA 95131-1040
Telephone 408-491-7400 • Fax 408-491-7496

June 4, 2008

**CONTRACT AWARD NOTICE**

**CONTRACT TITLE:** Office and Stationery Supplies and Equipment

**CONTRACT NUMBER:** 5500001618

**INITIAL AWARD DATE:** April 1, 2007

**CONTRACT TERM:** April 1, 2007 through January 1, 2012

**COMMODITY NAME:** Office Supplies **COMMODITY NO:** 615

**AUTHORIZED USERS:** All County Agencies and Departments

**SUPPLIER:** Office Depot , Inc.
2200 Old Germantown Rd.
Delray Beach, FL 33445
**SUPPLIER NO:** 1007585

**SUPPLIER CONTACT:** Pat Mulhern
**TELEPHONE:** 510-497-5206
**FAX:** 408-748-0262
**CELL:** 510-364-0204
**EMAIL:** pat.mulhern@officedepot.com

**PURPOSE:** To establish a contract with Office Depot for office and stationery supplies and equipment.

**TAX STATUS:** Taxable products

**TOTAL VALUE:** The total value of a five year contract shall not exceed $25,000,000.

**REFERENCE:** The following constitute the contract documents and are incorporated herein by reference:

1. Agreement By and Between the County of Santa Clara and Office Depot effective April 1, 2007.



Board of Supervisors: Donald F. Gage, Blanca Alvarado, Pete McHugh, Ken Yeager, Liz Kniss
County Executive: Peter Kutras, Jr.

**AWARD:** The County of Santa Clara Procurement Department hereby awards contract number 5500001618 to Office Depot in accordance with the documents that are hereby incorporated in this contract. (See **REFERENCE** of this document.)

Prepared and administered by: Julie Toy, at 408-491-7407 or Julie.toy@proc.sccgov.org

**COUNTY OF SANTA CLARA**

Jenti Vandertuig
Director of Procurement
Date: 6/19/08

**OFFICE DEPOT, INC.**

Print Name: Patrick M. Welch
Title: Regional Vice President
Date: 6-13-08

**APPROVED AS TO FORM AND LEGALITY**

Kristin Baker — Date 6/5/08
Deputy County Counsel

Reviewed and approved as to form and legality by: Office Depot Legal Department

Attorney / Paralegal:
Date: 6-11-08

**APPROVED BY:**

Gary A. Graves — Date 6/19/08
Assistant County Executive

Attachment: Agreement By and Between the County of Santa Clara and Office Depot

*Contract 5500001618*
*Between the County of Santa Clara*
*And Office Depot*

**AGREEMENT BY AND BETWEEN THE COUNTY OF SANTA CLARA AND OFFICE DEPOT FOR OFFICE AND STATIONERY SUPPLIES AND EQUIPMENT**

## 1. PURPOSE

This Office and Stationery Supplies and Equipment Agreement (hereafter "Agreement") is made and entered into by and between the County of Santa Clara (hereafter "County"), and Office Depot, Inc.(hereafter "Contractor").

WHEREAS, County and Contractor agree that Contractor will offer to provide County as more fully described herein with Office and Stationery Supplies and Equipment (hereafter sometimes referred to as "Products").

WHEREAS, Contractor is in the business of selling and supplying Office and Stationery Supplies and Equipment, and

WHEREAS, Contactor is willing and able to offer, deliver, service and support the Products it offers to County as set forth herein. This document, together with the Exhibits identified in 1.1 ("Exhibits"), defines the scope of this Agreement.

1.1 The following Exhibits are attached hereto and incorporated herein by reference:

A. Exhibit A: List of Core Products and Pricing (effective 4/1/07)
B. Exhibit A1: List of Core Products and Pricing (effective 1/1/08)
C. Exhibit B: Non-Core Categories and Discounts (effective 4/1/07)
D. Exhibit C: Rebate Structure
E. Exhibit D: Key Personnel and Escalation Process
F. Exhibit E: Restricted Items
G. Exhibit F: Service and Support Requirements
H. Exhibit G: County Holidays
I. Exhibit H: Insurance Requirements
J. Exhibit I: Account Setup Forms

1.2 The following terms shall have the following meaning and use herein. Capitalized terms used in this Agreement, not defined in this section shall have the meaning ascribed to them elsewhere in this Agreement or in the Exhibits.

A. "Agreement" and "Contract" shall have the same meaning.

B. Day(s)" means calendar day(s) unless otherwise specified.

C. "Fiscal year" means the twelve (12) month period beginning July 1st and ending June 30th.

D. "Normal working hours" means eight hours per day, Monday through Friday, with starting and ending times departmentally established.

**2. TERM**

2.1 This initial term of this Agreement is from April 1, 2007 through January 1, 2010, with the right to extend the Agreement for two additional years through January 1, 2012, unless terminated earlier or otherwise amended.

2.2 This Agreement shall not be effective or binding unless approved in writing by the County Director of Procurement, or authorized designee, and an authorized representative of Contractor as evidenced by their signature as set forth in this Agreement.

2.3 Furthermore, at any time during the term of the Agreement, the Agreement is subject to early termination or termination for lack of appropriations or termination for cause in accordance with sections 3.1 or section 3.2 or section 3.3 of this Agreement. County may continue to purchase products from the Contractor beyond the contract term.

**3. TERMINATION**

3.1 Early Termination. Notwithstanding any other provision of this Agreement, either party may terminate this Agreement by delivering to the other party notice of the intent to terminate at least ninety (90) days prior to the intended date of termination. By such termination, neither County nor Contractor may nullify obligations, if any, already incurred for performance or failure to perform prior to the date of termination. Termination under this section 3.1 may be made with or without cause. **THIS PROVISION IS NOT EXCLUSIVE AND DOES NOT CONSTITUTE A WAIVER OF ANY OTHER LEGAL RIGHTS AND REMEDIES AFFORDED COUNTY IN SUCH CIRCUMSTANCES AS THE CONTRACTOR'S DEFAULT OR BREACH OF CONTRACT.**

3.2 Termination for Lack of Appropriations. The terms of this Agreement are contingent upon sufficient authorizations and appropriations being or having been made by County for the performance of this Agreement. If sufficient authorizations and appropriations are not or have not been made by County, or are discontinued by County, this Agreement shall terminate upon written notice being given by County to Contractor. County's decision as to whether sufficient authorizations or appropriations are or have been made, or are or have been discontinued, shall be accepted by Contractor and shall be final. County shall pay for all Products delivered up through the effective date of termination.

3.3 Termination for Cause. County may immediately terminate this Agreement for cause upon 30 days written notice to Contractor. For purposes of this Agreement, cause includes, but is not limited to, any of the following: (1) material breach of this Agreement by Contractor, (b) violation by Contractor of any applicable laws, or (c) assignment by Contractor of this Agreement without the written consent of County pursuant to section 6. Such notice will specify the reason for termination and will indicate the effective date of such termination.

3.4 Termination for Gratuities. County may, by written notice to Contractor, terminate the right of Contractor to proceed under this Agreement upon one (1) day's written notice, if it is found that gratuities in the form of entertainment, gifts, or otherwise were offered or given by, or any agent or representative of Contractor, to any officer or employee of County with a view toward securing a contract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respects to the performing, of such contract. In the event of termination, County shall be entitled to pursue the same remedies against Contractor as it could pursue in the event of default by Contractor.

In the event of termination, Contractor will deliver to County copies of all reports under this Agreement and fulfill all orders placed prior to the termination date. Upon receipt thereof, Contractor will be paid for reimbursable expenses incurred to the date of termination.

## 4. CHANGE NOTICES AND AMENDENTS

4.1 For any change that affects the period of performance, payments, or any terms and conditions included in this Agreement, a negotiated Amendment to this Agreement shall be prepared and executed by the County Director of Procurement and Contractor's authorized officials and designee.

4.2 Failure by Contractor to secure proper prior written authorization from County for additional products or services beyond those specifically stated in this Agreement may be a waiver by Contractor of any claim for additional compensation related to such item.

## 5. NON-TRANSFERABLE RESPONSIBILITIES

No assumptions or takeover of any of Contractor's duties, responsibilities, or obligations, or performance of same by any entity other than Contractor whether through assignment, subcontract, delegation, merger, buyout, or any other mechanism, with or without consideration, for any reason whatsoever, may occur without County's express prior written approval.

If any such assumption, takeover, or unauthorized performance does occur without such prior written approval, this Agreement may become void for failure of its essential purpose. Such act is therefore a material breach of this Agreement, upon which County may pursue any lawful remedy.

## 6. ASSIGNMENT

Contractor shall not assign its rights, delegate its duties or subcontract any performance of this Agreement without the express prior written consent of County. Any assignment, delegation or subcontract without such express prior written consent shall be null and void and shall constitute a material breach of this Agreement, upon which County may immediately terminate the Agreement in accordance with the provisions of section 3.3 (Termination for Cause).

## 7. TIME IS OF THE ESSENCE

Time is of the essence. If any anticipated or actual delays arise, Contractor shall immediately so notify County. Regardless of notice if deliveries are not made at the time agreed upon, County may, at its sole discretion, terminate this Agreement and proceed pursuant to section 3.3 (Termination for Cause).

## 8. SCOPE

8.1 Contractor shall fully complete and timely deliver, pursuant to standards, requirements, and schedules either presently incorporated in or to be developed hereunder, all tasks, deliverables, sub-deliverables, goods, services, resources, tools and other work as set forth herein and elsewhere hereunder.

