BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS & LINCENBERG, P.C.
Gary S. Lincenberg (SBN 123058)
Peter J. Shakow (SBN 198633)
1875 Century Park East, 23rd Floor
Los Angeles, CA  90067
Telephone:  (310) 201-2100
Facsimile:   (310) 201-2110
E-mail: gsl@birdmarella.com
          pjs@birdmarella.com

WILLIAMS & CONNOLLY LLP
Daniel F. Katz (*pro hac vice*)
Paul T. Hourihan (*pro hac vice*)
Beth A. Levene (*pro hac vice*)
William P. Ashworth (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail:  dkatz@wc.com
          phourihan@wc.com
          blevene@wc.com
          washworth@wc.com

*Attorneys for Defendant Office Depot, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| State of California *et al.*, *ex rel*. David Sherwin,<br><br>          Plaintiff(s),<br><br>     v.<br><br>Office Depot, Inc.,<br><br>          Defendant. | Case No.: 2:12-cv-09952-FMO-CW<br>Hon. Fernando M. Olguin<br><br>**DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**<br><br>Date:  April  25, 2013<br>Time:  10:00 a.m.<br>Courtroom:  F- 9th Floor |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 1

I.    The California False Claims Act .................................................................. 1

II.   The L.A. County Contracts and the U.S. Communities Program ................. 2

III.  Pricing Structure of the L.A. County Contracts ......................................... 3

IV.  Mr. Sherwin's Claims .............................................................................. 4

ARGUMENT ...................................................................................................... 5

I.    *Res Judicata* Bars Mr. Sherwin's Claims ............................................... 6

    A.    The First Two Prongs of *Res Judicata* Are Met ............................. 8

    B.    The Last Two Prongs of *Res Judicata* Are Met ............................ 12

    C.    Barring Mr. Sherwin's Claims in This Case Serves the Policies Underlying *Res Judicata* .......................................................... 13

II.   The FAC Fails To State a Claim ............................................................ 15

    A.    The FAC Fails To Allege Any False Claim .................................... 15

    B.    The FAC Fails To Allege Objective Falsity ................................... 17

        1.    The Best Pricing Claim and the GP Floor Claim Allege, at Most, Breaches of Contract ................................................. 18

        2.    The Option 2 Claim and the Core List Manipulation Claim Do Not Allege Any False Statements by Office Depot ........... 20

III.  The FAC Fails To Allege Fraud with Particularity .................................... 20

    A.    Mr. Sherwin Fails To Allege Who Is a Real Party .......................... 22

    B.    The Best Pricing Claim Is Not Sufficiently Particular ..................... 22

    C.    The Option 2 Claim Is Not Sufficiently Particular .......................... 23

    D.    The GP Floor Claim Is Not Sufficiently Particular.......................... 23

    E.    The List Price Changes Claim Is Not Sufficiently Particular ........... 24

    F.    The Core List Manipulation Claim Is Not Sufficiently Particular ..... 24

IV.  The Court Should Dismiss the FAC with Prejudice .................................. 24

i

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...... 5

*Barr v. McGraw-Hill, Inc.*, 710 F. Supp. 95 (S.D.N.Y. 1989).................... 16, 21

*Birjandi v. Wachovia Mortg., FSB*, No. CV10-3223 R (PJWx), 2010 WL 4718614 (C.D. Cal. Nov. 12, 2010).................................................. 6

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) .............................. 6, 20

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011).............. .................................................................................... 15, 21, 23

*Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631 (N.D. Cal. 1997)... 6, 21

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009 (C.D. Cal. 2011) ................................................ 16, 21

*Davis Wright & Jones v. Nat'l Union Fire Ins. Co.*, 709 F. Supp. 196 (W.D. Wash. 1989)............................................................................ 14, 15

*Desoto v. Condon*, 371 F. App'x 822 (9th Cir. 2010)...................................... 20

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011)........................................... 24

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV. S-050583 LKK/GGH, 2007 WL 1791699 (E.D. Cal. June 15, 2007).............. 15, 18, 19

*Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367, 2008 WL 276030 (M.D. Fla. Jan. 31, 2008) ...................................................................... 6, 8

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) .......... 21

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)........................................... 24

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999)................*passim*

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998)...... 21

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010)......................... 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)................................................................................................... 20

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) .......................................... 22

ii

*Shurick v. Boeing Co.*, 623 F.3d 1114 (11th Cir. 2010) (per curiam) ............. *passim*

*Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL
2674456 (C.D. Cal. June 30, 2010).................................................. 16

*Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002) ......................... 14

*Taylor v. Grannis*, No. C 07-6380 MHP, 2010 WL 4392578 (N.D. Cal. Oct.
29, 2010)......................................................................... 6, 7

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th
Cir. 2002)........................................................................ 15, 16

*United States ex rel. Cericola v. Fannie Mae*, 529 F. Supp. 2d 1139 (C.D. Cal.
2007)............................................................................. 21

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th
Cir. 2002)........................................................................ 16, 17

*United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66 (D.D.C.
2011)............................................................................. 9, 11

*United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir.
2003)............................................................................. 18

*United States ex rel. Haight v. Catholic Healthcare West*, No. CV-01-2253-
PHX-FJM, 2007 WL 2330790 (D. Ariz. Aug. 14, 2007)................................. 18

*United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336
F.3d 346 (5th Cir. 2003) ......................................................... 12, 13

*United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir.
1999)............................................................................. 18, 19

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, No. 11-2077, 2013
WL 136030 (4th Cir. Jan. 11, 2013) ............................................... 16

*United States ex rel. Owens v. First Kuwaiti Gen. Trading Contracting Co.*,
612 F.3d 724 (4th Cir. 2010) ..................................................... 18, 19, 20

*United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.*, 860
F. Supp. 370 (S.D. Tex. 1994) .................................................... 9, 11, 13

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008)................................................................................ 18, 19

*United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818 (7th Cir. 2011)........................................................................................ 18

*United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) ..... 21

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)........................ 21

*Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999)................................... 21

### STATE CASES

*AMEC Civil, LLC v. Florida*, 41 So. 3d 235, 241 (Fla. Dist. Ct. App. 2010) ....... ................................................................................................ 7, 8, 14

*Dep't of Agric. & Consumer Serv. v. Mid–Fla. Growers, Inc.*, 570 So. 2d 892 (Fla. 1990) ........................................................................................... 7

*Media Placement, Inc. v. Combined Broad., Inc.*, 659 So. 2d 1328 (Fla. Dist. Ct. App. 1995) ..................................................................................... 8

*O'Brien v. McMahon*, 44 So. 3d 1273 (Fla. Dist. Ct. App. 2010).................... 12

*State ex rel. Grayson v. Pac. Bell Tel. Co.*, 142 Cal. App. 4th 741, 48 Cal. Rptr. 3d 427 (3d Dist. 2006) ....................................................................... 15

*State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 116 P.3d 1175 (2005).................... 15

*W&W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.*, 35 So. 3d 79 (Fla. Dist. Ct. App. 2010) ......................................................... 7, 8