8.2 All work performed by the Contractor under this Agreement, and the obligations of the County, must conform to applicable government laws, regulations, and codes as well as to acceptable industry standards and practices. This conformance includes but is not limited to all relevant State of California laws and statutes and County Rules and Regulations and documented County procedures.

8.3 Contractor shall cooperate with County's periodic review of Contractor's performance. Contractor shall make itself available onsite to review the progress of the project and Agreement, as requested by the County, upon reasonable advanced notice.

8.4 Contractor shall provide the service and support requirements listed on Exhibit F.

8.5 Contractor shall setup new accounts and manage existing accounts through the use of an account setup form (Exhibit I). County may update the forms from time to time.

8.6 Contractor shall provide and distribute catalogs, quick reference product brochures, and core product listings upon request by County, at no additional cost.

8.7 Contractor shall guarantee that the pricing on the electronic ordering system is kept current and maintained according to section 10 of this Agreement.

## 9. COUNTY CONTRACT ADMINISTRATOR

This Agreement shall be administered by the County Procurement Department. The County Procurement Department shall appoint an administrator for this Agreement who shall be the official contact between Contractor and County in all matters concerning this Agreement. All events, problems concerns or requests affecting this Agreement must be reported by Contractor to the Administrator in a timely manner.

## 10. PRICING

Contractor shall upload pricing in the electronic ordering system according to the timelines listed in 10.2, 10.3 and 10.4 below.

10.1 The maximum compensation paid to Contractor for a five year term is $25,000,000.

10.2 Core items: Exhibit A (List of Core Products and Pricing) is the basis for pricing of core items under this Agreement. Core Products are updated every January 1st.

10.3 Non-core items: Exhibit B (Non-Core Categories and Discounts) is the basis for pricing of non-core items under this Agreement. Contractor agrees for the period of this Agreement that prices for products covered herein will be based on a discount from manufacturer's current published price lists or Cost Plus Percentage. Non-core categories and discounts are updated every January 1st and July 1st .

10.4 Paper pricing will be subjected to adjustments according to mill pricing. Pricing subjected to change with a fifteen (15) days prior written notice to County.

10.5 Rush requests for custom or special order products may incur an additional shipping and/or handling fee. Additional rush fees or charges must be stated on Contractor's quote to County.

10.6 Contractor shall extend the same pricing and discounts listed herein to County at retail stores through use of County Procurement Card (P-card) as a method of payment. County shall provide a list of cardholders with current information to Contractor to facilitate on-line and retail store purchases with P-cards.

10.7 Contractor shall advise County in writing of any proposed price changes or manufacturer's discount structure changes, indentifying Agreement by number, providing a copy of the proposed price list and/or acceptable evidence of change in manufacturer's discount structure. Contractor shall be responsible for furnishing and delivering approved price list(s) to all County agencies and departments. It also shall be Contractor's responsibility to keep current the pricing on the electronic on-line ordering system and keep County informed of any other changes. Unless otherwise qualified, revisions shall be effective on the seventh (7) business day after such notifications and receipt thereof. Upward revisions shall be subject to acceptance by County.

10.8 County is not liable for any fee that is not delineated in this Agreement.

10.9 If an increase in price is determined not to be acceptable by County, Contractor will be obligated to furnish the ordered products at the previous price(s).

10.10 County reserves the right to review discount structures at the end of the initial twelve (12) months of the Agreement and amend same if such is in the best interest of the County. A primary consideration will be the then current annual dollar volume as opposed to the original dollar estimate of the Agreement.

10.11 Notwithstanding anything herein to the contrary for thirty (30) days from date of delivery to Customer, should Customer find a lower price, offered in Northern California, for the same product, payment terms, quantity and delivery terms and conditions set forth in this Agreement, Contractor shall, upon presentation of authentic (e.g., sales invoice, advertisement) proof of such, immediately refund the difference to the County. This condition shall not apply to special and/or one time offers, liquidation sales and discounted product(s). Further, County contract suppliers and non-authorized resellers, where required by the manufacturer, are excluded.

## 11. PRICING MAINTENANCE

11.1 Contractor shall be the solely responsible for the maintenance of the Agreement and will document all additions, deletions, manufacturers' discontinuances of Products, and all associated variables, including pricing revisions. Any changes, substitutions, additions, deletions and/or pricing revisions must be reviewed and approved by the County and Contractor in writing prior to any inclusion to the Agreement.

11.2 County's Director of Procurement, or designee, will notify Contractor in writing of formal approval within seven days after Contractor's submittal of any change to the catalogs.

11.3 Said notification and approval shall be binding upon County and Contractor. Upon such approval, the Agreement shall be deemed to be amended to include such Changes. All documentation and formal approvals and revised copies of the effected Agreement page(s) reflecting current release revisions will be submitted to:

County of Santa Clara Procurement Department
Attention: Contract Administrator of OD contract
2310 North First Street, Suite 201
San Jose, California 95131-1040

11.4 Catalogs shall have complete descriptions of each item.

## 12. MOST FAVORED PUBLIC ENTITY

12.1 Contractor represents that the price charged to County in this Agreement do not exceed existing selling prices to other customers for the same and substantially similar items or services for comparable quantities under similar terms and conditions.

12.2 If Contractor's prices decline, or should Contractor, at any time during the term of this Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in this Agreement, then such lower prices shall be immediately extended to County.

**13. REBATES**

County shall receive electronic and volume rebates from Contractor as specified on Exhibit C (Rebate Structure) of this Agreement. All rebates shall be calculated according to the annual net revenue for the County. Rebates shall be issued in the form of a check to the County Procurement Department within sixty (60) days of each anniversary date.

**14. METHOD OF PURCHASE**

County may purchase Products in the following manner:

14.1 Purchase Orders. Written POs will be faxed to the Contractor. Contractor shall process the orders within two (2) business days of receipt.

14.2 Suborders. Sub-orders will be faxed to the Contractor. Contractor shall process all sub-orders within two (2) business days of receipt.

14.3 Electronic Ordering System. System shall be made available to the County 24x7x365.

14.4 Procurement Card (P-card). P-card may be used as a method of payment through the Contractor's electronic ordering system or at Contractor's retail stores.

**15. RESTRICTED PRODUCTS**

Unless specified on Exhibit A (List of Core Products and Pricing), the categories listed on Exhibit E (Restricted Items) are restricted from purchase through this Agreement. Contractor shall restrict the items from purchase via the electronic ordering system.

**16. QUANTITIES**

County does not guarantee, either expressed or implied, to purchase an estimated annual quantity but reserves the right to purchase any quantity of Products. No minimum order requirements permitted.

**17. DELIVERY TIMELINES**

17.1 In normal circumstances, all orders received before 5:00pm, Monday through Friday, shall be delivered by 5:00pm next business day, except for backorders, special and custom ordered items and County holidays. Orders placed during the weekend or County holiday will be delivered the following Monday, except if

otherwise noted on the order. Exhibit G (County Holidays) of this Agreement lists the County holidays.

17.2 In the event that an emergency is declared by an authorizing official of the County, or authorized designee, and an order(s) is marked for emergency delivery, Contractor shall deliver order(s) either the same day or the next calendar day, with the exception of section 50 (Force Majeure) of this Agreement.

17.3 All back-ordered items shall be delivered once made available to County. County reserves the right to cancel a back-ordered item prior to shipping. Back-ordered items shall be kept at a minimum.

17.4 All custom orders shall be delivered by Contractor's promised date on the quote.

## 18. DELIVERY LOCATIONS AND INSTRUCTIONS

18.1 Products shall be delivered to the ship to address on the order. Deliveries shall be made to a receiving dock or desktop as instructed on the order or account.

18.2 All shipments to County shall be delivered as Free on Board (F.O.B.) destination – freight prepaid and allowed. Any shipments returned to Contractor shall be delivered as F.O.B. shipping point.

18.3 Risk of Loss: Regardless of the F.O.B. point, Contractor agrees to bear all risks of loss, injury, or destruction of goods; materials ordered herein which occur prior to delivery; and such loss, injury or destruction shall not release Contractor from any obligations hereunder.

## 19. INVOICES

19.1 Invoices shall be sent to the bill to address on the order. Credit card charges shall be made directly against the County P-card cardholder number.

19.2 If paper invoiced, the document shall include: Contractor's complete name and remit to address; invoice date, invoice number, and payment term; County contract number; pricing per the Agreement; applicable taxes; and total price.

19.3 Contractor and County shall make reasonable efforts to resolve all invoicing disputes within forty-eight (48) hours.

## 20. PAYMENT TERMS

20.1 In no event shall the County pay late payment fees or charges.

20.2 Unless otherwise set forth on the applicable order, payment terms are net 30 days from receipt of an undisputed invoice and Products. Invoices shall be deemed to have been submitted in proper form unless County notifies Contractor to the contrary within fourteen (14) days upon receipt of invoice.

20.3 P-card payments will be made according to the County's P-card policy. Statements are reconciled once a month.

20.4 Electronic transfer of funds is now the preferred method of payment. E-payments are made to the payee's bank account with a financial institution. Payment is deemed to have been made when the funds are transferred.

20.5 Contractor shall agree that the responsibility for payment of all state and federal taxes assessed on the compensation received under this Agreement shall be Contractor's obligation and be identified under Contractor's federal and state identification number(s).

## 21. WARRANTY AND PRODUCT COMPLIANCE

21.1 All equipment provided to County through this Agreement must be brand new, unused and be approved by either United Laboratories (UL), Factory Mutual Corporation or Environmental Testing Laboratory (ETL). Further equipment provided to County shall meet other such standards as the County may require.