### OTHER AUTHORITIES

28 U.S.C. § 1738................................................................................... 7

31 U.S.C. § 3730(b)(1) ......................................................................... 12

Cal. Gov't Code § 12652(c)(1) ......................................................... 1, 12

Cal. Gov't Code § 12652(d)................................................................... 1

Cal. Gov't Code § 12652(g)................................................................... 2

Fla. Stat. Ann. § 68.083(2).................................................................. 12

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

## INTRODUCTION

This Rule 12(b)(6) Motion addresses the claims brought by Plaintiff-Relator David Sherwin, a disgruntled former salesperson at Office Depot in Florida who has filed multi-million dollar suits here and in other jurisdictions against his former employer. Mr. Sherwin's first suit was a *qui tam* action in Florida in 2008. In it, Mr. Sherwin alleged the same misconduct he alleges in this suit, but the Florida Attorney General dismissed the case with prejudice. Mr. Sherwin now seeks another bite at the apple by bringing the same claims here under the California False Claims Act. Such claim splitting is barred by the doctrine of *res judicata*. Even if it were not, Mr. Sherwin's allegations fail as a matter of law. The heart of this suit is the contention that Office Depot overcharged California government entities under the terms of particular contracts. But, as a matter of law, breach of contract is not fraud—much less a false claim. And Mr. Sherwin's purported "insider" knowledge is woefully deficient, as he fails to plead even the most basic elements of fraud, including—crucially—any actual false claim made to the entities on whose behalf he purports to sue. The Court thus should dismiss Mr. Sherwin's complaint.[1]

## BACKGROUND

### I.    The California False Claims Act.

The California False Claims Act ("CFCA"), like the federal False Claims Act ("FCA") on which it was modeled, creates a right of action if false claims have been submitted to California government entities. Government entities may sue directly under the CFCA, but the statute also grants individuals who are the "original source" of information regarding false claims, so-called relators, the right to sue on behalf of affected government entities, as well as for themselves. Cal. Gov't Code § 12652(c)(1) & (d). Successful relators are entitled to a significant portion of any

---

[1] This motion targets only the claims of Mr. Sherwin as a purported relator. Office Depot has filed herewith a separate motion to dismiss the claims of the nineteen entities that have intervened in this action.

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

recovery awarded.  Cal. Gov't Code § 12652(g).

**II.   The L.A. County Contracts and the U.S. Communities Program**

At the heart of all of the allegations in this case are two consecutive office supplies contracts between Office Depot and the County of Los Angeles ("L.A. County").  Office Depot won both contracts—Master Agreement No. 41421 and Master Agreement No. 42595 (collectively, the "L.A. County Contracts")—via competitive bids; the contracts took effect at the start of 2001 and 2006, respectively. Corrected First Amended Complaint ("FAC") ¶¶ 22–41.  The 2006 Contract terminated on January 1, 2011.  FAC ¶ 32.

The L.A. County Contracts contained a "piggybacking" provision that allowed government entities around the country that were part of the U.S. Communities Government Purchasing Alliance ("U.S. Communities") to purchase products at prices established by the L.A. County Contracts.  *Id.* ¶ 2; *see also id.*, Ex. 1 § 36.0; Ex. 2 § 36.0.  U.S. Communities is a non-profit "group purchasing" organization that seeks to make procurement simpler and less expensive for its members by designating "lead agencies" to bid out and manage procurement contracts in which U.S. Communities members can participate.  Group purchasing arrangements such as the one at issue in this case are intended to be advantageous for purchasers and sellers alike by reducing the administrative burdens on both.  L.A. County was the "lead agency" for U.S. Communities with respect to office supplies contracts.  *Id.* ¶ 3.

In addition to the L.A. County Contracts, Office Depot entered into iterations of a contract with U.S. Communities (collectively, the "U.S. Communities Administration Agreements") that set forth the parties' respective rights and duties. FAC ¶ 36.  Thus, the L.A. County Contracts governed the relationship between Office Depot and L.A. County, and the U.S. Communities Administration Agreements governed the relationship between Office Depot and U.S. Communities.

California government entities were not automatically entitled to the pricing of the L.A. County Contracts.  Rather, in order to obtain the pricing of the L.A. County

Contracts, a government entity had to be a member of U.S. Communities that affirmatively opted into that pricing. *See, e.g., id.* ¶ 23; *see also id.*, Ex. 3, at 5 (acknowledging that "for various reasons many public agencies will issue their own solicitations" instead of opting into the L.A. County Contracts).

## III.  Pricing Structure of the L.A. County Contracts

Mr. Sherwin alleges that Office Depot violated the CFCA by charging more than was permitted by the L.A. County Contracts. *See* FAC ¶¶ 4–9. The basic components to the pricing structure of the L.A. County Contracts, which applied to items listed in Office Depot's commercial catalog, were as follows:

- Core List:  This was a list of several hundred high-demand items as to which L.A. County negotiated steeply discounted fixed prices for the term of the contract. *See id.* Ex. 1, at 20–21; *id.*, Ex. 2, at 32–33.

- Non-Core Items:  Most other items contained in Office Depot's commercial catalog were "non-core" and were priced according to one of two methods.

  o "Option 1" Price Plan:  For most customers, non-core items generally received category-based discounts (up to 70%) off list price, with a gross profit floor (i.e., a minimum percentage over cost).  Under this method, prices were adjusted twice per year. *See* FAC Ex. 1, at 20–21; *id.,* Ex. 2, at 32–33.

  o "Option 2" Price Plan:  From January 2006 through March 2009, customers had the option of choosing a different pricing method for non-core items, under which most items received a flat 10% off the retail price on Office Depot's website. *See id.*, Ex. 2, at 34–35.

The L.A. County Contracts also had a "most favored public entity" ("MFPE") provision under which, if Office Depot were to provide (1) "the same goods or services," (2) "under similar quantity and delivery conditions," (3) "to the State of California or any county, municipality or district of the State," (4) "at prices below those set forth in this Master Agreement," then "such lower prices shall be

3

immediately extended to [L.A.] COUNTY." *Id.*, Ex. 1 § 23.0.  Separately, in the 2006 version of the U.S. Communities Administration Agreement, Office Depot committed to U.S. Communities that its U.S. Communities pricing was "the lowest available pricing (net to buyer) to state and local public agencies nationwide." *Id.*, Ex. 3, at 2.  Mr. Sherwin and Office Depot dispute the meaning of these provisions.

## IV.   Mr. Sherwin's Claims

Mr. Sherwin brought this action against Office Depot under the CFCA, purportedly on behalf of "all political subdivisions within the State of California . . . that purchased goods and services from Office Depot" under the L.A. County Contracts, which Mr. Sherwin refers to as the "Real Parties."  FAC ¶ 12.[2]  Mr. Sherwin's claims are predicated on the notion that, with respect to each of the Real Parties, Office Depot submitted false claims for payment by charging more than allowed "pursuant to the [L.A. County] contract's terms." *Id.* ¶ 3.  Yet, the FAC does not identify any contract directly between Office Depot and any of the Real Parties or otherwise explain how any of the Real Parties signed onto the terms of the L.A. County Contracts.  Thus, although Mr. Sherwin purports to represent hundreds of distinct government entities, the FAC does not differentiate among them.  Rather, it lumps all the Real Parties together in generic allegations of noncompliance with the L.A. County Contracts.