21.2 Contractor shall extend all manufacturer warranty to the County. Warranty shall survive termination of Agreement.

21.3 Contractor shall be required to provide a complete Material Safety Data Sheet (MSDS) for hazardous substances if required by law. MSDS shall be sent with Product.

## 22. PRODUCT REPLACEMENT/SUBSTITUTION

22.1 In no case shall Contractor ship alternate items without prior written approval from County.

22.2 If a product is discontinued by the manufacturer, Contractor shall replace item with same or better in terms of use, quality and functionality, or provide an upgraded product, at no additional cost to the County, unless otherwise specified in this Agreement.

## 23. RETURNS AND CREDITS

23.1 All returns shall be made within twenty (20) working days from date of purchase. Custom or special ordered items are non-returnable with the exception of manufacturer defects or errors. Contractor may waive this requirement upon discretion.

23.2 County shall contact Contractor Customer Service for Return Material Authorization (RMA) number. No restocking charges are to be levied for returned items. Contractor shall pickup all returns within five (5) business days after notification. Credit or credit memos shall be issued within five (5) business days upon receipt of return.

23.3 Contractor, at its sole discretion, may accept a return for reasons other than listed above.

23.4 Contractor shall disclose its return policy on all quotes for custom and special ordered items.

**24. ORDER CANCELLATIONS**

24.1 Written orders for non-custom and non-special ordered items may be cancelled by County without incurring any cancellation charge by giving Contractor notice of such cancellation at least ten (10) days prior to the scheduled delivery date specified on the County's order.

24.2 Custom and special ordered items may be cancelled without a cancellation fee if the Contractor does not incur a cancellation fee from its supplier.

24.3 Approvers may cancel an electronic order placed on Contractor's ordering system prior to release. It is understood that a released order cannot be cancelled but equipment and products may be returned according to section 23 (Returns and Credits) of this Agreement.

**25. LOANERS AND SAMPLES**

25.1 Contractor shall not deliver loaner equipment to County for trial unless and until a no-charge sub-order and/or loan agreement is received from County.

25.2 Samples of Products provided by Contractor to County shall be at no cost to County. Samples do not require a no-charge sub-order. Contractor shall make proper delivery arrangements with County requestor.

25.3 Contractor shall assume all insurance, shipping and handling costs of loaner equipment to and from the County. Contractor shall provide proper shipping materials to return equipment, at no additional cost to the County.

**26. KEY PERSONNEL AND ESCLATION PROCESS**

26.1 Exhibit D (Key Personnel and Escalation Process) of this Agreement lists the key personnel engaged by County and Contractor to perform service and support under this Agreement. Additional personnel may be added, if necessary. The exhibit also includes the escalation process.

26.2 Contractor shall make every attempt to ensure that key personnel are not diverted from this Agreement without prior notice to County. Key personnel are those individuals who are determined by County to be central to the management of the Agreement. Any replacement personnel shall have the equivalent competence and be subject to approval by the County.

26.3 The County reserves the right to require a change in Contractor personnel, if the assigned personnel are not, in the opinion of the County, meeting its needs adequately.

**27. SERVICE AND SUPPORT REQUIREMENTS**

Exhibit F of this Agreement defines the service and support requirements.

**28. PERFORMANCE, MONITOR, AND EVALUATION**

28.1 **Performance:**
Contractor holds itself out as an expert in providing and delivering office supplies and equipment. Contractor represents itself as being possessed of greater knowledge and skill in this area than the average person. Accordingly, Contractor is under a duty to exercise a skill greater than that of an ordinary person, and the manner in which advice is handled or services are rendered will be evaluated in light of the Contractor's superior skill. Contractor shall perform work in a professional manner consistent with manufacturer and commercial standards.

28.2 **Right to Monitor:** Contractor agrees to extend to the County or his/her designees and/or designated auditor of the County, the right to monitor or otherwise evaluate all work performed and all records, including service records and procedures to assure that the agreement is achieving its purpose, that all applicable County, State, and Federal regulations are met, and that adequate internal fiscal controls are maintained.

28.3 **Corrective Action:**

28.3.1 Contractor shall comply with all applicable State, Federal and County laws and regulations relating to its performance under this Agreement in all material respects.

28.3.2 If County discovers any practice, procedure, or policy of Contractor which materially deviates from the terms or requirements of this Agreement, which violates federal or state statutes or regulations, the County, in addition to its rights under section 3 of this agreement, may notify Contractor that corrective action is required.

28.3.3 Contractor shall correct any and all discrepancies, violations, or deficiencies to the satisfaction of the County within seven days, unless the corrective action requires additional time, in which case Contractor shall have a period of time to make corrections, but not longer than thirty (30) days.

## 29. DAMAGE TO COUNTY FACILITIES, BUILDINGS OR GROUNDS

Contactor shall repair, or cause to be repaired, at its own cost, any and all damaged to County facilities, buildings, or grounds caused by the negligent or willful acts or omissions of Contractor or employees, subcontractors or agents of Contractor. Such repairs shall be made promptly after Contractor has become aware of such damage.

## 30. AUDITING REQUIREMENTS

30.1 Books and Records Available for Inspection and Audit: The Contractor shall agree to maintain and preserve all books, documents, papers and records relating to the Agreement for a period of three (3) years after the termination of this Agreement or until the completion of any claim, litigation, negotiation, audit or other action, whichever is later. All books, records, reports, and accounts maintained pursuant to the Agreement , or related to the Contractor's activities under the Agreement , shall be open to inspection, examination, and audit by County, federal and state regulatory agencies, and to parties whose Agreement s with the County require such access. County shall have the right to obtain copies of any and all of the books and records maintained pursuant to the Agreement, upon the payment of reasonable charges for the copying of such records.

30.2 Audit: All payments made under this Agreement shall be subject to an audit and shall be adjusted in accordance with said audit. Adjustments which are found necessary as a result of auditing prior to termination of this Agreement may be made from current billings.

30.3 Responsibility for Audit Exceptions: the Contractor shall be responsible for receiving, replying to, and complying with any audit exceptions set forth in County audits. The Contractor shall pay to County the full amount of any audit determined to be due as a result of County audit exceptions.

## 31. DEBARMENT

Contractor guarantees that it, its employees, contractors, subcontractors or agents (collectively "Contractor") providing services under this Agreement are not suspended, debarred, excluded, or ineligible for participation in Medicare , Medi-Cal or any other federal or state funded health care program, or from receiving Federal funds as listed in the List of Parties Excluded from Federal Procurement or Non-procurement Programs issued by the Federal General Services Administration. (http://epls.arnet.gov/) Contractor must within 30 calendar days advise the County if, during the term of this Agreement, Contractor becomes suspended, debarred, excluded or ineligible for participation in Medicare , Medi-Cal or any other federal or state funded health care program, as defined by 42. U.S.C. 1320a-7b(f), or from receiving Federal funds as listed in the List of Parties Excluded from Federal Procurement or Non-procurement Programs issued by the Federal General Services Administration. Contractor will indemnify, defend and hold the County harmless for any loss or damage resulting from the conviction, debarment, exclusion or ineligibility of the Contractor.

## 32. LIENS, CLAIMS, AND ENCUMBRANCES

Contractor warrants and represents that all the goods and materials ordered herein are free and clear of all liens, claims or encumbrances of any kind.

## 33. MANDATORY DISPUTE RESOLUTION

The County and Contractor must make a good faith effort to resolve any dispute or problem relating to or arising under the Agreement. If a dispute cannot be resolved between the County Project Manager and the Contractor Project Manager, the matter shall be promptly escalated to the next level of command within each party's organization. If the dispute or problem cannot be resolved within five (5) business days, the matter shall be promptly escalated to the director level within each party's organization. Other meetings may follow as necessary or as requested by either party, provided, however, that this section is not intended to limit or restrict the rights of either party to seek any judicial remedy.

## 34. INDEPENDENT CONTRACTOR

34.1 This Agreement is by and between the County and Contractor and is not intended and shall not be construed, to created the relationship of agent, servant, employee, partnership, joint venue, or association, as between County and Contractor. The employees and agents of one party are not the employees and agents of the other party for any purpose whatsoever.

34.2 Furthermore, Contractor understands and agrees that all persons performing work pursuant to this Agreement are, for purposes of workers' compensation liability, solely employees of Contractor and not employees of County. Contractor shall be solely liable and responsible for furnishing any and all workers' compensation benefits to any person as a result of any injuries arising from or connected with any work performed by or on behalf of Contractor hereunder.

34.3 The employees and agents of Contractor, shall while on the premises of the County, comply with all rules and regulations of the premises, including, but not limited to, security policies and procedures.

## 35. USE OF SUBCONTRACTOR

Contractor may sub-contract portions of work under this Agreement as needed to third parties. All sub-contractors are subject to the same provisions for providing service as the Agreement between County and Contractor. Contractor is responsible for payment to sub-contractors and must monitor, evaluate, and account for the sub-contractor(s) services and operations.

County is currently contracting with Dynamex for delivery of Products. No change in subcontractor without prior written approval from County.

Contractor shall ensure that all subcontractors comply with the terms and conditions of this Agreement.

## 36. INDEMNIFICATION, INSURANCE AND LIMITATION OF LIABILITY

36.1 The Contractor shall indemnify, defend, and hold harmless the County of Santa Clara (hereinafter "County"), its officers, agents and employees from any claim, liability, loss, injury or damage arising out of, or in connection with, performance of this Contract by the Contractor and/or its agents, employees or sub-Contractors, excepting only loss, injury or damage caused by the negligence or willful misconduct of personnel employed by the County. It is the intent of the parties to this Contract to provide the broadest possible coverage for the County. The Contractor shall reimburse the County for all costs, attorneys' fees, expenses and liabilities incurred with respect to any litigation in which the Contractor is obligated to indemnify, defend and hold harmless the County under the Agreement. To the extent any loss, injury or damage is caused by the negligence or willful misconduct of County employees, County will indemnify Contractor where permissible under law.