Under the umbrella of a single CFCA count, Mr. Sherwin alleges five distinct claims:

1. Office Depot "intentionally did not extend . . . lower prices to Real Parties as was required under the [L.A. County] contract's 'Most Favored Public Entity' provision and Office Depot's 'Pricing Commitment' to U.S. Communities"

---

[2] Notably, L.A. County itself has not intervened in this case.  Indeed, in all the years it was the lead agency on the office supplies contract with Office Depot, not once did L.A. County take the positions that Mr. Sherwin alleges in this lawsuit or assert that Office Depot in any way breached its contractual duties.

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

1    (the "**Best Pricing Claim**").  FAC ¶ 42; *see also id.* ¶¶ 43–67.

2     2.   Office Depot "fraudulently or surreptitiously caused Real Parties to transfer

3         from Option 1 to Option 2 pricing" (the "**Option 2 Claim**").  *Id.* ¶ 42; *see also*

4         *id.* ¶¶ 68–80.

5     3.   Office Depot overcharged Real Parties by inflating its costs, such as by not

6         applying manufacturer rebates when calculating those costs, so that it charged

7         "the supposed minimum price set by the 15% [gross profit] floor, rather than

8         the 45% or higher discount from list pricing" (the "**GP Floor Claim**").  *Id.*

9         ¶ 42; *see also id.* ¶¶ 81–92.

10    4.   Office Depot "increased its prices at any time, and on more than two occasions

11        annually (sometimes daily), in knowing violation of the [L.A. County]

12        contract, which limited price changes to two dates each year" (the "**List Price**

13        **Changes Claim**").  *Id.* ¶ 42; *see also id.* ¶¶ 93–98.

14    5.   Office Depot "improperly discontinu[ed] core list items," causing a reduction

15        in the applicable price discounts (the "**Core List Manipulation Claim**").  *Id.*

16        ¶ 42; *see also id.* ¶¶ 99–100.

17      Of the five CFCA claims, the Best Pricing Claim is by far the most prominent

18 (taking up more than a quarter of the entire FAC) and the most significant in terms of

19 alleged damages ("in excess of several million dollars," *see* FAC ¶ 65).

20                     **ARGUMENT**

21      "To survive a motion to dismiss, a complaint must contain sufficient factual

22 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

23 *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884

24 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955,

25 1974, 167 L. Ed. 2d 929, 949 (2007)).  But not all purported facts must be accepted as

26 true, as allegations that "are no more than conclusions, are not entitled to the

27 assumption of truth."  *Id.* at 678, 679.  Thus, a court must first reject conclusory

28 allegations and then "consider the factual allegations in [the] complaint to determine

if they plausibly suggest an entitlement to relief." *Id.* at 681.  Because Mr. Sherwin brings a complaint under the CFCA, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 636 (N.D. Cal. 1997).

## I.    *Res Judicata* Bars Mr. Sherwin's Claims

On July 16, 2008, the same relator, David Sherwin, filed a *qui tam* complaint against the same defendant, Office Depot, making the same allegations made in this case.  In that earlier case ("*Sherwin I*"), filed in Florida state court, Mr. Sherwin claimed that Office Depot's noncompliance with the L.A. County Contracts violated the Florida False Claims Act—for the same reasons he now claims the alleged conduct violated the CFCA.  *See generally* Ex. 1 to the Request for Judicial Notice filed herewith ("RJN Ex.") (Florida complaint).[3]  On June 4, 2010, the Florida Attorney General intervened in *Sherwin I* and filed a Notice of Voluntary Dismissal with Prejudice.  The Notice explained that Florida's Department of Legal Affairs

> has completed its review of the pleading and written materials supplied by the *qui tam* Plaintiff (Relator) and has concluded that the overcharging allegations involving local government entities are not within the scope and provisions of the Florida False Claims Act.  The Department has investigated and determined that there is an insufficient basis for the other overcharging allegations.

RJN Ex. 2.

The Florida Attorney General's dismissal constituted a valid and final

---

[3] The Court may take judicial notice of the filings in the Florida action on a motion to dismiss.  *See Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367, 2008 WL 276030, at *3 n.2 (M.D. Fla. Jan. 31, 2008) (taking judicial notice of state case and its docket entries); *Taylor v. Grannis*, No. C 07-6380 MHP (pr), 2010 WL 4392578, at *5 (N.D. Cal. Oct. 29, 2010) (same); *Birjandi v. Wachovia Mortg., FSB*, No. CV10-3223 R (PJWx), 2010 WL 4718614, at *2 (C.D. Cal. Nov. 12, 2010) (same).

judgment in *Sherwin I.  See W&W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.*, 35 So. 3d 79, 83 (Fla. Dist. Ct. App. 2010) (holding voluntary dismissal with prejudice constitutes a final judgment on the merits for purposes of *res judicata*).[4]  Under principles of *res judicata*, that Florida judgment bars Mr. Sherwin from again suing Office Depot for any claims that Mr. Sherwin brought—or could have brought—as a relator in *Sherwin I*, including the claims he now asserts as a relator here (although it would not bar Real Parties from bringing their own <u>direct</u> claims against Office Depot).

The purpose behind the doctrine of *res judicata* is to "'protect[] . . . from . . . the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (quoting *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210, 217 (1979)).  Florida law is clear that "[t]he rule against splitting causes of action makes it incumbent upon plaintiffs to raise <u>all available claims involving the same circumstances</u> in one action."  *Dep't of Agric. & Consumer Serv. v. Mid–Fla. Growers, Inc.*, 570 So. 2d 892, 901 (Fla. 1990) (emphasis added)).  The rule of *res judicata* "is founded on the plainest and most substantial justice—namely, that litigation should have an end, and that no person should be unnecessarily harassed with a multiplicity of suits.  If the first suit is effective and available, and affords ample remedy to the plaintiff, the second suit is unnecessary and consequently vexatious."  *AMEC Civil, LLC v. Florida*, 41 So. 3d 235, 241 (Fla. Dist. Ct. App.  2010).  *See also Mid–Fla. Growers, Inc.*, 570 So. 2d at 901.

Under Florida law, *res judicata* applies where there is: (1) "identity in the thing

---

[4] Florida law governs the preclusive effect of a judgment from a Florida court.  *See Taylor*, 2010 WL 4392578, at *3 ("The federal full faith and credit statute, 28 U.S.C. § 1738, requires that a federal court give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.").

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

sued for"; (2) "identity of the cause of action"; (3) "identity of persons and parties of the action"; and (4) "identity of the quality in the person for or against whom the claim is made." *W&W Lumber*, 35 So. 3d at 83.  Each of these elements is met here. Both suits sought damages based on the same nucleus of facts: alleged fraud based on claimed overpricing under the terms of the L.A. County Contracts.  And both suits involve the same parties in the same capacities:  Office Depot as defendant and David Sherwin as plaintiff-relator.