36.2 Contractor shall maintain insurance coverage that meets the requirements of Exhibit H during the term of this Agreement.

36.3 The County's current contractor for insurance compliance is Periculum Services Group. All insurance certificates must be sent to the following address upon request:

County of Santa Clara
c/o Periculum Services Group
P.O. Box 257
Dept. #: 84-1007585
Portland, Michigan 48875-0257

All questions regarding acceptance or declination of coverage should be directed to: Shannon Beech, at Periculum, at 517-647-1700 ext. 207 or fax at
Primary: (517) 647-7900 or Alternate: (775) 245-2513

36.4 Except for any claim for indemnification, in no event shall either party be liable for consequential, special, indirect, or incidental damages, including but not limited to any damages resulting from loss of use or profits arising out of or in connection with this agreement, whether in an action based on contract, tort (including negligence) or any other legal theory, even if the party has been advised of the possibility of such damages.

## 37. MERGER AND ACQUISITION

The terms of this Agreement will survive an acquisition, merger, divestiture or other transfer of rights involving Contractor. In the event of an acquisition, merger, divestiture or other transfer of rights Contractor must ensure that the enquiring entity or the new entity is legally required to:

A. Honor all the terms negotiated in any pre-acquisition or pre-merger Agreement between Contractor and the County, including but not limited to a) established pricing and fees; b) guaranteed services and support until the contract term; and c) no price escalation unless otherwise specified in the Agreement.

B. Give 30-days written notice to the County following the closing of an acquisition, merger, divestiture or other transfer of right involving Contractor.

**38. CONFIDENTIALITY**

Any proprietary information provided to or developed by either party in the performance of this Agreement shall be kept confidential and shall not be made available to any individual or organization by the recipient without the prior written approval of the discloser except as may otherwise be required by law.

**39. SAFETY AND HEALTH STANDARDS**

Contractor agrees that it, its employees, contractors, subcontractors or agents (collectively "Contractor") under this Agreement agrees to comply with the applicable provisions of the California Occupational Safety and Health Act of 1973, (Labor Code Section 6300 et. Seq.) and the standards and regulations issued there under. Contractor agrees to indemnify and hold harmless the County for any loss, damage, fine, penalty, or any expense whatsoever as a result of Contractor's failure to comply with the act and any standards or regulations issued there under.

**40. NONDISCRIMINATION**

40.1 Contractor agrees that it, its employees, contractors, subcontractors or agents (collectively "Contractor") under this Agreement shall comply with all applicable Federal, State, and local laws and regulations including Santa Clara County's policies concerning nondiscrimination and equal opportunity in contracting. Such laws include but are not limited to the following: Title VII of the Civil Rights Act of 1964 as amended; Americans with Disabilities Act of 1990; The Rehabilitation Act of 1973 (Sections 503 and 504); California Fair Employment and Housing Act (Government Code sections 12900 et seq.); and California Labor Code sections 1101 and 1102. Contractor shall not discriminate against any subcontractor, employee, or applicant for employment because of age, race, color, national origin, ancestry, religion, sex/gender, sexual orientation, mental disability, physical disability, medical condition, political beliefs, organizational affiliations, or marital status in the recruitment, selection for training including apprenticeship, hiring, employment, utilization, promotion, layoff, rates of pay or other forms of compensation. Nor shall Contractor discriminate in provision of services provided under this contract because of age, race, color, national origin, ancestry, religion, sex/gender, sexual orientation, mental disability, physical disability, medical condition, political beliefs, organizational affiliations, or marital status.

40.2 Violation of this provision shall be deemed a material default by Contractor giving County a right to terminate the Agreement.

## 41. CONTRACTING PRINCIPLES

Service contracts are subject to the Resolution of Contracting Principles adopted by the Board of Supervisors. Contractor shall comply with the entire resolution including the following:

A. Contractor shall, during the term of the contract, comply with all applicable federal, state, and local rules, regulations and laws.

B. Contractor shall maintain financial records adequate to show that County funds paid under any contract for services were used for purposes consistent with the terms of the contract.

These records shall be maintained during the term of the contract and for a period of three (3) years from termination of the contract or until all claims, if any, have been resolved, whichever period is longer, or longer if otherwise required under other provisions of the contract.

The failure of Contractor to comply with this Section or any portion thereof may be considered a material breach of this contract and may, at the option of the County, constitute grounds for the termination and/or non-renewal of the contract. Contractor shall be provided reasonable notice of any intended termination or non-renewal on the grounds of noncompliance with this Section, and the opportunity to respond and discuss the County's intended action.

## 42. NON-TRANSFERABLE RESPONSIBILITIES

No assumption or takeover of any Contractor's duties, responsibilities, or obligations, or performance of same by any entity other than Contractor whether through assignment, subcontract, delegation, merger, buyout, or any other mechanism, with or without consideration, for any reason whatsoever, may occur without the Director of Procurement's, or authorized designee's, express prior written approval. No such assignment or transfer shall relieve the Contractor from its obligations and liabilities under this Agreement.

If any such assumption, takeover, or unauthorized performance does occur without such prior written approval, this Agreement will become void for failure of its essential purpose. Such act is therefore a material breach of this Agreement, upon which County may pursue any lawful remedy.

## 43. ENFORCEMENT OF AGREEMENT/WAIVER

A party's failure to require strict performance of any provision of this Agreement shall not waive or diminish that party's right thereafter to demand strict compliance with that or any other provision. No waiver by a party of any of its rights under this Agreement shall be effective unless expressed in writing and signed by the party alleged to have granted the waiver. A waiver by a party of any of its rights shall not be effective to waive any other rights.

**44. NOTICES**

All deliveries, notices, requests, demands or other communications provided for or required by this Agreement shall be in writing and shall be deemed to have been given when sent by registered or certified mail, return receipt requested or when sent by overnight carrier. Notices shall be addressed to:

COUNTY: Contract Administrator for Office Depot contract
c/o Procurement Department
2310 North First Street, Suite 201
San Jose, CA 95131-1040

CONTRACTOR: Office Depot, Inc.
2200 Old Germantown Road
Delray Beach, Florida 33445
Attn: Office of the General Counsel

Each party may designate a different person and address by sending written notice to the other party, to be effective no later than ten (10) days after the date of the notice.

**45. TITLES AND HEADINGS**

The titles and headings of paragraphs, sections, subsections and exhibits are for convenience only and are not intended to affect the proper construction of this Agreement.

**46. VARIATION OF TERMS**

The parties hereto agree that the terms and conditions contained herein shall prevail notwithstanding any variations on any acknowledgements, invoices or such other documents submitted by Contractor. Any addendum hereto shall become binding upon the parties only after signature by authorized representatives of both parties.

**47. PROMOTIONAL/ADVERTISEMENT**

The use and/or reproduction of the County's name and/or logo for commercial advertisement, promotional purposes, announcements, or press releases, without the expressed written authorization of the County, are prohibited.

**48. CONFLICT OF INTEREST**

The Contractor warrants that it presently has no interest and shall not acquire any interest, direct or indirect, that would conflict in any manner or degree with the performance of services required under this Agreement.

**49. SEVERABILITY**

The provisions of this Agreement are severable, and if for any reason, a clause, sentence or paragraph of this Agreement is determined to be invalid by a court or County or commission having jurisdiction over the subject matter thereof, such invalidity shall not affect other provisions of this Agreement, which can be given effect without the invalid provision.

**50. FORCE MAJEURE**

Neither party shall be liable for failure of performance, nor incur any liability to the other party on account of any loss or damage resulting from any delay or failure to perform all or any part of this Agreement if such delay of failure is caused by events, occurrences, or causes beyond the reasonable control and without negligence of the parties. Such events, occurrences, or causes will include, but not limited to, labor strikes, lockouts, riots, acts of war, acts of God, fire and explosion.

**51. NON-EXCLUSIVITY**

This Agreement is non-exclusive and shall not in any way preclude County from entering into similar agreement and/or arrangements with other suppliers/contractors or from acquiring similar, equal or like goods and/or services from other entities or sources.

**52. AUTHORIZATION WARRANTY**

Contractor represents and warrants that the person executing this Agreement for Contractor is an authorized agent who has actual authority to bind Contractor to each and every term, conditions and obligation of this Agreement and that all requirements of Contractor have been fulfilled to provide such actual authority.

**53. ENTIRE AGREEMENT**

This Agreement incorporates all the agreements, covenants and understandings between the parties concerning the subject matter hereof, and all such agreements, covenants and understandings have been merged into this Agreement. No prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

**54. SURVIVAL:** The following sections, subsections and exhibits shall survive any termination or expiration of the Agreement: section 3 (Termination), section 21 (Warranty and Product Compliance), section 29 (Damage to County Facilities, Buildings or Grounds), section 30 (Auditing Requirements), section 36.1 (Indemnification), section 38 (Confidentiality), section 41 (Contracting Principles), section 43 (Enforcement of Agreement/Waiver), section 44 (Notices), section 46 (Variation of Terms), section 47 (Promotional/Advertisement), section 49 (Severability), section 53 (Entire Agreement), section 55 (Governing Law), and Exhibits A, B, C, and F.