## A.   The First Two Prongs of *Res Judicata* Are Met

"The first two prongs of the *res judicata* inquiry are often considered together because '[i]f the claim or cause of action is substantially the same in both actions, it is not material that the relief demanded is in some manner different.'" *Kruse*, 2008 WL 276030, at *3 (brackets in original) (quoting *Russell v. A&L Dev., Inc.*, 273 So. 2d 439, 440 (Fla. Dist. Ct. App. 1973)).  Here, however, the relief demanded (money) is the same in both cases.  And the causes of action in both cases are identical.

Under Florida law, like federal law, *res judicata* "bars the filing of claims which were raised <u>or could have been raised</u> in an earlier proceeding." *Ragsdale*, 193 F.3d at 1238 (emphasis added).[5]  Accordingly, courts must "look not only to the claims actually litigated in the first suit, but also to <u>every other matter which the parties might have litigated and had determined</u>, within the issues as framed by the pleadings or as incident to or essentially connected with the subject matter of the first litigation." *AMEC Civil, LLC*, 41 So. 3d at 239–40 (brackets and internal quotation marks omitted; emphasis added) (holding that because the "central fact" in two suits

---

[5] *See also AMEC Civil, LLC v. Florida*, 41 So. 3d 235, 238-39 (Fla. Dist. Ct. App. 2010) ("The doctrine of *res judicata* makes a judgment on the merits conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." (internal quotation marks omitted)); *Media Placement, Inc. v. Combined Broad., Inc.*, 659 So. 2d 1328, 1328 (Fla. Dist. Ct. App. 1995) ("*Res judicata* applies to all matters actually raised and determined as well as to all other matters which could properly have been raised and determined in the prior action, whether they were or not." (internal quotation marks omitted)).

alleging breach of contract was the parties' "single, indivisible agreement," a later suit alleging a different breach was deemed the same cause of action and thus barred by *res judicata*).

These principles apply to bar *qui tam* actions where the claims could have been brought by the relator in earlier litigation arising from the same nucleus of facts. For example, in *United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 77 (D.D.C. 2011), the court held that a relator's *qui tam* claim was barred by *res judicata* because it raised the same cause of action as a prior claim, even though the two claims were based on different contracts, because both claims alleged that the defendant, HP, falsely represented that its products did not come from certain countries. The court explained: "Although Folliard's first suit did not include claims about HP's contracts with NASA [the allegedly injured party in the subsequent suit] . . . those claims arose from the same nucleus of facts—namely that relator discovered alleged [Trade Agreements Act] violations by comparing government websites with the HP website—and it is obvious that he could have easily included them in his first suit." *Id.* (emphases added). The court further concluded that "[b]ecause [the relator's] claims deal with the same types of contracts and the same general factual issues, there is no real question that they 'form a convenient trial unit' that would merit preclusion." *Id.* at 78 (emphases added).

Similarly, in *Shurick v. Boeing Co.*, 623 F.3d 1114, 1117–18 (11th Cir. 2010) (per curiam), the Eleventh Circuit affirmed the dismissal of a retaliation claim under the Florida False Claims Act as barred by *res judicata* based on the prior dismissal of a separate *qui tam* suit under the FCA. As in *Folliard*, the court found that the two suits involved the same cause of action because they "shared precisely the same common nucleus of operative fact." *Id.* at 1117; *accord United States ex rel. Paul v. Parsons, Brinkerhoff, Quade & Douglas, Inc.*, 860 F. Supp. 370, 374 (S.D. Tex. 1994) (holding that a prior state court action for wrongful termination barred a federal *qui tam* claim because, "[a]lthough the complaint asserts a new theory and measure of

9

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

recovery, the alleged filing of false or fraudulent claims, the operative facts are the same as those in the prior lawsuit"), *aff'd per curiam*, 53 F.3d 1282 (5th Cir. 1995).

Here, a review of the complaints in the two actions brought by Mr. Sherwin—and particularly the original complaint filed in this matter—quickly reveals that they allege identical causes of action arising from the same nucleus of facts. Both the Florida and the California complaints allege that Office Depot committed fraud by charging more than was permitted under the L.A. County Contracts. *See* RJN Ex. 1 (Florida complaint) ¶¶ 10, 14, 15; FAC ¶¶ 17–21. Indeed, the original complaint that Mr. Sherwin filed in this Court is essentially a verbatim copy of the Florida Complaint. *Compare* RJN Ex. 1, *with* RJN Ex. 3 (original California complaint). In particular, each CFCA claim Mr. Sherwin alleged in Florida is identically alleged here:

- Best Pricing Claim. *Compare* RJN Ex. 1 ¶ 11(d) ("Office Depot systematically committed these False Claims Act violations: . . . by not providing the Florida government agencies and instrumentalities with the best price given to Office Depot's best customers as required by the contract."), *with* RJN Ex. 3 ¶ 10(d) ("Office Depot systematically committed these False Claims Act violations: . . . by not providing the California government agencies and instrumentalities with the best price given to Office Depot's best customers as required by the contract."); *compare also* RJN Ex. 1, ¶¶ 55–57, *with* FAC ¶¶ 4-5, 42–67.

- Option 2 Claim. *Compare* RJN Ex. 1, ¶ 11(a) ("Office Depot systematically committed these False Claims Act violations: . . . by fraudulently inducing Florida government agencies' and instrumentalities' representatives to switch to a higher cost program by telling the Florida representatives that it was better financially for the Florida government agencies and instrumentalities, which was false"), *with* RJN Ex. 3, ¶ 10(a) ("Office Depot systematically committed these False Claims Act violations: . . . by fraudulently inducing California government agencies' and instrumentalities' representatives to switch to a

higher cost program by telling the California representatives that it was better financially for the California government agencies and instrumentalities, which was false"); *compare also* RJN Ex. 1, ¶¶ 18–19, 27–29, 31–43, *with* FAC ¶¶ 6, 38–39, 68–80.

- GP Floor Claim. *Compare* RJN Ex. 1, ¶ 11(c) ("Office Depot systematically committed these False Claims Act violations: . . . by rebate fraud in not providing the Florida government agencies and instrumentalities with the benefit of rebates from Office Depot's suppliers."), *with* RJN Ex. 3, ¶ 10(c) ("Office Depot systematically committed these False Claims Act violations: . . . by rebate fraud in not providing the California government agencies and instrumentalities with the benefit of rebates from Office Depot's suppliers."); *compare also* RJN Ex. 1, ¶¶ 21–26, 51–54, *with* FAC ¶¶ 7, 88–92.

- List Price Changes Claim. *Compare* RJN Ex. 1, ¶ 11(b) ("Office Depot systematically committed these False Claims Act violations: . . . by increasing prices without notice or explanation as required by the contract and on more than the two dates allowed by the contract, January 1 and July 1 of each year."), *with* RJN Ex. 3, ¶ 10(b) ("Office Depot systematically committed these False Claims Act violations: . . . by increasing prices without notice or explanation as required by the contract and on more than the two dates allowed by the contract, January 1 and July 1 of each year."); *compare also* RJN Ex. 1, ¶¶ 27, 30, 44–50, *with* FAC ¶¶ 8, 93–98.