**55. GOVERNING LAWS**

This Agreement shall be construed and interpreted in accordance with the laws of the State of California. Proper venue for legal action will be exclusively vested in a state court in the County of Santa Clara or, if federal jurisdiction is appropriate, in the U.S. District Court for the Northern District of California San Jose, California.

**COUNTY OF SANTA CLARA CONTRACT 5500001618**
**EXHIBIT A – LIST OF CORE PRODUCTS AND PRICING**
**Effective 4/1/07**

| Sku | Description | UOM | 4.1.07 Contract Price |
|---|---|---|---|
| 844803 | 10X13 INTEROFFICE_ENVELOPE 28L | BX | $ 9.33 |
| 844761 | 12X15 1/2 CLASP ENVELOPE 28LB | BX | $ 7.75 |
| 987156 | 3M POST IT EASEL PAD | CT | $ 30.45 |
| 844720 | 6X9 CLASP ENVELOPE 28LB KRAFT | BX | $ 3.84 |
| 120514 | ADHESIVE,GLUESTICK,77OZ | EA | $ 0.50 |
| 371057 | AMPLIFIER,TELEPHONE HEADSET | EA | $ 39.37 |
| 945287 | BADGE,NAME,LASER,BLUE | BX | $ 20.26 |
| 945261 | BADGE,NAME,LASER,PLAIN,WHITE | BX | $ 20.26 |
| 936542 | BASE,FASTENER,2.75"CC,2"1CBX | BX | $ 0.64 |
| 445511 | BATTERY,AAA,ENERGIZER,24/BX | BX | $ 5.75 |
| 524935 | BATTERY,ENERGIZER MAX AA,24PK | PK | $ 13.89 |
| 656353 | BATTERY,ENERGIZER MAX AAA,12PK | PK | $ 6.47 |
| 857789 | BATTERY,ENERGIZER,AA,12/PK | PK | $ 6.47 |
| 432661 | BATTERY,EVEREADY,ALKALN,D,8PK | PK | $ 5.60 |
| 432721 | BATTERY,EVEREADY,ALKLN,AAA,16P | PK | $ 4.65 |
| 696518 | BATTERY,INDUSTRIAL,9V,ALK,12BX | BX | $ 13.13 |
| 696526 | BATTERY,SIZE AA,ALKALINE,24BOX | BX | $ 6.78 |
| 356840 | BINDER,3RG,11X8.5,2"C,LH,BLACK | EA | $ 1.88 |
| 492405 | BINDER,3RG,VNL,11X8.5,1"BLK | EA | $ 0.87 |
| 510744 | BINDER,D-RG,VIEW,LTR,3",WHT | EA | $ 7.68 |
| 492942 | BINDER,D-RING,2",VUE,WHITE | EA | $ 4.18 |
| 493213 | BINDER,D-RING,3",VUE,WHITE | EA | $ 4.63 |
| 729558 | BINDER,OVERLAY,CLEAR,1.5",WHT | EA | $ 1.47 |
| 729624 | BINDER,OVERLAY,CLEAR,2",WHT | EA | $ 2.13 |
| 396311 | BINDER,PL,VIEW,1",BLACK | EA | $ 1.36 |
| 396291 | BINDER,PL,VIEW,1",WHITE | EA | $ 1.10 |
| 396251 | BINDER,PL,VIEW,1.5",WHITE | EA | $ 1.37 |
| 396241 | BINDER,PL,VIEW,2",WHITE | EA | $ 1.58 |
| 396201 | BINDER,PL,VIEW,3",WHITE | EA | $ 2.49 |
| 729525 | BINDER,VUE,3RG,11X8.5,1"C,WHT | EA | $ 1.55 |
| 729640 | BINDER,VUE,3RG,11X8.5,3"C,WHT | EA | $ 3.47 |
| 492660 | BNDR,3RG,VNL,11X8.5,1",BLU | EA | $ 0.87 |
| 394471 | BOARD,30X40",10PK,WHITE | CT | $ 21.53 |
| 434415 | BOARD,DISPLAY,PROJECT,36X48,WH | EA | $ 3.02 |
| 918847 | BOARD,MARKER,ALUM.FRAME,4'X8' | EA | $ 257.28 |
| 590496 | BOARD,ROLLNG,RVRSBLE,3X4,WHT | EA | $ 185.48 |
| 172809 | BOOK COMP 8.5X67/8 40 COU | EA | $ 0.29 |
| 250985 | BOOK,COMP,RLD,10X7-7/8,80SH | EA | $ 1.33 |
| 943175 | BOOK,RECORD,12.75X8.5,CVS,BLU | EA | $ 21.75 |
| 524405 | BOOK,STENO,6X9,70CT,GREEN | EA | $ 0.42 |

| | | | |
|---|---|---|---|
| 359701 | CABLE,AB,GOLD,USB,F30133,6FT | EA | $ 3.31 |
| 820483 | CALCULATOR,DESKTOP,8DGT,SOLAR, | EA | $ 4.18 |
| 905739 | CALCULATOR,GRAPHING,TI-83 PLUS | EA | $ 90.91 |
| 665965 | CALCULATOR,OD,TK-20,8-DIGIT | EA | $ 2.14 |
| 618033 | CALCULATOR,SCIENTIFIC,TI-30XA | EA | $ 6.40 |
| 222059 | CALCULATOR,SOLAR,MINI,DESKTOP | EA | $ 5.18 |
| 825201 | CALCULATOR,TI-83 PLUS,SILVER | EA | $ 94.40 |
| 603125 | CALENDAR, PL RFL, DD 3 1/2X6 | EA | $ 1.02 |
| 990986 | CARD,INDEX,RLD,4X6,PT,1CPK,WHT | PK | $ 0.44 |
| 424895 | CARD,INDEX,RLD,HRZ,3X5,5C,WHT | PK | $ 1.05 |
| 424903 | CARD,INDEX,RLD,HRZ,4X6,5C,WHT | PK | $ 1.81 |
| 309187 | CARD,INDEX,RLD,HRZ,5X8,5C,WHT | PK | $ 3.17 |
| 990721 | CARD,INDX,RLD,3X5,8PT,1C/P,WHT | PK | $ 0.25 |
| 189662 | CARD,INDX,RLD,5X8,8PT,1C/P,WHT | PK | $ 0.55 |
| 952804 | CART,MAIL,150 LB CAPACITY | EA | $ 153.06 |
| 281761 | CART,TONER,C3909X,EXT,CAPACITY | EA | $ 160.17 |
| 774261 | CART,UTILITY,GRAY | EA | $ 77.10 |
| 391710 | CARTRIDGE DLT IV 40/80GB | EA | $ 22.34 |
| 325871 | CARTRIDGE,#17,INK,COLOUR | EA | $ 24.72 |
| 753931 | CARTRIDGE,COMPAT,EPS,S020187 | EA | $ 1.11 |
| 753951 | CARTRIDGE,COMPAT,EPS,S020189 | EA | $ 1.11 |
| 753971 | CARTRIDGE,COMPAT,EPS,S020191 | EA | $ 1.81 |
| 377266 | CARTRIDGE,DLT,IV,40/80GB | EA | $ 20.78 |
| 616906 | CARTRIDGE,HP LASERJET 4200 | EA | $ 116.55 |
| 616897 | CARTRIDGE,HP LASERJET 4300 | EA | $ 161.92 |
| 869881 | CARTRIDGE,HP,LJ,C7115X,ULTRA | EA | $ 57.20 |
| 433882 | CARTRIDGE,IJ REMAN,OD BR,HP49A | EA | $ 15.16 |
| 514675 | CARTRIDGE,IJ,REMAN,OD17,COLOR | EA | $ 13.93 |
| 384611 | CARTRIDGE,INK,#15,810C/812C | EA | $ 22.03 |
| 239301 | CARTRIDGE,INK,BLK,51629A | EA | $ 23.72 |
| 169771 | CARTRIDGE,INK,BLK,51645A | EA | $ 23.09 |
| 352871 | CARTRIDGE,INK,BLK,C4844A | EA | $ 25.99 |
| 239319 | CARTRIDGE,INK,CLR,51649A | EA | $ 26.39 |
| 167787 | CARTRIDGE,INK,CLR,C1823D | EA | $ 24.19 |
| 468631 | CARTRIDGE,INK,COLOR 23D,TWINPK | OP | $ 37.17 |
| 593511 | CARTRIDGE,INK,COMP,EPS,900,BLK | EA | $ 17.47 |
| 291951 | CARTRIDGE,INK,HIGH CAP,78,CLR | EA | $ 43.59 |
| 419672 | CARTRIDGE,INK,HP #56,BLACK | EA | $ 16.03 |
| 134640 | CARTRIDGE,INK,HP#15,2/PK,BLACK | PK | $ 40.13 |
| 154605 | CARTRIDGE,INK,HP#57,TRI-COLOR | EA | $ 26.38 |
| 850762 | CARTRIDGE,INK,HP,#14,BLACK | EA | $ 17.01 |
| 850753 | CARTRIDGE,INK,HP,#14,TRI-COLOR | EA | $ 22.56 |
| 566401 | CARTRIDGE,INK,HP45A,2PK,BLACK | OP | $ 42.53 |
| 563398 | CARTRIDGE,INK,OD REMAN 45A,2PK | OP | $ 17.82 |
| 587114 | CARTRIDGE,INK,OD,REMN,HP15,BLK | EA | $ 10.11 |
| 611264 | CARTRIDGE,INK,OD415,BLACK | EA | $ 3.21 |