Both suits thus arise out of the "same common nucleus of operative facts." *See Shurick*, 623 F.3d at 1117. Not only do they "deal with the same types of contracts and the same general factual issues," *Folliard*, 798 F. Supp. 2d at 78, they allege the very same misconduct relating to the very same contract. "In as much as the facts and claims in [both] cases are almost identical, it is apparent that the two cases could have been tried together." *Paul*, 860 F. Supp. at 375 (applying *res judicata* to dismiss claims).

### B.    The Last Two Prongs of *Res Judicata* Are Met

Both *Sherwin I* and this action involved the same parties in the same capacities (i.e., the same "quality in the person").[6]  The defendant, Office Depot, is the same in both actions.  Likewise, the plaintiff-relator against whom *res judicata* is asserted is the same, David Sherwin.

In a *qui tam* case, courts look to the relator as the party for determining whether *res judicata* should apply because the relator is a party in his own right.  *See* Fla. Stat. Ann. § 68.083(2) (West 2012) ("A person may bring a civil action for a violation of § 68.082 <u>for the person</u> and for the affected agency." (emphasis added)); *accord* Cal. Gov't Code 12652(c)(1) ("A person may bring a civil action for a violation of this article <u>for the person</u> and either for the State of California in the name of the state . . . or for a political subdivision in the name of the political subdivision . . . ." (emphasis added)).  Thus, in *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 1128 (2007), the Fifth Circuit found an identity of parties between an individual action and a subsequent *qui tam* case because the relator was a plaintiff in each.  The court explained that, although the United States is a real party in interest in *qui tam* actions, "it would also be incorrect for us to state that Mayfield [the relator] is not <u>a</u> party in interest in both actions," citing the statutory provision that a *qui tam* suit is brought "'<u>for the person</u> and for the Government.'"  *Id.* at 358 (quoting 31 U.S.C. § 3730(b)(1)).  The court concluded that "Mayfield's interests were sufficiently represented in *Mayfield I* to satisfy the 'identity of parties' element.  This is not to say that <u>another</u> relator would be precluded from bringing this suit on

---

[6] *See O'Brien v. McMahon*, 44 So. 3d 1273, 1279 n.9 (Fla. Dist. Ct. App. 2010) (example of a person in different capacities is a person appearing in a representative capacity, such as "next friend" on behalf of a child, versus appearing on his own behalf).

behalf of the United States. <u>It is to say that the identity of [the] parties element as to Mayfield is satisfied.</u>" *Id.* at 358 (emphases added).[7]

Other courts also have applied *res judicata* to bar *qui tam* claims when the relator was a plaintiff in a prior related action. For example, courts have found that *qui tam* claims were precluded by *res judicata* based on a relator's past litigation of non-*qui tam* claims. *See Paul,* 860 F. Supp. 370 (holding *res judicata* barred FCA *qui tam* action where relator previously brought state court action for wrongful discharge in which he could have raised his FCA allegations).

Likewise, the Eleventh Circuit in *Ragsdale*, applied *res judicata* based on the settlement of a *qui tam* action to preclude a subsequent claim for retaliatory termination. In so doing, the court held that the parties in the two actions were identical and specifically rejected the argument that the relator was not a party to the first suit after the government intervened. 193 F.3d at 1238 n.7. *See also Shurick*, 623 F.3d at 1117-18 (affirming dismissal of retaliation claim under the Florida False Claims Act as barred by *res judicata* based on prior dismissal of *qui tam* suit brought by relator under the FCA).

Thus, because Office Depot and Mr. Sherwin were parties in the same capacities to both *Sherwin I* and this action, the requisite identity of parties exists for claim prelusion.

## C.   Barring Mr. Sherwin's Claims in This Case Serves the Policies Underlying *Res Judicata*

As shown above, controlling law requires application of *res judicata* to bar Mr. Sherwin's claims here—and for good reason. Permitting Mr. Sherwin to re-assert the same claims here that were alleged and resolved in *Sherwin I* would be contrary to

---

[7] Unlike other courts, *see, e.g.*, *Ragsdale*, 193 F.3d at 1235, the *Laird* court found no preclusion, despite the identity of parties, because it found that the earlier retaliation claim was not the same cause of action as the *qui tam* claim for fraud. Here, by contrast, there is no question that both of Sherwin's *qui tam* complaints allege the same cause of action arising out of the same nucleus of facts. *See supra* Part I.A.

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

the "'sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered for the same cause by interminable litigation.'"  *AMEC Civil*, 41 So. 3d at 243 (quoting *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952)).

Here, the threat of "interminable litigation" is not just a possibility:  Mr. Sherwin, for over four years, has been filing suits around the country making the same allegations that were dismissed in his Florida case—a case in which Mr. Sherwin could have alleged claims on behalf of any or all of the hundreds of government entities around the country that purchased under the L.A. County Contracts.  *See* FAC ¶ 12.  If such tactics were allowed, there would be nothing to prevent Mr. Sherwin from bringing a multiplicity of separate actions nationwide, forcing Office Depot to relitigate the same issues again and again as Mr. Sherwin seeks a forum that will provide him with a more favorable result than he obtained in Florida.  As the Ninth Circuit has made clear, that is exactly the result the doctrine of *res judicata* is intended to avoid.  *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 959 (9th Cir. 2002) (refusing to "upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation" (internal citation marks omitted)); *see also Davis Wright & Jones v. Nat'l Union Fire Ins. Co.*, 709 F. Supp. 196, 200 (W.D. Wash. 1989) ("Now that a judgment displeasing to [the plaintiff] has been entered under Washington law, it cannot escape the result of the doctrine of res judicata simply by filing suit in another state . . . .  Permitting such behavior would encourage repeated litigation of the same or related claims in as many state courts as are required to accept jurisdiction and would utterly defeat the purpose of res judicata."), *aff'd per curiam*, 897 F.2d 1021 (9th Cir. 1990).

In short, a "person having only a single cause of action is generally not permitted to split up the cause of action and maintain several suits for different parts

1    of it." *Shurick*, 623 F.3d at 1117.  To allow Mr. Sherwin to proceed with this action

2    "would permit future *qui tam* plaintiffs strategically to sever their claims in the hope

3    of obtaining a second bite at the apple, should their first action prove unsuccessful.

4    This is textbook res judicata." *Ragsdale*, 193 F.3d at 1240.

5    **II.    The FAC Fails To State a Claim**

6        The Court should dismiss the FAC for an additional, independent reason.  Mr.

7    Sherwin fails to allege the most fundamental element of a CFCA claim:  a false

8    claim.  First, Mr. Sherwin fails to allege any specific facts establishing that Office

9    Depot actually submitted a false claim under the L.A. County Contracts to any Real

10    Party.  In addition, Mr. Sherwin's theories generally amount to—at most—allegations

11    of breach of contract based on disputed contract interpretations; as a matter of law,

12    such allegations cannot state claims for violations of the CFCA because they do not

13    allege any objective falsehood.

14    **A.    The FAC Fails To Allege Any False Claim**

15        A plaintiff asserting violations of the CFCA must allege and establish the

16    existence of a "false or fraudulent" claim.  *Fru-Con Constr. Corp. v. Sacramento*

17    *Mun. Util. Dist.*, No. CIV. S-050583 LKK/GGH, 2007 WL 1791699, at *16 (E.D.