| | | | |
|---|---|---|---|
| 514747 | CARTRIDGE,INK,REMAN OD220,BLK | EA | $ 13.93 |
| 664891 | CARTRIDGE,INK,REMAN,OD-26A,BLK | EA | $ 12.06 |
| 664911 | CARTRIDGE,INK,REMAN,OD-29A,BLK | EA | $ 12.45 |
| 664901 | CARTRIDGE,INK,REMAN,OD-45A,BLK | EA | $ 9.18 |
| 172681 | CARTRIDGE,INKJET,HP #78,TRICLR | EA | $ 25.91 |
| 648040 | CARTRIDGE,INKJET,OD56,BLACK | EA | $ 10.81 |
| 611312 | CARTRIDGE,INKJET,OD57,TRI-CLR | EA | $ 14.79 |
| 530569 | CARTRIDGE,LASER JET,HP BLACK | EA | $ 178.23 |
| 531100 | CARTRIDGE,LASER JET,HP CYAN | EA | $ 265.14 |
| 530650 | CARTRIDGE,LASER JET,HP MAGENTA | EA | $ 250.13 |
| 531199 | CARTRIDGE,LASER JET,YELLOW | EA | $ 250.13 |
| 319275 | CARTRIDGE,LASERJET 4600,BLACK | EA | $ 123.25 |
| 319055 | CARTRIDGE,LASERJET 4600,CYAN | EA | $ 166.75 |
| 319209 | CARTRIDGE,LASERJET 4600,YELLOW | EA | $ 166.75 |
| 578677 | CARTRIDGE,LSR,REMAN,C4192A,CYN | EA | $ 36.76 |
| 578710 | CARTRIDGE,LSR,REMAN,C4193A,MAG | EA | $ 36.76 |
| 578622 | CARTRIDGE,LSR,REMAN,HP4500,BLK | EA | $ 35.98 |
| 319099 | CARTRIDGE,LSRJET 4600,MAGENTA | EA | $ 166.75 |
| 513854 | CARTRIDGE,OD23,TRICOLOR | EA | $ 13.93 |
| 727351 | CARTRIDGE,PRINT SMRT,C8061X,HP | EA | $ 94.18 |
| 727381 | CARTRIDGE,PRINT,C7115A,HP | EA | $ 46.35 |
| 343915 | CARTRIDGE,REMAN,FX6,CANON | EA | $ 51.62 |
| 578732 | CARTRIDGE,REMAN,HP C4194A,YEL | EA | $ 36.76 |
| 578446 | CARTRIDGE,REMAN,HP C8061X | EA | $ 61.05 |
| 578424 | CARTRIDGE,REMAN,HP7115A | EA | $ 42.01 |
| 507067 | CARTRIDGE,REMAN,HPC6578D | EA | $ 12.45 |
| 782211 | CARTRIDGE,TONER,TN250,BROTHER | EA | $ 21.25 |
| 905104 | CARTRIDGE,ZIP,100MB PC/MAC,3PK | PK | $ 11.88 |
| 242090 | CASE,CATALOG,WHEELED | EA | $ 46.96 |
| 569491 | CASSETTE,AUDIO,60MIN,6/PK | P6 | $ 1.57 |
| 525667 | CASSETTE,VHS120,HIGH | EA | $ 0.71 |
| 676688 | CDR,OD,52X,100-PK,SPINDLE | HU | $ 11.30 |
| 620650 | CD-R,SPINDLE,80 MIN,100/PK | PK | $ 19.47 |
| 915067 | CD-RW,700MB,SPINDLE,25PK | PK | $ 8.10 |
| 949339 | CHALK,LOW DUST,3.25",WHT,12/BX | BX | $ 0.29 |
| 204057 | CLEANER,BOARD,DRY ERASE,8 OZ | EA | $ 1.15 |
| 308957 | CLIP,BINDER,LARGE,2IN,12BX | BX | $ 0.65 |
| 825190 | CLIP,BINDER,MED,1.25IN,12/PK | PK | $ 2.73 |
| 808865 | CLIP,BINDER,MED,12 CLIPS/BX | BX | $ 0.24 |
| 429431 | CLIP,BINDER,MEDIUM, | BX | $ 0.23 |
| 825182 | CLIP,BINDER,SM,3/4IN,144/PK | PK | $ 1.06 |
| 429415 | CLIP,BINDER,SMALL,12/BOX | BX | $ 0.09 |
| 808857 | CLIP,BINDER,SMALL,12/BX | BX | $ 0.10 |
| 429266 | CLIP,PAPER,#1 REG,SMOOTH,100BX | BX | $ 0.05 |
| 308478 | CLIP,PAPER,#1 REG,SMOOTH,10PK | TP | $ 0.52 |
| 429175 | CLIP,PAPER,JUMBO,SMOOTH,100BX | BX | $ 0.15 |

| | | | |
|---|---|---|---|
| 308239 | CLIP,PAPER,JUMBO,SMOOTH,10PK | TP | $ 1.53 |
| 808907 | CLIP,PAPER,JUMBO,WRLDBRND,10PK | PK | $ 1.90 |
| 470591 | CLIPBOARD,LETTER SIZE,2PK | OP | $ 0.50 |
| 478180 | CLIPBOARD,W/STORAGE,9X12,GRY | EA | $ 3.14 |
| 239269 | CLOCK,COMMERCIAL,13.5"DIAL,BLK | EA | $ 4.33 |
| 559104 | COFFEE,FOLGERS,39OZ | EA | $ 9.72 |
| 340840 | CORRECTION FLUID,OD,WHT,12PK | DZ | $ 3.60 |
| 738671 | COVER,DOCUMENT,6PK,NAVY | P6 | $ 3.10 |
| 698811 | COVER,PORTFOLIO,11.75X9.5,BLU | BX | $ 6.18 |
| 934760 | COVER,REPORT,LTR,1/2",DKBLU | EA | $ 0.37 |
| 983346 | CUP,COLD,PAPER,8OZ,100PK | PK | $ 2.99 |
| 600878 | DESKPAD,2 CLR REFILLABLE,22X17 | EA | $ 4.47 |
| 601389 | DESKPAD,MLY,22X17 | EA | $ 1.93 |
| 405791 | DISK,OFFICE DEPOT,3.5 IBM,100P | PK | $ 9.05 |
| 405891 | DISK,OFFICE DEPOT,3.5,IBM,10BX | BX | $ 0.90 |
| 676621 | DISKETTES,OD,3.5",50PK,RAINBOW | PK | $ 5.00 |
| 910372 | DISPENSER,HAND,TAPE,3/4",SMOKE | EA | $ 0.43 |
| 173336 | DISPENSER,TAPE,DSKTOP,3/4",BLK | EA | $ 1.40 |
| 574866 | DIVIDER,INS,5,EXTRAWIDE,OD,CLR | ST | $ 0.49 |
| 574817 | DIVIDER,INS,8TAB,CLR,OD,BIGTAB | ST | $ 0.35 |
| 574789 | DIVIDERS.INS,5,CLEAR,OD,BIGTAB | ST | $ 0.26 |
| 430074 | DOCUMENT FRAME 8.5X11 3PK | P3 | $ 2.10 |
| 564324 | DRIVE,256MB U3,ATIVA,BLUE | EA | $ 23.81 |
| 172621 | DRUM KIT,4500 CLR/LASR,C4195A | EA | $ 63.27 |
| 329576 | DUSTER,AIR,10OZ | EA | $ 3.74 |
| 724936 | EARSERS,PINK BEVEL,SMALL | EA | $ 0.09 |
| 836759 | EASEL,DRY ERASE,REVERSIBLE | EA | $ 60.20 |
| 348201 | ENVELOPE,#10,24.LB,WHT,500BX | BX | $ 5.11 |
| 942417 | ENVELOPE,#10,284,KRAFT,500/BOX | BX | $ 13.39 |
| 844555 | ENVELOPE,4.12X9.5,WOVN,500/BX | BX | $ 3.88 |
| 844738 | ENVELOPE,CLASP,#28,9X12,100/BX | BX | $ 4.55 |
| 942680 | ENVELOPE,CLASP,#32,12X15 | BX | $ 9.30 |
| 844746 | ENVELOPE,CLASP,10X13,28LBKRAFT | BX | $ 5.48 |
| 341016 | ENVELOPE,CLASP,28LB,#97,100BX | BX | $ 4.94 |
| 341081 | ENVELOPE,CLASP,9X12,BRN,100/BX | BX | $ 4.08 |
| 942664 | ENVELOPE,CLSP,10X15",HVYDTY | BX | $ 7.96 |
| 942615 | ENVELOPE,CLSP,9X12",HVYDTY,KRF | BX | $ 5.91 |
| 307512 | ERASER,DRY ERASE,EXPO | EA | $ 1.13 |
| 309443 | ERASER,FELT,DELUXE | EA | $ 0.49 |
| 993378 | ERASER,MEDIUM,PINK PEARL | EA | $ 0.17 |
| 485185 | ERASER,PCL,LRG,PNK PEARL,3/PK | P3 | $ 0.65 |
| 485177 | ERASER,PCL,MED,PNK PEARL,3PK | P3 | $ 0.53 |
| 936534 | FASTENER,SELF-ADHESIVE,2"C-C | BX | $ 1.88 |
| 474311 | FILE,MAG.ECONO/STOR,WH/BK | EA | $ 0.54 |
| 957092 | FILE,POCKET,2",LGL,BULK | EA | $ 0.22 |
| 938050 | FILE,POCKET,REINF,LGL,ET,TYV | EA | $ 1.55 |