18    Cal. June 15, 2007); *see also United States ex rel. Aflatooni v. Kitsap Physicians*

19    *Serv.*, 314 F.3d 995, 997 (9th Cir. 2002) ("It seems to be a fairly obvious notion that a

20    False Claims Act suit ought to require a false claim."); *Cafasso v. Gen. Dynamics C4*

21    *Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("[A]n actual false claim is the *sine*

22    *qua non* of a[n FCA] violation." (alterations in original; internal quotation marks

23    omitted)).[8]  In accord with this fundamental requirement, the Ninth Circuit has made

24    it clear that "[i]t is not enough" to describe a "scheme in detail but then to allege

25

26    _____
[8] Because of the "very close similarity of California's act to the federal act, it is
appropriate to turn to federal cases for guidance in interpreting the act."  *State ex rel.*

27    *Grayson v. Pac. Bell Tel. Co.*, 142 Cal. App. 4th 741, 746 n.3, 48 Cal. Rptr. 3d 427, 430 n.3 (3d Dist. 2006) (internal quotation marks omitted); *see also State v. Altus*

28    *Fin., S.A.*, 36 Cal. 4th 1284, 1298-99, 116 P.3d 1175, 1184 (2005).

simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted." *Aflatooni*, 314 F.3d at 1002 (internal quotation marks omitted).

Failure to allege facts establishing an actual false claim constitutes failure to meet both Rule 9(b)'s requirement of particularity and Rule 8(a)'s requirement of "sufficient facts [to] support[] a plausible claim." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *3 (C.D. Cal. June 30, 2010).[9] Moreover, submission of a false claim must be alleged for each Real Party. *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1020 (C.D. Cal. 2011) ("Each Plaintiff must identify its transactions, the misrepresentations it relied upon when engaging in the transactions, and the damages it alleges it suffered as a result." (emphasis added)); *Barr v. McGraw-Hill, Inc.*, 710 F. Supp. 95, 97 (S.D.N.Y. 1989) ("The complaint is deficient under Rule 9(b) because it fails . . . to specify the material circumstances of each plaintiff's claim."). This requirement is particularly important in this case because the L.A. County Contracts were not exclusive, FAC, Ex. 1 ¶ 30.0; FAC, Ex. 2 ¶ 30.0— meaning that even if a given entity could have purchased products under the Contracts' pricing, one cannot assume that it actually did so.

Mr. Sherwin's allegations utterly fail to satisfy these requirements. The FAC is devoid of a single example of any false claim for payment made by Office Depot under the L.A. County Contracts—much less a false claim submitted to each Real Party. As in *Clausen*, "[n]owhere in the blur of facts and documents . . . can one find

---

[9] *See also United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1307 (11th Cir. 2002) ("'[T]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single false claim by amount.'" (quoting district court)); *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, No. 11-2077, 2013 WL 136030, at *4 (4th Cir. Jan. 11, 2013) ("[W]ithout . . . plausible allegations of presentment [of a false claim], a relator not only fails to meet the particularity requirement[s] of Rule 9(b), but also does not satisfy the general plausibility standard of *Iqbal*.")

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

any allegation, stated with particularity, of a false claim actually being submitted." 290 F.3d at 1312.  There is no allegation of a claim submitted to any Real Party for payment under Option 2 pricing that should have been Option 1 (the Option 2 Claim); no allegation of any claim for payment to any Real Party at a price that was too high because of alleged cost inflation (the GP Floor Claim); no instance alleged of any claim for payment for a product the price of which had been raised too frequently (the List Price Changes Claim); and nary an example of a claim for payment for a product that was improperly substituted on the core list (the Core List Manipulation Claim).

Finally, despite the space devoted by Mr. Sherwin to the Best Pricing Claim, there is no allegation of any actual claim for payment that violated the MFPE clause of the L.A. County Contracts or the "lowest available pricing" language of the U.S. Communities Administration Agreements.  All the FAC does is set forth purported price comparisons between what was charged to one purported Real Party—the City of Los Angeles ("City of L.A.")—and what Mr. Sherwin claims should have been charged to another Office Depot customer—the City and County of San Francisco. FAC ¶¶ 58, 60, 62–64.  But those comparisons are not sufficient for two reasons. First, they ignore all of the other Real Parties, as to whom there is no indication that a false claim was submitted.  Second, they overlook the crucial fact that the City of L.A.—which filed its own Complaint-in-Intervention—purchased these products pursuant to its own contract with Office Depot, <u>which had pricing terms different from the L.A. County Contracts</u>.  FAC ¶¶ 57–65; City of L.A. Compl. (Dkt. 32), Ex. 5; Mem. in Support of Office Depot's Mot. to Dismiss Intervenors' Claims ("Intervenors Mem."), Part III.  Because the FAC does not allege any facts indicating that specific products purchased under <u>the L.A. County Contracts</u> resulted in false claims actually being made to <u>each of the Real Parties</u>, it must be dismissed.

## B.     The FAC Fails To Allege Objective Falsity

Even had the FAC actually alleged the submission of claims for payment that allegedly breach the L.A. County Contracts to all of the Real Parties, four out of five

of Mr. Sherwin's claims still would be insufficient as a matter of law because they fail to allege such claims were objectively false.

### 1. The Best Pricing Claim and the GP Floor Claim Allege, at Most, Breaches of Contract

To satisfy the "false or fraudulent claim" element under the CFCA, the alleged statement or submission must constitute an "objective falsehood." *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008) (citation omitted); *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 836 (7th Cir. 2011); *Wilson*, 525 F.3d at 376; *United States ex rel. Haight v. Catholic Healthcare West*, No. CV-01-2253-PHX-FJM, 2007 WL 2330790, at *2 (D. Ariz. Aug. 14, 2007); *Fru-Con Constr. Corp.*, 2007 WL 1791699, at *19.

A breach of a contract is not an objective falsehood. "Although a breached contractual term may be considered a falsehood in a looser sense—a false promise—a mere breach of a contractual duty does not satisfy [the 'objective falsehood'] standard." *Yannacopoulos*, 652 F.3d at 836 (citing authority); *see also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[F]ailing to keep one's promise is just breach of contract . . . ."). Accordingly, it is well established that alleged breaches of contractual duties, standing alone, cannot support false-claims liability. *See United States ex rel. Owens v. First Kuwaiti Gen. Trading Contracting Co.*, 612 F.3d 724, 734 (4th Cir. 2010); *see also Wilson*, 525 F.3d at 378 (affirming Rule 12(b)(6) dismissal on ground that "false or fraudulent" element in FCA claim "surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood" (internal quotation marks omitted)); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("[D]ifferences in interpretation growing out of a disputed legal question are . . . not false under the FCA."); *Fru-Con Constr.*, 2007 WL 1791699, at *18 ("Divergent interpretations of a contract without more do not constitute a false claim for payment." (alteration and internal quotation marks omitted)).