| | | | |
|---|---|---|---|
| 940338 | FILE,STORAGE,LTR,LGL,ECONO | EA | $ 1.93 |
| 940320 | FILE,STRGE,ECOLOGIC,12X10X15 | EA | $ 1.30 |
| 484949 | FILM,600,HI-DEF,TWIN,PK | OP | $ 20.10 |
| 753631 | FILM,COPIER,PLN PPR,OD,100/BOX | BX | $ 4.57 |
| 753641 | FILM,INK JET,UNIV,50/PK | PK | $ 8.57 |
| 225706 | FILM,STRETCH,80 GAUGE,18X1500 | EA | $ 6.29 |
| 172213 | FILM,TRANS,BLK/CLR,COP,W/ST,1C | BX | $ 13.51 |
| 172171 | FILM,TRNSP,W/O STR,BK/CL,100BX | BX | $ 6.87 |
| 641467 | FILTER,ANTI-GLARE,PRIVACY,BLK | EA | $ 157.54 |
| 503466 | FILTER,GLARE,UNIV,16-19"MONITR | EA | $ 113.28 |
| 909101 | FLUID,CORRECTION,.5OZ,WHITE | EA | $ 0.46 |
| 909119 | FLUID,CORRECTION,MULTIPURP,WHT | EA | $ 0.19 |
| 182089 | FLUID,CORRECTION,WHITE | DZ | $ 5.94 |
| 810945 | FOLDER HANGING LGL 1/3 CUT | BX | $ 4.55 |
| 811018 | FOLDER HANGING LGL 1/5 CUT | BX | $ 4.62 |
| 810929 | FOLDER HANGING LTR 1/3 CUT | BX | $ 3.82 |
| 810994 | FOLDER HANGING LTR 1/5 CUT | BX | $ 3.47 |
| 307959 | FOLDER,CLASS,LETTER,2DIV | EA | $ 0.89 |
| 937870 | FOLDER,CLASS,LTR,ST-CUT,2-DIV. | EA | $ 1.38 |
| 487056 | FOLDER,FILE,8.5X11,100/BX,ASTD | BX | $ 6.93 |
| 810846 | FOLDER,FILE,LEGAL,1/3 CUT | BX | $ 7.12 |
| 810838 | FOLDER,FILE,LETTER,1/3 CUT | BX | $ 4.33 |
| 316232 | FOLDER,FILE,LTR,1/2 CUT,MAN | BX | $ 4.30 |
| 315515 | FOLDER,FILE,LTR,1/3 CUT,MANILA | BX | $ 4.08 |
| 207126 | FOLDER,FILE,LTR,1/3,FSTNR,50BX | BX | $ 8.84 |
| 810812 | FOLDER,FILE,LTR,STRAIGHT CUT | BX | $ 3.93 |
| 804641 | FOLDER,HANGING,LTR,25/BX,GREEN | BX | $ 4.38 |
| 314310 | FOLDER,HNG,LTR,1/5,25BX,GRN | BX | $ 3.98 |
| 936054 | FOLDER,PSBD,RECY,6PRT/2CTR,GRY | EA | $ 1.12 |
| 910208 | GLUE STICK,BULK PACK,.29OZ | EA | $ 0.28 |
| 910141 | GLUE,ELMERS,4OZ,WHITE | EA | $ 0.38 |
| 910166 | GLUE,ELMERS,8OZ,WHITE | EA | $ 0.64 |
| 571101 | GLUESTICK,.32 OZ,12/PK,WHITE | PK | $ 1.52 |
| 910216 | GLUE-STICK,BULK PK,1OZ | EA | $ 0.79 |
| 570971 | GLUESTICK,SINGLE,.32OZ,WHITE | EA | $ 0.28 |
| 922981 | HOLDER,DOCUMENT,IN-LINE,3M | EA | $ 43.65 |
| 814822 | INDEX, 8 TAB, CLEAR | ST | $ 0.20 |
| 814830 | INDEX, 8 TAB, MULTI-COLOR | ST | $ 0.20 |
| 814608 | INDEX,5 TAB MULTI-COLOR | ST | $ 0.13 |
| 814566 | INDEX,5 TAB,CLEAR | ST | $ 0.13 |
| 990135 | INDEX,MAKER,LASER PRNTR,5TAB25 | BX | $ 54.78 |
| 990267 | INDEX,MAKER,LASER PRTR,8TAB25 | BX | $ 62.78 |
| 937565 | JACKET,FILE,LETTER,STR,2"EXP | EA | $ 0.22 |
| 956327 | KIT,MARKER,DRY-ERASE,EXPO 2 | EA | $ 4.78 |
| 612011 | LABEL,ADDR,OD,LSR,3000CT,WHITE | PK | $ 5.56 |
| 364380 | LABEL,LSR,ADDR,WHT,1400CT | BX | $ 14.12 |

| | | | |
|---|---|---|---|
| 364372 | LABEL,LSR,ADDR,WHT,2000CT | BX | $ 14.12 |
| 364364 | LABEL,LSR,ADDR,WHT,3000CT | BX | $ 18.54 |
| 916403 | LABEL,LSR,ADDR,WHT,7500CT | BX | $ 41.72 |
| 916460 | LABEL,LSR,ADDR,WHT,750CT | PK | $ 5.62 |
| 944272 | LABEL,LSR,FILE,WHT,1500/PK | PK | $ 19.48 |
| 463620 | LABEL,LSR,SHIP,WHT,1000CT | BX | $ 19.29 |
| 613031 | LABEL,REMV,OD,RECT,120CT,WHITE | EA | $ 0.41 |
| 820216 | LABELER, PT1400,HANDHELD | EA | $ 64.17 |
| 908415 | LAMINATE,REFILL,DL1001,3M,12" | EA | $ 29.26 |
| 108951 | LAMP,ENX,APOLLO | EA | $ 9.34 |
| 575605 | LAMP,O.H.PROJECTOR | EA | $ 12.47 |
| 108985 | LAMP,PROJECTION,82 VOLT | EA | $ 8.38 |
| 787858 | LOCK,SECURITY,DESKTOP MICRO SA | EA | $ 15.30 |
| 926790 | MARKER,CHISEL POINT,BLACK | EA | $ 0.31 |
| 259271 | MARKER,CHISEL TIP,EXPO 2,BLUE | DZ | $ 7.71 |
| 259251 | MARKER,CHISEL TIP,EXPO2,BLACK | DZ | $ 7.71 |
| 497735 | MARKER,DRY ERASE,CHSELTIP,4COL | P4 | $ 2.57 |
| 345997 | MARKER,EXPO 2,CHISEL PT,8COLOR | ST | $ 5.14 |
| 202812 | MARKER,FELT,PERM,KING SIZE,DZ | DZ | $ 5.91 |
| 926071 | MARKER,HI-LITER,YELLOW | EA | $ 0.24 |
| 925453 | MARKER,MAJOR ACCENT,YELLOW | EA | $ 0.24 |
| 203349 | MARKER,SHARPIE,FINE,DZ,BLACK | DZ | $ 4.79 |
| 502336 | MARKER,WASHABLE,BROAD,8CT,SET | ST | $ 2.17 |
| 172510 | NOTE,CANARY,YELLOW,3X3,12PACK | DZ | $ 5.51 |
| 588286 | NOTEBOOK,SPIRAL,1SUB,100SHT,CR | EA | $ 0.52 |
| 293799 | NOTEBOOK,SPRL,70SHT,WD,RLE,6PK | P6 | $ 1.37 |
| 525740 | PAD,EASEL,1"GRID,2PK,OD,WHITE | OP | $ 13.93 |
| 409600 | PAD,EASEL,BLEED BLOCKER | PD | $ 5.46 |
| 360990 | PAD,EASEL,POST-IT,25X30.5,YEL | CT | $ 24.53 |
| 368720 | PAD,NOTE,HIGHLAND,1.5X2,YEL,12 | PK | $ 1.03 |
| 368738 | PAD,NOTE,HIGHLAND,3"X3",12PK,Y | DZ | $ 2.30 |
| 368746 | PAD,NTE,HIGHLAND,3"X5",12PK,Y | PK | $ 3.23 |
| 172528 | PAD,NTE,POST 3"X5",12/PK,YEL | DZ | $ 7.38 |
| 172460 | PAD,NTE,POST,1.5"X2",12PK,YEL | PK | $ 2.38 |
| 305706 | PAD,PERF,8.5X11,OD,12PK,LGL RL | DZ | $ 3.67 |
| 305466 | PAD,PERF,8.5X11,OD,LGL RLD,12P | DZ | $ 3.67 |
| 951910 | PAD,PERF,RECY,8.5X11,WHT,LGL | DZ | $ 5.53 |
| 942011 | PAD,POST-IT,4X6,RECYCLED, | EA | $ 1.17 |
| 307389 | PAD,STENO,6X9,GREGG,DOZ,70SHT | DZ | $ 5.02 |
| 945722 | PAD,STENO,GREGG RLD,6X9,80'S | DZ | $ 6.18 |
| 503672 | PADLOCK,COMBINATION,1-7/8" | EA | $ 2.80 |
| 583805 | PAPER,INDEX,90#,8.5X11,WHITE | RM | $ 3.83 |
| 388227 | PAPER,THRML,80MMX230,10PK,WHT | PK | $ 7.11 |
| 462327 | PAPER,VELLUM,67#,8.5X11,WHITE | RM | $ 3.65 |
| 687301 | PEN SET,VIS-A-VIS,FINE,4-COLOR | P4 | $ 2.41 |
| 928333 | PEN SET,VIS-A-VIS,FINE,8-COLOR | P8 | $ 4.80 |