Here, two of Mr. Sherwin's five CFCA claims allege nothing more than breaches of contractual promises.  In the Best Pricing Claim, Mr. Sherwin does not allege that Office Depot made a statement that was <u>objectively false</u> with respect to the MFPE clause in the L.A. County Contracts.  All he alleges is that, by "charging [Real Parties] higher prices than the prices it offered to other government entities in California, despite promising in the [L.A. County Contracts] as well as [the U.S. Communities Administration Agreements] that it would provide Real Parties with its 'Most Favored Public Entity' pricing," *id.* ¶ 43, Office Depot "<u>failed to adhere to</u> the MFPE provision," FAC ¶ 67 (emphasis added).[10]  But such a claim is precisely the sort of "run-of-the-mill breach of contract action," *Wilson*, 525 F.3d at 378, turning on "differences in interpretation growing out of a disputed legal question," *Lamers*, 168 F.3d at 1018, that courts have held is not cognizable under the CFCA.

The GP Floor Claim similarly fails to allege any objective falsehood sufficient to state a claim under the CFCA.  The FAC alleges that "'cost' under the minimum floor price provision [of the L.A. County Contracts] was [Office Depot's] actual invoiced cost from the manufacturer." FAC ¶ 82.  At the same time, but in direct contradiction to this assertion, the FAC alleges that Office Depot should have reduced the "cost" used in the floor price calculation based on subsequent refunds received through manufacturers' rebates. *Id.* ¶¶ 88-89.  The FAC does not cite any provision of the L.A. County Contracts to support either interpretation of "cost," but either way, Mr. Sherwin's claim boils down to a dispute over interpretation of the contract.  Such a claim cannot proceed under the CFCA.  *See Fru-Con Constr.*, 2007 WL 1791699, at *18; *see also Owens*, 612 F.3d at 734 (holding *qui tam* relator "cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision" (internal quotation marks omitted)).

---

[10] The plain terms of the contracts do not support Mr. Sherwin's reading of them. *See* Intervenors Mem., Section III.  The key point for purposes of this Motion, however, is that the Best Pricing Claim turns on a contractual dispute, which cannot support a CFCA claim.

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

Because Mr. Sherwin's Best Pricing and GP Floor Claims involve, at most, "garden-variety issues of contractual performance," they are not cognizable under the CFCA.  *Owens*, 612 F.3d at 734.[11]

### 2. The Option 2 Claim and the Core List Manipulation Claim Do Not Allege Any False Statements by Office Depot

Mr. Sherwin's Option 2 Claim and Core List Manipulation Claim likewise fail to allege any objective falsehood.  Mr. Sherwin does not allege <u>any</u> statement to any Real Party regarding Option 2 pricing, much less an objectively false statement.  *See* FAC ¶¶ 68–80.  Nor does he allege an objectively false statement to support the Core List Manipulation claim.  Mr. Sherwin alleges only that Office Depot "discontinu[ed] products on the core list," *id.* ¶ 99, and replaced core list items with private label items "to control those items' list price," *id.* ¶ 100.  But he does not allege any false statements regarding the core list.  Because Mr. Sherwin has failed to allege any objective falsity to support these claims, the Court should dismiss them.

## III. The FAC Fails To Allege Fraud with Particularity

Finally, the Court should dismiss the FAC for another, independent reason:  it fails to meet the particularity requirements of Rule 9(b), which apply to CFCA claims.  *See Bly-Magee,* 236 F.3d at 1018 (9th Cir. 2001); *see also Owens*, 612 F.3d at 731 ("Rule 9(b) plays an especially important role in the context of FCA *qui tam* actions.").  Under Rule 9(b), "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010).  This means that "[a]verments of fraud must be accompanied by 'the who,

---

[11] Underscoring this point is the fact that all of the complaints-in-intervention include causes of action for breaches of the L.A. County Contracts based on the very same contract language and allegedly violative conduct.  *See* Dkts. 33, 34, 29, 35 (¶¶ 96-107 in each); Dkt. 36 (¶¶ 99-110); Dkt. 32 (¶¶108-119); Dkt. 31 (¶¶ 96-107); Dkt. 36 (¶¶ 103-114).

what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  As part of the 'what,' "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotation marks omitted).  A complaint does not meet Rule 9(b)'s particularity requirements where it identifies "a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement." *Cafasso*, 637 F.3d at 1057.[12]  These requirements must be met for <u>each</u> Real Party because "failure to plead fraud with particularity with respect to what happened to a specific plaintiff prevents the defendants from being able to prepare a defense as to this particular allegation of fraud." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (affirming dismissal pursuant to Rule 9(b)), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).[13]

Here, Mr. Sherwin has not come close to identifying the "who, what, when and where" for any of his claims on behalf of <u>any</u> (much less <u>each</u>) Real Party—despite the fact that, as a purported insider, the particularity requirements of Rule 9(b) "should therefore present less of a barrier in *qui tam* actions than might exist in other kinds of fraud cases." *Cericola*, 529 F. Supp. 2d at 1144.

---

[12] *See also Vess*, 317 F.3d at 1106 (allegations of a "fraudulent conspiracy" with "scant specifics as to when or between whom the money changed hands" did not satisfy Rule 9(b)); *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (allegations without specifics identifying the employees involved or "any dates, times, or places" were insufficient under Rule 9(b)); *United States ex rel. Cericola v. Fannie Mae*, 529 F. Supp. 2d 1139, 1145 (C.D. Cal. 2007) (allegations of a "general fraudulent scheme" did not satisfy Rule 9(b) (citation omitted)); *Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631 (N.D. Cal. 1997) (general allegations of fraudulent practices were insufficient under Rule 9(b) without specific examples).

[13] *See also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (affirming Rule 9(b) dismissal where the complaint did "not specify which plaintiff received which prospectus, or which plaintiff(s) made purchases through the stockbroker defendants"); *Centaur Classic*, 878 F. Supp. 2d at 1020 (holding Rule 9(b) requires pleading as to each plaintiff); *Barr*, 710 F. Supp. at 97 (same).

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

### A.   Mr. Sherwin Fails To Allege <u>Who</u> Is a Real Party

Although each of Mr. Sherwin's claims is deficient in other ways, discussed below, each also fails to allege the most fundamental information: whom Office Depot is alleged to have defrauded and what misrepresentations allegedly were made.

Rule 9(b) requires that the FAC state "the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (internal quotation marks omitted).  Yet Mr. Sherwin does not specify who all the purported Real Parties are.  Rather, in addition to several named entities, Mr. Sherwin purports to sue on behalf of "all other [unidentified] California political subdivisions and government entities who purchased supplies from Office Depot under the [L.A. County] contract."  FAC ¶ 12.  But not every California government entity was entitled to the pricing of the L.A. County Contracts.  *See supra* at 2–4.  Office Depot cannot defend the case without even knowing who is asserting claims, much less the factual basis for those claims.