| | | | |
|---|---|---|---|
| 181594 | PEN,BALL PT,MEDIUM,STICK,BLK | DZ | $ 0.63 |
| 181578 | PEN,BALL PT,MEDIUM,STICK,BLUE | BX | $ 0.61 |
| 181586 | PEN,BALL PT,MEDIUM,STICK,RED | BX | $ 0.59 |
| 524912 | PEN,BP,RT,MED,FLXGRIP,12PK,BLK | DZ | $ 5.54 |
| 265276 | PEN,EF,FELT TIP,DZ,BLACK | DZ | $ 1.59 |
| 182741 | PEN,FLAIR,PNTGRD,BLK,12PK | DZ | $ 8.20 |
| 182725 | PEN,FLAIR,W/PNTGRD,BLUE,DZ | DZ | $ 8.20 |
| 182733 | PEN,FLAIR,W/POINTGUARD,12PK | PK | $ 8.20 |
| 182758 | PEN,FLAIR,W/POINTGUARD,12PK | PK | $ 8.20 |
| 257191 | PEN,FLAIR,W/POINTGUARD,PURPLE | DZ | $ 8.43 |
| 112220 | PEN,GRIP/ROUND STIC,DOZ,BLACK | DZ | $ 0.94 |
| 744320 | PEN,OD,MED,48PK,BLUE | PK | $ 1.48 |
| 680959 | PEN,OHP,FN,VIS-A-VIS,DZ,BLACK | DZ | $ 7.22 |
| 655266 | PEN,RETRACTABLE,SOFTFEEL,BLACK | DZ | $ 2.89 |
| 924753 | PEN,ROLLERBALL,FINE,BLACK | EA | $ 0.66 |
| 423590 | PEN,ROUNDSTIC,BIC,MEDIUM,RED | DZ | $ 0.61 |
| 750288 | PEN,STICK,PT,MED,48PK,BLK | PK | $ 1.48 |
| 434357 | PENCIL POUCH,TRANSLUCENT | EA | $ 0.73 |
| 107580 | PENCIL,#2,OD,12/PK | PK | $ 0.23 |
| 733601 | PENCIL,#2,OD,72/BX | BX | $ 1.40 |
| 306894 | PENCIL,AM,MED SOFT,#2,BX6,72CT | BX | $ 3.58 |
| 929638 | PENCIL,AMER.,MED SOFT,#2,12/PK | PK | $ 0.42 |
| 306779 | PENCIL,GOLF,3.5,YEL,GROSS | PK | $ 2.50 |
| 811158 | PENCIL,LEAD,TICONDEROGA,SOFT | DZ | $ 1.00 |
| 116939 | PENCIL,LEAD,W/ERASER,"MIRADO" | DZ | $ 0.72 |
| 404321 | PENCIL,MECHANICAL GRIP,7MM | DZ | $ 3.39 |
| 120675 | PENS,MED.PT,RSVP,12PK,BLACK | DZ | $ 2.92 |
| 600465 | PLANNER, PROF WK,67/8X83/4,BLK | EA | $ 6.54 |
| 598673 | PLANNER,MONTHLY,9X11,BLK | EA | $ 7.09 |
| 937235 | POCKET,FILE,LTR,3.5"C,STRT,RR | EA | $ 0.35 |
| 917272 | POCKET,FILE,LTR,3.5"CAP | BX | $ 10.98 |
| 992685 | POCKET,FILE,LTR,5 1/4" CAP | EA | $ 0.49 |
| 646371 | POCKET,LTR,3.5"EXP,T-TAB,BLUE | BX | $ 16.95 |
| 956953 | POCKET,SHELF,LTR,3.5C,4"TAB,RR | EA | $ 1.00 |
| 433607 | PORTFOLIO,2PKT,W/FAST,10PK,RED | TP | $ 2.34 |
| 681080 | PORTFOLIO,2POCKET,ASST COLORS | EA | $ 0.07 |
| 438366 | PORTFOLIO,PCKT,TWIN,10PK,ASTD | TP | $ 1.32 |
| 433573 | PORTFOLIO,PCKT,W/FST,10PK,LBLU | PK | $ 2.34 |
| 433664 | PORTFOLIO,POCKET,TWIN,10PK,BLU | TP | $ 1.32 |
| 433680 | PORTFOLIO,POCKET,TWIN,10PK,LTB | TP | $ 1.32 |
| 433656 | PORTFOLIO,POCKET,TWIN,10PK,RED | PK | $ 1.32 |
| 934703 | PORTFOLIO,TWIN POCKET,BLUE | BX | $ 5.41 |
| 934711 | PORTFOLIO,TWIN POCKET,RED | BX | $ 5.41 |
| 941880 | POST-IT,NOTE-PAD,3X3 YELLOW | EA | $ 0.46 |
| 941930 | POST-IT,NOTE-PAD,3X5,YELLOW | EA | $ 0.61 |
| 535704 | POUCH,LAMINATING,LETTER SIZE | PK | $ 3.13 |

| 908830 | PUNCH,3 HOLE,MODEL 350,BLK | EA | $ 17.17 |
|---|---|---|---|
| 908848 | PUNCH,3-HOLE,9/32",BLACK | EA | $ 5.83 |
| 980813 | PUNCH,ELECTRIC,3 HOLE,PLATINUM | EA | $ 55.00 |
| 980839 | PUNCH,ELECTRIC,3HOLE,PLATINUM | EA | $ 83.59 |
| 825307 | PUNCH,PAPER,2-HOLE,20SHEET CAP | EA | $ 2.76 |
| 521109 | RBN,PRT,PAN KX-P2130/35,BK | EA | $ 5.81 |
| 324346 | RECORDER,CASSETTE,STD,RQ-L51 | EA | $ 27.02 |
| 294008 | RECORDER,STND,RQ-L31P-S,SILVER | EA | $ 16.09 |
| 196048 | REFILL,PEN,STAY-PUT,BLACK | EA | $ 0.71 |
| 480061 | RIBBON,ML100,SERIES/320/321 | EA | $ 3.87 |
| 313676 | RULER,12",INCH/METRIC,PLSTC | EA | $ 0.10 |
| 720461 | RULER,W/BNDR HOLES,12",PLASTIC | EA | $ 0.02 |
| 407026 | SANDISK 512MB COMPACT FLASH | EA | $ 27.75 |
| 909044 | SHARPENER,PENCIL,#41,3PRNG,BEI | EA | $ 82.89 |
| 824748 | SHARPENER,PENCIL,ELECTRIC | EA | $ 9.72 |
| 909085 | SHARPENER,PENCIL,ELECTRIC,BLK | EA | $ 23.66 |
| 908996 | SHARPENER,PENCIL,MODEL,KS | EA | $ 6.32 |
| 595671 | SHARPNR,PENCIL,SCHOOL PRO | EA | $ 17.58 |
| 498811 | SHEET PROTECT,OD,STD,CLR,100/B | BX | $ 1.16 |
| 662257 | SHREDDER,120C-2 CONFTTI CT | EA | $ 307.42 |
| 410241 | SHREDDER,420 STRIPCUT,POWERSHR | EA | $1,009.74 |
| 410261 | SHREDDER,420CC CROSSCUT,PWRSHR | EA | $1,101.58 |
| 748891 | SHREDDER,CROSS CUT,PS60C-2 | EA | $ 78.95 |
| 745691 | SHREDDER,CROSS CUT,PS80C-2 | EA | $ 142.11 |
| 900037 | SHREDDER,PERSONAL,OD1500C | EA | $ 142.11 |
| 365199 | SHREDDER,POWERSHRED 320CC | EA | $ 734.23 |
| 365091 | SHREDDER,POWERSHRED MODEL480CC | EA | $1,514.85 |
| 184945 | SHREDDER,POWERSHRED,220 | EA | $ 343.93 |
| 584641 | SHREDDER,PS60-2,PERS | EA | $ 71.03 |
| 662284 | SHREDDER,PS70-2CD STRIP | EA | $ 114.78 |
| 427111 | STAPLE REMOVER,BLACK | EA | $ 0.13 |
| 207902 | STAPLE,1/4",15-25SHT,5000BX | BX | $ 0.16 |
| 749601 | STAPLE,1/4",15-25SHT,5000BX | BX | $ 0.18 |
| 320960 | STAPLE,1/4",SF1,15-25SHT,5M/BX | BX | $ 0.26 |
| 908590 | STAPLER,AUTO,ELECT,ADJ GAUGE | EA | $ 39.85 |
| 427171 | STAPLER,DELUXE,FULL STRIP,BLK | EA | $ 1.41 |
| 908194 | STAPLER,DESK,STD,FULL,BLACK | EA | $ 4.85 |
| 908210 | STAPLER,ECON,FULL STRIP,BLACK | EA | $ 1.40 |
| 908582 | STAPLER,ELEC,HD,CTG | EA | $ 100.75 |
| 549014 | STAPLER,ELECTRIC,BLACK | EA | $ 12.76 |
| 603412 | STAPLER,EXECUTIVE,BLACK | EA | $ 4.58 |
| 427181 | STAPLER,FULL STRIP,BLACK | EA | $ 2.03 |
| 808675 | STAPLER,FULLSTRIP,ACCO 747,BLK | EA | $ 4.93 |
| 733251 | SURGE,STANLEY,208JOULES,6'CORD | EA | $ 6.06 |
| 733291 | SURGE,STANLEY,740JOULES,6'CORD | EA | $ 11.63 |
| 774491 | TABLE,PLASTIC,30X72,GRAY | EA | $ 50.81 |