Furthermore, missing from the FAC is any allegation of what alleged misrepresentation Office Depot made to <u>each</u> Real Party (presumably indicating that Office Depot would provide the pricing or other terms of the L.A. County Contracts to <u>that</u> Real Party).  Mr. Sherwin must identify the allegedly false representations to each Real Party so that Office Depot can defend against the specific charge and not just deny wrongdoing generally.  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The importance of requiring such allegations is demonstrated by the fact that at least two intervenors admit that they had their own separate contracts, distinct from the L.A. County Contracts that are the basis of Mr. Sherwin's claims.  *See* Santa Clara Compl. (Dkt. 31), Ex. 3; City of L.A. Compl. (Dkt. 32), Exs. 2–5.  Mr. Sherwin's vague pleading falls far short of the particularity required by Rule 9(b).

### B.   The Best Pricing Claim Is Not Sufficiently Particular

In addition to the deficiencies described above, the Best Pricing Claim also fails to allege other essential particulars.  Mr. Sherwin fails to allege the particulars of

any false statement to anyone regarding this claim—for example, there is no averment of any statement by Office Depot that it would apply the MFPE clause in the manner Mr. Sherwin now asserts was required—much less who made such a statement, to whom it was made, or when and where it was made.  Instead, Mr. Sherwin's allegations contain nothing in the way of particulars apart from "sales records" pertaining to the City of L.A., which, as noted above, had its own separate contracts with Office Depot.  City of L.A. Compl. (Dkt. 32), Ex. 5.  Even if such threadbare details would be sufficient under Rule 9(b) with respect to CFCA claims relating to the City of L.A. (and they are not), they are patently insufficient with respect to claims relating to the other Real Parties.

### C.    The Option 2 Claim Is Not Sufficiently Particular

Mr. Sherwin's Option 2 Claim also lacks necessary particulars.  Mr. Sherwin alleges that Office Depot "fraudulently encouraged or surreptitiously caused Real Parties to transfer from Option 1 pricing to Option 2 pricing."  FAC ¶ 42; *see also id.* ¶ 6, ¶¶ 68–80.  But Mr. Sherwin fails to allege which (if any) Real Parties adopted Option 2, much less which Real Parties allegedly were on Option 2 due to fraud and how that fraud allegedly was accomplished (i.e., who at Office Depot said what to whom, when and where, and how what was said was allegedly false).  All that he alleges is that Office Depot "instructed the account managers to tell their customers that Option 2 was a better deal, when in fact the opposite was true" and that "a significant number of California public entities, including numerous Real Parties, adopted Option 2 pricing after 2006."  *Id.* ¶¶ 72–73.  That type of highly generalized allegation, "which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude."  *Cafasso*, 637 F.3d at 1057.

### D.    The GP Floor Claim Is Not Sufficiently Particular

Mr. Sherwin likewise fails to allege with particularity his claim that Office Depot "misrepresented" its costs, resulting in artificially high floor prices for

certain—unspecified—products.   The FAC does not allege any particular instances of cost inflation that impacted any particular purchases by Real Parties (i.e., no who, what, when, or where).  Instead, the FAC contains only hypothetical examples, *e.g.*, FAC ¶¶ 85, 90, and vague and conclusory allegations—made on information and belief—that "[s]uch manipulations increased Real Parties' costs substantially."  FAC ¶ 87.  Such allegations fail under Rule 9(b).

### E.    The List Price Changes Claim Is Not Sufficiently Particular

Mr. Sherwin claims that Office Depot "increased the prices it charged to [L.A. County] contract customers more than twice a year," allegedly in violation of the L.A. County Contracts.  FAC ¶ 94; *see also id.* ¶¶ 8, 42, 93–98.  But, as with his other allegations, Mr. Sherwin fails to identify any particulars of the alleged fraud, and does not even plead a single instance where this alleged practice resulted in a false claim for payment submitted to any Real Party.  These allegations also fail to satisfy Rule 9(b).

### F.    The Core List Manipulation Claim Is Not Sufficiently Particular

Finally, Mr. Sherwin alleges that Office Depot intentionally discontinued certain unspecified "core" products as a means of achieving more favorable pricing.  *See* FAC ¶¶ 9, 42, 99–100.  But Mr. Sherwin has not alleged the who, what, when, or where of any alleged misrepresentation to any Real Party regarding that alleged practice (nor that the prices of the substituted products were, in fact, higher than those of the "discontinued" products).  These allegations likewise fail under Rule 9(b).

## IV.   The Court Should Dismiss the FAC with Prejudice

The Court should dismiss the FAC in its entirety, with prejudice.  *Res judicata* irremediably bars Mr. Sherwin's action.  Even absent that bar, Mr. Sherwin has had ample opportunity to plead his claims.  The Ninth Circuit has recognized on multiple occasions that a complaint can be dismissed with prejudice "where plaintiffs have failed to plead properly after 'repeated opportunities.'"  *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.

24

1993)).  Because Mr. Sherwin is required to be the original source for his allegations, no amount of further investigation or repleading could remedy the defects of the FAC.  Moreover, Mr. Sherwin has had <u>almost four years</u> since he filed his original complaint to investigate and refine his allegations—indeed, he amended them last year without remedying their defects.  If Mr. Sherwin had any further changes he wished to make, he had yet another chance to do so, as (per a stipulation with Office Depot) the Court granted him leave to amend again after Office Depot removed the action to federal court.  *See* Dkt. No. 16, ¶ 2 (11/26/2012) ("Plaintiffs shall have seven days from the date of the order finally deciding the motion for remand in which to file amended complaints.").  Mr. Sherwin declined to further amend.

At this point, nearly four years after first filing his complaint, Mr. Sherwin has no excuse for failing to plead the necessary elements of a CFCA claim or for falling so woefully short of the required particularity, especially as a purported insider who claims to have firsthand knowledge of these claims.  There is no justification for further leave to amend, and the FAC should be dismissed with prejudice.

1    Dated:  February 8, 2013                    By:  /s/ Paul T. Hourihan

2                                                WILLIAMS & CONNOLLY LLP
                                                 Daniel F. Katz (*pro hac vice*)
3                                                Paul T. Hourihan (*pro hac vice*)
                                                 Beth A. Levene (*pro hac vice*)
4                                                William P. Ashworth (*pro hac vice*)

5                                                725 Twelfth Street, N.W.
                                                 Washington, DC 20005
6                                                Telephone: (202) 434-5000
                                                 Facsimile: (202) 434-5029
7                                                E-mail:  dkatz@wc.com
                                                          phourihan@wc.com
8                                                          blevene@wc.com
                                                          washworth@wc.com
9

10                                               BIRD, MARELLA, BOXER, WOLPERT,
                                                 NESSIM, DROOKS & LINCENBERG, P.C.
11                                               Gary S. Lincenberg (SBN 123058)
                                                 Peter J. Shakow (SBN 198633)
12
                                                 1875 Century Park East, 23rd Floor
13                                               Los Angeles, California 90067
                                                 Telephone:(310) 201-2100
14                                               Facsimile: (310) 201-2110
                                                 E-mail: gsl@birdmarella.com
15                                                       pjs@birdmarella.com

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on February 8, 2013, I caused to be filed the foregoing document entitled DEFENDANT OFFICE DEPOT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DAVID SHERWIN'S CORRECTED FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) electronically through the CM/ECF system, which caused parties or counsel of record in this matter to be served by electronic means.

By: /s/ Juli Ann Lund
        Juli Ann Lund

        Williams & Connolly LLP