1   BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.
2   Gary S. Lincenberg (SBN 123058)
    John K. Rubiner (SBN 155208)
3   Nilay U. Vora (SBN 268339)
    1875 Century Park East, 23rd Floor
4   Los Angeles, CA 90067
    Telephone: (310) 201-2100
5   Facsimile: (310) 201-2110
    E-mail: gsl@birdmarella.com
6           jkr@birdmarella.com
            nuv@birdmarella.com
7
    WILLIAMS & CONNOLLY LLP
8   Daniel F. Katz (*pro hac vice*)
    Paul T. Hourihan (*pro hac vice*)
9   Beth A. Levene (*pro hac vice*)
    William P. Ashworth (*pro hac vice*)
10  Juli Ann Lund (*pro hac vice*)
    725 Twelfth Street, N.W.
11  Washington, DC 20005
    Telephone: (202) 434-5000
12  Facsimile: (202) 434-5029
    E-mail: dkatz@wc.com
13          phourihan@wc.com
            blevene@wc.com
14          washworth@wc.com
            jlund@wc.com

15  *Attorneys for Defendant Office Depot, Inc.*

16

17              UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19                    WESTERN DIVISION

20  State of California, et al., *ex rel.* David    Case No.: 2:12-cv-09952-FMO-AJW
    Sherwin,                                        Hon. Fernando M. Olguin
21
                        Plaintiff,
22                                                  **DEFENDANT'S OPPOSITION TO**
                                                    **PLAINTIFFS' MOTION FOR**
23          v.                                      **PHASING [Dkt. No. 145]**

24  Office Depot, Inc.,
                                                    Hearing Date Vacated  [Dkt. No. 181]
25                      Defendant.

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

ARGUMENT .......................................................................................................4

I.      Plaintiffs' Phasing Motion Is Premature. .............................................4

II.     Plaintiffs Do Not, and Cannot, Satisfy Their Burden of Proof as to
        the Phasing Plan They Propose. ............................................................6

        A.      Plaintiffs' Proposed Phase I Trial Will Not Achieve Any
                Efficiencies.................................................................................6

                1.      Plaintiffs' Trial Plan Will Not Provide Representative
                        Verdicts.............................................................................7

                2.      Plaintiffs' Trial Plan Will Not Provide Binding
                        Verdicts...........................................................................10

        B.      Plaintiffs' Proposed "Phase I" Trial Violates Office Depot's
                (and the Real Parties') Constitutional Rights. ....................12

                1.      Plaintiffs' Plan To Extrapolate Proof of Liability from
                        a Handful of Individual Claims Violates Due Process.............14

                2.      Plaintiff's Plan To Deprive Office Depot of Its Right
                        To Defend Itself as to All Real Parties Violates Due
                        Process. .........................................................................15

                        a.      Plaintiffs' Plan To Phase Discovery Is Neither
                                Practical Nor Constitutional. ...........................15

                        b.      Plaintiffs' Plan To Limit Evidence at Trial Does
                                Not Pass Constitutional Muster.......................20

III.    If Phasing Becomes Necessary, Traditional Issue-Based Bifurcation
        To Resolve Common Issues Is the Best Means To Promote
        Efficiency and Prevent Prejudice. ......................................................21

CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998) ................................ 2

*Clark v. IRS*, 772 F. Supp. 2d 1265 (D. Haw. 2009) ............................................ 6, 22

*Coleman v. Cal. Bd. of Prison Terms*, 228 F. App'x 673 (9th Cir. 2007) ............. 11

*Gomez v. City of Torrance*, 438 F. App'x 626 (9th Cir. 2011) .............................. 22

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996)....................................... 14

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997) ....................... 13, 14, 23

*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993 (9th Cir. 2001)..................... 2, 22

*McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298 (5th Cir. 1993)........................... 7

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ........................................... 11

*Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991 (D. Ariz. 2012) ........ 11

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99 (N.D. Cal.
    1992) ............................................................................................................... 6

*Stone v. Advance America*, 278 F.R.D. 562 (S.D. Cal. 2011)................................ 15

*Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2007) .................................... 11, 12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541(2011)................................... 14, 15

*Waste Mgmt. v. City of Dayton*, No. C-3-91-081, 2004 WL 5345273 (S.D.
    Ohio Sept. 20, 2004).................................................................................... 10

## STATE CASES

*Brown v. Mid-Century Ins. Co.*, 215 Cal App. 4th 841 (2013) ................................ 5

*Duran v. U.S. Bank N.A.*, 203 Cal. App. 4th 212 (2012) ........................ 2, 20, 21, 23

**STATE STATUTES**

Cal. Gov't Code § 12652(d)(3).................................................................................4

Cal. Gov't Code § 12654(c)......................................................................................21

**OTHER AUTHORITIES**

*Manual for Complex Litigation* § 22.315 (4th ed. 2004) ........................................8

4 James W. Moore et al., *Moore's Federal Practice* § 21.06[1], at 21-29 (3d
    ed. 2013) ..........................................................................................................10

Restatement (Second) Judgments § 29 cmt.............................................................12

Having pled a case that is massive in scope, and having forced Office Depot to defend the exceptionally broad case they pled, Plaintiffs now want to try a very different case—one in which they get to cherry-pick their six "best" plaintiffs from among the more than 1,000 Real Parties that Mr. Sherwin purports to represent.  But Plaintiffs' attempt to lighten their burden of proving their claims is not only unfair, it is inefficient as a matter of practice and flawed as a matter of law.

As an initial matter, Plaintiffs' motion is not ripe:  threshold, dispositive issues, including Office Depot's pending Rule 12(b)(6) motion,[1] could very well obviate any need for the Court to address the thorny issues of procedural and substantive due process implicated by Plaintiffs' motion.  Indeed, Plaintiffs acknowledge that many of the purportedly "common" issues they identify are pure questions of law that will be resolved by the Court, not a jury.  *See* Pls.' Mem. at 8-9 (identifying "key legal issues" to be resolved); *id.* at 10 (noting "innumerable additional disagreements about purely legal issues" to be resolved by the Court).  In fact, the central dispute between the parties—the proper interpretation of the contracts at issue in this action—is a question for the Court that, once answered, could eliminate the need for any trial.

But most importantly, Plaintiffs' motion will not create the efficiency that is purportedly its sole purpose.  To the contrary, Plaintiffs' plan to put forward their six "best" plaintiffs for trial (their "aces," according to Plaintiffs' counsel, *see* Dkt. No. 145-1 at 49:23-50:5) would result in a complex, confusing, and resource-consuming "Phase I" trial that would be of little use in valuing other Plaintiffs' claims, thus necessitating many subsequent trial "phases."  Furthermore, the basis

---

[1] Office Depot's Rule 12(b)(6) motion seeks dismissal of Relator David Sherwin's Complaint on the ground of *res judicata*.  *See* Dkt. No. 92.  If granted, only the claims of the Intervenors would remain in this case.  The Court previously postponed resolution of the motion pending its determination of federal jurisdiction under CAFA; the Court has now resolved jurisdiction and Office Depot has requested a hearing date on its Rule 12(b)(6) motion.  *See* Dkt. No. 182.

1  for Plaintiffs' claim that their plan would be more efficient—their intent to impose

2  the results of the "Phase I" trial on all other claims—is precisely the form of trial

3  management that federal courts have rejected as violative of fundamental due

4  process.  *See, e.g.*, *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 318 (5th Cir.

5  1998).  In that regard, Plaintiffs' reliance on a 13-year-old trial plan from the

6  *Armenta* state trial court to bless their misguided approach is misplaced—first,

7  because this proceeding is in federal court; and second, because more recent

8  developments in California law demonstrate that the *Armenta* model cannot be

9  relied on as even persuasive precedent.  Indeed, in a decision issued just last year, a

10  California appellate court flatly rejected as unconstitutional the type of phasing

11  proposed by Plaintiffs here.  *See Duran v. U.S. Bank N.A.*, 203 Cal. App. 4th 212,

12  248 (2012) ("[T]he rights of the parties may not be sacrificed for the sake of

13  expediency.").  Precedent dictates that the result of a trial of a handful of Real

14  Parties is not, and cannot be, binding as to the claims of the remaining non-

15  intervening Real Parties and Intervenors.  Accordingly, the only certain result of

16  Plaintiffs' proposed "phasing" is more "phases," delaying resolution of the claims of

17  all parties except the six hand-selected by Plaintiffs' counsel.

18       As an alternative to Plaintiffs' six-headed "Phase I" trial, Office Depot

19  proposes that dispositive legal issues be addressed first, before determining a trial

20  management plan.  If, after resolution of such issues, some "phasing" is necessary,

21  then Office Depot submits that the appropriate form is the traditional issue-based

22  bifurcation approved by the Ninth Circuit.  *See, e.g.*, *Jinro Am. Inc. v. Secure Invs.,*

23  *Inc.*, 266 F.3d 993, 998 (9th Cir. 2001) ("Under Rule 42(b), the district court has

24  broad discretion to bifurcate a trial to permit deferral of costly and possibly

25  unnecessary proceedings pending resolution of potentially dispositive preliminary

26  issues." (internal quotation marks omitted)).  A two-stage process in which general

27  issues are resolved first, with plaintiff-specific issues resolved later, has long been

28

endorsed as an efficient trial management method and could properly be used here to streamline the trial process for the parties, the jury, and the Court. Moreover, bifurcation to resolve threshold issues common to all parties, rather than trying such issues as to a handful of parties and then attempting to extrapolate those results to wave after wave of different plaintiffs, ensures that the trial plan will be binding on all parties without violating the Constitution.

In this case, a number of threshold questions are presented that, if not resolved as a matter of law, can be resolved for all Real Parties through common proof presented in a focused initial trial—just as the issue of general causation is often bifurcated in a mass tort action. These issues include:

- Whether Mr. Sherwin is barred by *res judicata* from bringing claims on behalf of all non-intervening Real Parties;
- Whether Mr. Sherwin is barred from serving as a relator because he is not an "original source" under the CFCA;
- Whether the Real Parties can enforce the specified terms of the Master Agreements between Office Depot and L.A. County and, if so, how compliance with those terms was to be determined;
- Whether the Real Parties can enforce the specified terms of the Administration Agreement between Office Depot and U.S. Communities and, if so, how compliance with those terms was to be determined;
- Whether Office Depot's practices violated any of the contract terms at issue;
- Whether the contract terms at issue were sufficiently clear and precise to establish objective falsity under the CFCA; and
- Whether Office Depot acted with the scienter required under the CFCA.

Unlike Plaintiffs' proposed multi-plaintiff "Phase I" trial, the trial of general, threshold issues for all Real Parties will involve discrete facts and a limited number

1   of parties and witnesses.  Once such issues are resolved—whether by the Court
2   through a dispositive motion or by the jury at a bifurcated trial—all parties will be in
3   a better position to evaluate the strengths and weaknesses of their arguments and
4   evidence.  Moreover, resolving these preliminary issues first would ensure that the
5   non-intervening Real Parties could make an informed decision whether to present
6   individualized proof of liability and damages based on an evaluation of that
7   resolution and the facts relevant to their specific circumstances.

8                                **ARGUMENT**

9   **I.      Plaintiffs' Phasing Motion Is Premature.**

10          The non-intervening Real Parties are in this action only through Relator
11  David Sherwin.  If he were to be dismissed as an improper relator, as Office Depot
12  has argued he should be, the non-intervening Real Parties would no longer be parties
13  to this action.  Thus, the first step in an efficient trial management plan would be
14  simply to do what the Court's Scheduling Order already contemplates:  resolve
15  issues that can be decided as a matter of law prior to trial.  *See* Dkt. No. 87 at 16-17.
16  Office Depot has presented two such dispositive issues as to Mr. Sherwin, either of
17  which, if granted, would eliminate from this action the claims of all parties except
18  the Intervenors.

19          The first such issue—whether Mr. Sherwin's claims are barred by *res
20  judicata*—is addressed in Office Depot's Rule 12(b)(6) motion, which is fully
21  briefed and ready for hearing and resolution.  *See supra* p. 1 note 1.  The second
22  such issue—whether Mr. Sherwin is jurisdictionally barred from proceeding as a
23  relator because he does not qualify as the "original source" of the information
24  underlying his claims, *see* Cal. Gov't Code § 12652(d)(3)—will be raised in a
25  summary judgment motion pursuant to the Court's Order.  *See* Dkt. No. 82.
26  Notably, the uncertain status of Mr. Sherwin—and through him, the claims of the
27  non-intervening Real Parties he purports to represent—is an obvious hurdle to the

28

1    parties' valuation of the case.  The Court's determination of Mr. Sherwin's status

2    could, therefore, clear the way for resolution of this matter without a trial.

3    Moreover, reduction of the number of claimants in this case from more than 1,000

4    purported Real Parties to 19 Intervenors would dramatically affect how to approach

5    trial management issues.

6         In addition to dispositive issues that could dramatically reduce the <u>number</u> of

7    claims to be presented at trial, there are several dispositive issues that could have a

8    similarly dramatic impact on the <u>scope</u> of such claims.  For example, the CFCA

9    claims of the Intervenors and Real Parties hinge on questions of contract

10   interpretation, which are, in the first instance, questions of law for the Court to

11   resolve.  *See, e.g.*, *Brown v. Mid-Century Ins. Co.*, 215 Cal App. 4th 841, 851 (2013)

12   (reciting settled rule that interpretation of a contract "is a question of law" that

13   requires the court "to look first to the language of the contract in order to ascertain

14   its plain meaning" (internal quotation marks omitted)).  A ruling on the proper

15   interpretation of the contract provisions at issue here could significantly narrow, if

16   not eliminate, many of Plaintiffs' claims.  Notably, Plaintiffs agree that many of the

17   issues they have identified as "common" are, in fact, questions of law, *see* Pls.'

18   Mem. at 8-9, 10—and therefore amenable to resolution by this Court at the

19   summary judgment stage.

20        The resolution of dispositive legal issues, such as those identified above, has

21   the potential to markedly alter the landscape of this case and to eliminate many of

22   the trial management problems that Plaintiffs contend justify their proposal.  The

23   issues and parties in the case after dispositive motions practice may be very different

24   from what they are today.  Accordingly, any trial plan constructed now likely would

25   have to be reworked later.  Judicial economy counsels that rather than unnecessarily

26   expending time and resources developing a trial plan at this juncture, it is in the best

27   interests of the parties and the Court to wait until the claims going to trial are fixed,

28

1    and to create a trial plan based upon them.

2    **II.    Plaintiffs Do Not, and Cannot, Satisfy Their Burden of Proof as to the**

3    **Phasing Plan They Propose.**

4         It is axiomatic that trial bifurcation or phasing is the exception, not the rule.

5    *See Clark v. IRS*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009).  "'With respect to

6    both discovery and trial,' the moving party has the 'burden of proving that the

7    bifurcation will [1] promote judicial economy and [2] avoid inconvenience or

8    prejudice to the parties.'"  *Id.* (quoting *Spectra-Physics Lasers, Inc. v. Uniphase

9    Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992)).  Plaintiffs' motion fails on both

10   counts.

11        **A.    Plaintiffs' Proposed Phase I Trial Will Not Achieve Any**

12        **Efficiencies.**

13        Plaintiffs utterly fail to show that their proposal would result in a more

14   efficient resolution of the claims of the purported Real Parties currently at issue in

15   this action.  The purported Real Parties fall into two distinct groups:  the Intervenors

16   and the non-intervening Real Parties.  The two groups assert different claims, must

17   present different proof, and are subject to different treatment.  Unlike the non-

18   intervening Real Parties, who present only CFCA claims, the Intervenors have pled

19   common-law fraud and breach of contract claims in addition to CFCA claims.

20   Those common-law claims have different elements, and require different proof, than

21   the statutory CFCA claims.

22        Moreover, Plaintiffs' assertion notwithstanding, collateral estoppel cannot

23   provide the efficiency missing from Plaintiffs' trial plan.  The Intervenors <u>will not</u>

24   be bound by the outcome of any trial in which they do not participate—even as to

25   the CFCA claims they share in common with the Real Parties.  *See* Pls.' Mem. at

26   12.[2]  Similarly, the non-intervening Real Parties will be bound only to the extent

27   ────────────────

28   [2] This lack of any binding effect on the Intervenors that do not participate in
     Plaintiffs' proposed "Phase I" trial creates the potential for a Seventh Amendment

their claims are actually presented by Mr. Sherwin at trial, *see infra* pp. 10-11, but Plaintiffs' plan expressly disavows any intention of trying the claims of any non-intervening Real Parties beyond the one or two selected as the "best."[3]  The only way to bind <u>all</u> Real Parties is through an adjudication that involves <u>all</u> Real Parties.  That, however, is not what Plaintiffs have proposed.  They want to hold a first trial involving a select group of only six Real Parties, an admittedly arbitrary number, *see* Dkt. No. 145-1 at 8:13-14, whose trials would in no way be representative of, much less binding upon, any of the 1,000 or more Real Parties, as discussed below.

### 1.     Plaintiffs' Trial Plan Will Not Provide Representative Verdicts.

Although the use of test cases can be a helpful case management tool, Plaintiffs' biased plan would eliminate any value of the "Phase I" trial as a predictive device.  Such a plan is contrary to the clear recommendation of the Manual for Complex Litigation, which explains:

---

violation.  Bifurcation may not be ordered unless "the issue to be tried [is] so distinct and separate from the others that a trial of it alone may be had without injustice"; the reason for that limitation "is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the <u>general right of a litigant to have only one jury pass on a common issue of fact</u>." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (citations omitted).  If, as Plaintiffs contend, the factual issues they identify are truly common, forcing Office Depot to litigate them repeatedly in subsequent trials of the claims of the other Intervenors would violate the Seventh Amendment.  Even under Plaintiffs' view of collateral estoppel, this is a very real risk, as Plaintiffs make clear that only decisions favorable to them will be binding on the non-participating Intervenors; Office Depot will be forced to re-litigate any decision favorable to it obtained in the "Phase I" trial as to each of the 14 or more non-participating Intervenors.  The only way to ensure that a single jury adjudicates common issues of fact as to all Real Parties is to ensure that all Real Parties participate in a trial of common issues, as Office Depot proposes below. *See infra* pp. 21-24.

[3] As Plaintiffs' counsel explained when the parties met and conferred, with regard to the non-intervening Real Parties whose claims are not selected by Plaintiffs for trial, "<u>Their claims [are] not being tried</u> in the sense that we will not say, 'Here's evidence of the claims that were submitted against ABC Unified School District,' if I can use them as an example.  If they are not part of Phase I, <u>we will not put in evidence</u> about ABC Unified School District.  We will not ask the question, 'Was ABC Unified a participant in the contract or not?'  <u>We will not call witnesses</u> from ABC Unified.  <u>Their claims are not at issue in the sense that they are not going to be tried in the plenary fashion</u>." Dkt. No. 145-1 at 21:20-22:11 (emphases added).

If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other . . . cases, <u>the specific plaintiffs and their claims should be representative of the range of cases</u>. . . . Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis.  <u>The more representative the test cases, the more reliable the information about similar cases will be</u>.

*Manual for Complex Litigation* § 22.315 (4th ed. 2004) (emphases added).  Here, Plaintiffs disavow any representative value to their chosen test cases, affirmatively asserting that, rather than being representative, Plaintiffs intend to choose the largest, most committed, and best funded entities—their "aces"—for trial.  *See* Pls.' Mem. at 6-7; Dkt. No. 145-1 at 49:23-50:5.

Further ensuring that the results of Plaintiffs' "Phase I" trial will be given little weight by the losing party is Plaintiffs' decision that two of the six Real Parties at trial will be the City of Los Angeles and Santa Clara County.  The claims of those two Intervenors present unique issues because <u>each had its own contract(s) with Office Depot</u>, separate from the Master Agreements on which Mr. Sherwin and the other Intervenors bring suit.  Indeed, Plaintiffs conceded during the parties' meet-and-confer session that their "Phase I" trial will involve a host of issues that are not, in fact, common.  *See* Dkt. No. 145-1 at 16:13-18 ("Some of these are common to everybody and some are common to a subset and some are not [common], but the point is that all of the issues that I am talking about will be raised and tried."); *see also* Pls.' Mem. at 6 (noting "unique defenses" with regard to City of Los Angeles

1   and Santa Clara County).[4]

2       The selection of the City of Los Angeles and Santa Clara County as purported

3   bellwethers underscores another fundamental problem with Plaintiffs' proposed trial

4   plan:  the likelihood of jury confusion.  Each Intervenor has at least three claims:  a

5   CFCA claim, a fraud claim, and a breach of contract claim.  In addition, as noted

6   above, the City of Los Angeles and Santa Clara County had their own contracts with

7   Office Depot; as a result, there are unique legal and evidentiary issues related to the

8   alleged breaches of those contracts.  Santa Clara County also has an additional

9   CFCA claim, under Section 12651(a)(8), that no other Intervenor or Real Party has,

10   which itself will require entirely separate proof, including distinct proof of scienter.

11   Thus, the jury would have to hear, weigh, and resolve—as to multiple distinct

12   claims—potentially conflicting testimony from representatives of six plaintiffs, two

13   third parties (L.A. County and U.S. Communities), and Office Depot, pertaining to

14   several different contracts with different terms and different parties.  The jury will

15   then need to segregate the various issues raised, and the evidence on those issues, in

16   order to resolve the 13 CFCA claims[5] and 10 common-law claims—including fraud

17   claims that will require individualized proof of fraud and reliance— presented by

18   the six plaintiffs, with the issues pertaining to Mr. Sherwin's viability as a relator

---

19   [4] In fact, many of the supposedly "common" issues identified by Plaintiffs will
20   require individualized proof by each Real Party.  For example, under Plaintiffs'
     (incorrect) theory of the case, Plaintiffs <u>cannot</u> show through common proof that
21   Office Depot "entered into other lower-priced government contracts in violation of
     its best-price obligations," Pls.' Mem. at 2, because—according to Plaintiffs—those
22   obligations must be individually measured against the unique buying patterns of
     each one of the more than 1,000 Real Parties.

23   [5] The Intervenors and non-intervening Real Parties, through Mr. Sherwin, each
24   allege two separate violations of the CFCA, Section 12651(a)(1) and Section
     12651(a)(2).  In addition, as noted above, Santa Clara County alleges a third
25   statutory violation, of Section 12651(a)(8).  While all statutory sections require
     proof of a false claim, (a)(1) violations require proof that the defendant knew the
26   claim was false when made, (a)(2) violations require proof of a false statement
     related to the false claim that was "material" (as defined by the statute), and (a)(8)
27   violations require proof that a defendant inadvertently submitted a false claim and
     then subsequently discovered its falsity but did not disclose it to the government
28   agency.  Thus, the elements and proof of each claim are distinct.

1  overlaid on the entire morass.[6]  Not surprisingly, Plaintiffs' motion never explains

2  precisely how such a sprawling and unwieldy trial of disparate issues would result in

3  any efficiencies, nor how its outcome, given all the plaintiff-specific legal and

4  factual permutations, would provide any effective guidance to the parties for future

5  trials or settlement discussions.

6         **2.**     **Plaintiffs' Trial Plan Will Not Provide Binding Verdicts.**

7       The foundation of Plaintiffs' efficiency argument is the assertion that

8  "[f]actual issues resolved in Plaintiffs' favor in the first phase of the case will be

9  binding on Office Depot in any subsequent phase under the doctrines of *res judicata*

10  and *collateral estoppel*."  Pls.' Mem. at 11.  That assertion is simply wrong.  Even

11  assuming those doctrines could apply to trials held in a single action,[7] precedent

12  precludes the application of non-mutual collateral estoppel to bind either the non-

13  participating governmental entities or Office Depot to the results of a "Phase I" trial

14  of a handful of cherry-picked Plaintiffs.[8]

15       As Plaintiffs acknowledge, the results from their proposed "Phase I" trial

16

17  _____

   [6] Plaintiffs' suggestion that the Court may cure the problems inherent in their plan

18  by "allow[ing] Defendants [sic] to choose some of the first-phase Real Parties," Pls.' Mem. at 7, would only add to the jumble of claims and aggravate the inefficiencies

19  in Plaintiffs' plan.

20     [7] *See, e.g., Waste Mgmt. v. City of Dayton*, No. C-3-91-081, 2004 WL 5345273, at *4 (S.D. Ohio Sept. 20, 2004), *aff'd*, 169 F. App'x 976 (6th Cir. 2006) ("[C]ourts

21  have held that the doctrine of law of the case, rather than *res judicata* or collateral estoppel, must be applied to determine whether a party is precluded from relitigating

22  an issue that has been previously decided in the <u>same</u> lawsuit, as opposed to an earlier lawsuit."); *see generally* 4 James W. Moore et al., *Moore's Federal Practice*

23  § 21.06[1], at 21-29 (3d ed. 2013) ("[A]n order of separate trials does not result in the filing of separate cases.  Instead, it simply leads to two or more separate factual

24  inquiries in the context of a single, properly joined case.  No matter how many separate trials the court may order, they remain part of a single case.").

25     [8] Thus, unlike the prior Florida judgment at issue in Office Depot's Rule 12(b)(6) motion, any judgment issued following Plaintiffs' proposed "Phase I" trial would be

26  a judgment in the <u>same</u> action, and so not a basis for application of *res judicata* or collateral estoppel.  And even if those doctrines were to apply here, only Mr.

27  Sherwin—not the Real Parties he purports to represent—would be bound by Plaintiffs' proposed "Phase I" trial because the bar against offensive non-mutual

28  collateral estoppel applies only to government entities, not to private parties.

1  would not bind the non-participating Intervenors.  Pls.' Mem. at 12 ("[T]here is no
2  legal doctrine that would make adverse results in the first-phase trial binding upon
3  non-participating Intervenors.").  The same is true for non-participating Real Parties,
4  because the well-established rule is that offensive non-mutual collateral estoppel
5  cannot be used against a governmental entity.  *See, e.g.*, *Coleman v. Cal. Bd. of*
6  *Prison Terms*, 228 F. App'x 673, 675 (9th Cir. 2007) ("However, this potential for
7  collateral estoppel is illusory because the Supreme Court unanimously rejected the
8  application of offensive nonmutual collateral estoppel against the government.").

9       Nor can the non-participating Intervenors, or the other Real Parties, bind
10  Office Depot to the results of Plaintiffs' proposed "Phase I" trial.  Because of the
11  inherent risk of unfairness in its use, the Supreme Court has expressly limited the
12  circumstances in which offensive non-mutual collateral estoppel as to private parties
13  is permitted.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645,
14  651, 58 L. Ed. 2d 552 (1979); *see also Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F.
15  Supp. 2d 991, 995 (D. Ariz. 2012) ("Courts have recognized that where offensive
16  nonmutual issue preclusion is being urged, 'fairness gains special importance,' and
17  applicability of the doctrine in any given case is 'detailed, difficult, and potentially
18  dangerous.'" (citation omitted)).  Those exceptional circumstances do not include
19  situations where plaintiffs have, for strategic reasons, picked some cases for trial and
20  not others:

21       The general rule should be that <u>in cases where a plaintiff could easily</u>
22       <u>have joined in the earlier action</u> or where, either for the reasons
23       discussed above or for other reasons, the application of offensive
24       estoppel would be unfair to a defendant, <u>a trial judge should not</u>
25       <u>allow the use of offensive collateral estoppel</u>.

26  *Parklane Hosiery Co.*, 439 U.S. at 331 (emphases added); *see also Syverson v. IBM*
27  *Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (holding "indices of unfairness" include

28

1  whether "the plaintiff had the incentive to adopt a 'wait and see' attitude in the hope

2  that the first action by another plaintiff would result in a favorable judgment which

3  might then be used against the losing defendant" (citation omitted)).

4          Accordingly, courts will not apply offensive non-mutual collateral estoppel

5  when the party invoking the doctrine "withdrew from an action to which he had

6  been a party."  Restatement (Second) Judgments § 29 cmt. *e* (1982).  That would be

7  precisely the situation under Plaintiffs' proposal:  Plaintiffs—including all

8  Intervenors and, through Mr. Sherwin, all Real Parties—pled this case as a single,

9  unitary action; they cannot now opt-out of trial *en masse* and then seek to use the

10  results of that trial (if they are favorable) against Office Depot.  The established

11  principles set forth above exist precisely to prevent such fundamentally unfair

12  gamesmanship.

13          Moreover, the Ninth Circuit has made it clear that "offensive nonmutual issue

14  preclusion is appropriate <u>only</u>" where "there was a full and fair opportunity to

15  litigate the identical issue in the prior action."  *Syverson*, 472 F.3d at 1078

16  (emphasis added).   As discussed below, because, as a matter of due process, Office

17  Depot is entitled to present individual evidence in defense of the claims of each Real

18  Party, any effort to impose the results of Plaintiffs' proposed trial of select claims on

19  Office Depot as to all Real Parties' claims would fail both the "full and fair

20  opportunity" and "identical issue" requirements.[9]

21          **B.      Plaintiffs' Proposed "Phase I" Trial Violates Office Depot's (and**

22                    **the Real Parties') Constitutional Rights.**

23          Plaintiffs' proposal, which is unabashedly designed to permit Plaintiffs to

24

25  [9] The Ninth Circuit has expressly criticized the strategy behind Plaintiffs' proposal:
    "[A]llowing plaintiffs to cherry-pick favorable prior decisions to preclude issues in
26  an ongoing or subsequent litigation raises serious fairness concerns."  *Syverson*, 472
    F.3d at 1080.  Allowing Plaintiffs to cherry-pick favorable claims, in an effort to
27  generate favorable "prior decisions," clearly presents the same "serious fairness
    concerns."
28

present their strongest case while preventing Office Depot from fully defending itself, is the very definition of prejudicial.  This violation of fundamental fairness raises a bar of constitutional magnitude to Plaintiffs' proposal.  As the Fifth Circuit observed in the seminal *Chevron* case:

> We recognize that in appropriate cases common issues impacting upon general liability or causation may be tried standing alone. However, when such a common issue trial is presented through or along with selected individuals' cases, concerns arise that are founded upon considerations of due process.

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997) (emphasis added). As the court in *Chevron* made clear, such a trial implicates both procedural and substantive due process.  *Id.* at 1020-21 ("Such a procedure is inherently unfair when the substantive rights of both plaintiffs and the defendant are resolved in a manner that lacks the requisite level of confidence in the reliability of its result."). Precisely because of the due process concerns created by the trial plan at issue there, the Fifth Circuit issued a writ of mandamus precluding the trial court from "utilization of the results of such trial for the purpose of issue or claim preclusion." *Id.* at 1017.

The very same due process issues that animated the decision in *Chevron* are present here, as the Fifth Circuit's description of the trial plan in that case shows:

> [O]ne thing is clear.  It is not a bellwether trial.  It is simply a trial of fifteen (15) of the "best" and fifteen of the "worst" cases contained in the universe of claims involved in this litigation.  There is no pretense that the thirty (30) cases selected are representative of the 3,000 member group of plaintiffs.

*Id.* at 1019 (emphases added).

### 1.    Plaintiffs' Plan To Extrapolate Proof of Liability from a Handful of Individual Claims Violates Due Process.

Although the majority of the *Chevron* court suggested that statistical methods might be able to adequately address the court's due process concerns, Judge Jones, in a prescient concurrence, noted her "serious doubts about the major premise of Judge Parker's opinion, *i.e.*, his confidence that a bellwether trial of representative cases is permissible to extrapolate findings relevant to and somehow preclusive upon a larger group of cases." *Id.* at 1021 (Jones, J., specially concurring).  As she explained,

> Essential to due process for litigants, including both the plaintiffs and Chevron in this non-class action context, is their right to the opportunity for an individual assessment of liability and damages in each case.   Nowhere did the district court explain how it was authorized to make the results of this bellwether trial <u>unitary</u> for any purposes concerning the 2,970 other plaintiffs' cases pending before him.

*Id.* at 1023.  Judge Rymer expressed similar concerns in her dissent in *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996), noting that, "[e]ven in the context of a class action, individual causation and individual damages must still be proved individually." 103 F.3d at 788.[10]  The Supreme Court has since confirmed the position articulated by Judge Jones and Judge Rymer, expressly disapproving the "novel project" of "Trial by Formula" and reiterating that a defendant has a due process right to individual proof of liability and damages.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561, 180 L. Ed. 2d 374, 400 (2011).[11]

---

[10] The Fifth Circuit expressly relied on *Hilao* in its discussion of statistical sampling in bellwether cases.  *See In re Chevron*, 109 F.3d at 1020.

[11] In *Dukes*, the Supreme Court reviewed a decision of the Ninth Circuit that, relying on the majority decision in *Hilao*, had approved certification of a Title VII class based on statistical evidence.  *See* 131 S. Ct. at 2550.  In rejecting the Ninth

In light of the Supreme Court's decision in *Dukes*, it is clear that statistical extrapolation cannot be used to establish liability as to parties that did not participate at trial.  Nor can there be any doubt that Plaintiffs' proposal, which makes no pretense of scientific validity in the selection of claims to be tried, but nonetheless contends the results of such a trial should extend to all other claims in this action, is barred by *Dukes*.  Instead, due process dictates that individualized issues of liability and damages must be proved individually.

### 2.   Plaintiff's Plan To Deprive Office Depot of Its Right To Defend Itself as to All Real Parties Violates Due Process.

Under settled law, substitute proof does not comport with due process.  Accordingly, the Real Parties are required to prove their claims individually, and Office Depot is entitled to prove any individual defenses to those claims.  *See Dukes*, 131 S. Ct. at 2561.  Office Depot's due process right to present individual defenses to the Real Parties' liability and damages claims presents an additional bar to Plaintiffs' proposed phasing plan.

### a.   Plaintiffs' Plan To Phase Discovery Is Neither Practical Nor Constitutional.

Plaintiffs propose to phase not simply trial, but also discovery.  While such phasing of discovery is unobjectionable in theory, in practice—at least as articulated by Plaintiffs—it represents an improper violation of Office Depot's due process rights.  The strategic goal of Plaintiffs' proposal is simple:  Plaintiffs want to place limits on Office Depot's discovery, and so its ability to defend itself, while placing

---

Circuit's approach, which the Supreme Court described as "Trial by Formula," the Supreme Court reaffirmed that due process guarantees defendants the right to present individual defenses to liability and damages, even in the context of a class action.  *See id.* at 2561.  Notably, although *Dukes* as a whole was not a unanimous opinion, the Court's due process discussion was joined by all members of the Court.  District courts within the Ninth Circuit have subsequently recognized that the Supreme Court's decision in *Dukes* amounts to a rejection of *Hilao*'s endorsement of statistics for proof of liability or damages.  *See, e.g., Stone v. Advance America*, 278 F.R.D. 562, 565 n.1 (S.D. Cal. 2011).

no limits on Office Depot's liability.  That is, Plaintiffs want to prevent Office

Depot from developing facts about the claims Plaintiffs view as weaker because

they want Office Depot's liability to be determined based solely on those claims

Plaintiffs consider "stronger."  But, as *Dukes* teaches, Office Depot cannot be

subject to liability for claims as to which it was not permitted to prove up its

defenses.

　　　　Due process concerns aside, this Court rejected Plaintiffs' discovery proposal

months ago, *compare* Dkt. No. 84, *with* Dkt. No. 87, and fact discovery is now

sufficiently advanced that adopting Plaintiffs' proposal at this late stage will

produce no efficiencies.  All 19 Intervenors have already provided responses to

document requests and interrogatories.  All 19 Intervenors have produced

documents and all but five have made substantial productions.  One of those five

(the City of Los Angeles) has been designated by Plaintiffs as a "Phase I" trial

participant and so will have to complete its production of documents regardless of

the case management plan adopted by the Court.  A third of the Intervenors have

been deposed and the remaining Intervenors' depositions, with limited exceptions,

have been scheduled.  Office Depot has already expended resources preparing for

those remaining depositions, as (presumably) have Plaintiffs.  Moreover, Office

Depot has already issued subpoenas to the vast majority of the more than 1,000 Real

Parties purportedly represented by Mr. Sherwin and received responses—in the

form of documents, declarations, or objections—from almost all of them.[12]

　　　　With regard to those subpoenas, Plaintiffs' broadside attack on Office Depot

for attempting to develop evidence regarding the claims that <u>Plaintiffs</u> pled is not

---

[12] Plaintiffs have not identified each of the six entities they would propose for a "Phase I" trial.  To the extent one or more of those entities is a non-intervening Real Party, Office Depot would obviously be entitled to conduct more detailed discovery—including additional subpoenas *duces tecum* as well as individual and organizational depositions pursuant to Rules 45 and 30(b)(6).  At this late stage, the need for such discovery risks further delaying the schedule, which has already been extended once.

1   only misplaced, but offensive.  Plaintiffs try to excoriate Office Depot for serving

2   subpoenas on "more than 800 resource-strapped local governmental entities," Pls.'

3   Mem. at 5 n.2, as though Office Depot undertook the considerable expense to do so

4   purely to harass these entities (despite the impact it had on Office Depot's

5   relationship with the entities, the vast majority of which are current Office Depot

6   customers).  Office Depot served the subpoenas on the purported Real Parties only

7   after Mr. Sherwin made it clear that, although he purports to represent each of them,

8   and although he seeks hundreds of thousands (and, in some cases, tens of millions)

9   of dollars in their name, he has <u>no</u> specific evidence as to his claims on behalf of any

10  of them—and he would not undertake to respond to any discovery regarding

11  documents or information in possession of the Real Parties.  It is only because Mr.

12  Sherwin dragged these "resource-strapped local governmental entities" into this

13  action, without (apparently) performing the factual investigation mandated by Rule

14  11, that Office Depot was forced to issue subpoenas to develop evidence to rebut the

15  claims Mr. Sherwin purports to bring on behalf of the Real Parties.

16      Moreover, Plaintiffs' accusation that government officials would perjure

17  themselves rather than respond to lawful subpoenas—and that Office Depot

18  affirmatively invited such perjury— Pls.' Mem. at 5 n.2, is an outrageous smear

19  unsupported by the record.  As Plaintiffs are well aware, U.S. Communities

20  administered a variety of contracts in which governmental entities could participate,

21  ranging from artificial turf to auto parts, for a host of suppliers other than Office

22  Depot.  As the founder of U.S. Communities testified, the mere fact that a particular

23  governmental entity registered with U.S. Communities does not mean that the entity

24  chose to purchase office supplies pursuant to the Master Agreements between Office

25  Depot and L.A. County.  *See* Lund Decl., Ex. 1 at 60:4-24.[13]  Furthermore—and as

26  ─────────────────
    [13] Even Plaintiffs admit that mere membership in U.S. Communities does not prove
27  that purchases were made pursuant to the Master Agreements, acknowledging that,
    at least for a subset of subpoena recipients, such a declaration would be true. Pls.'
28  Mem. at 5 n.2 (contending declaration would be contrary to evidence "in the vast

1    Plaintiffs are also well aware—the Master Agreements were non-exclusive, meaning

2    any governmental entity (including one that was a member of U.S. Communities)

3    could choose to buy some, all, or none of its office supplies pursuant to the Master

4    Agreements' pricing. *See* Lund Decl., Ex. 2 at 353:12-354:4; Ex. 1 at 60:25-62:24.

5        Indeed, documents provided in response to Office Depot's subpoenas confirm

6    that (precisely as Office Depot has contended) some governmental entities—even if

7    registered with U.S. Communities—chose to purchase office supplies from Office

8    Depot through individual bids rather than by piggybacking on the Master

9    Agreements. *See, e.g.*, Lund Decl., Ex. 3. While administrative fees might have

10   been paid by Office Depot to U.S. Communities for such sales, such sales would not

11   be sales pursuant to the Master Agreements. *See* Ex. 2 at 54:21-55:9.

12       Sworn declarations and other statements provided by the purported Real

13   Parties in response to Office Depot's subpoenas suggest that Plaintiffs' true concern

14   rests not with the supposed burden on the responding entities, but with the fact that

15   the evidence those entities provided largely rebuts, rather than supports, Mr.

16   Sherwin's allegations. A handful of examples suffice to prove the point—and to

17   demonstrate the significant individualized issues presented by the claims of the non-

18   intervening Real Parties:

19       • "In the entire time that I have been employed as Purchasing Manager for

20         the City of Orange [16 and one half years] all office supply purchases for

21         the City have been made through Office Max. The City of Orange has not

22         and does not purchase supplies through Office Depot." Lund Decl., Ex. 4,

23         ¶ 2.

24   
---

25   majority of cases"—*i.e.*, not all). Office Depot obviously could not tailor the cover
     letter included in each of the hundreds of subpoenas sent to the Real Parties that Mr.

26   Sherwin claims to represent, nor do the rules of discovery require it to pre-determine
     what responsive information each entity might (or might not) have. Instead, the

27   cover letter properly reflected that the parties could respond to the subpoena by
     producing documents or, if the subpoena did not apply to them, they could provide a

28   declaration to that effect. *See* S. Hasegawa Decl. [Dkt. No. 145-3], Ex. B at 74.

- "The City [of San Clemente] was not a member of U.S. Communities Government Purchasing Alliance during the above referenced period. Consequently, the City did not purchase products from Office Depot pursuant to Office Depot's contract with Los Angeles County as lead agency for the U.S. Communities Government Purchasing Alliance.  The above notwithstanding, Office Depot did represent to the City that they would match the pricing they made available to cities that were members of U.S. Communities Government Purchasing Alliance." Lund Decl., Ex. 5, ¶3.

- "I personally reviewed all of the Water Authority office supply purchase records for the relevant time period.  I found no evidence of Water Authority participation in the Los Angeles contract at issue in this matter." Lund Decl., Ex. 6, ¶ 3.

- "The County's primary contract for office supplies has been with either Boise/Office Max or Staples for the last 20 years.  Since 2002, according to the financial system, the County has made 81 low dollar purchases from Office Depot for purchases in response to a County of Riverside Quote or one time or rush needs that were not tied to any contract or agreement." Lund Decl., Ex. 7.

- "When we made purchases or established prices on behalf of school districts, the prices were based on our own negotiations directly with Office Depot.  The Contra Costa County Office of Education never purchased products pursuant to Office Depot's contract with Los Angeles County as a lead agency for the U.S. Communities Government Purchasing Alliance." Lund Decl., Ex. 8.

Moreover, contrary to Plaintiffs' false dichotomy, every governmental entity had another choice, beyond responding to Office Depot's supposedly burdensome

1 subpoena or issuing a purportedly false declaration:  objecting to the subpoena under

2 any of the grounds provided by Rule 45.  Contrary to Plaintiffs' claims that Office

3 Depot's subpoenas imposed an enormous burden on the recipients, the vast majority

4 of governmental entities chose not to object at all and instead produced responsive

5 documents.[14]

6         **b.**     **Plaintiffs' Plan To Limit Evidence at Trial Does Not**

7               **Pass Constitutional Muster.**

8       In support of their proposal to try the claims of their six "best" Real Parties

9 first, and then impose the outcome of that trial as a "binding resolution" on a host of

10 issues as to all other Real Parties, Plaintiffs rely on a similar order entered in the

11 *Armenta* case in California state court in 2000.  Pls.' Mem. at 15.  That decision was

12 never subject to validation on appeal, and recent authority from California

13 establishes that, whatever its validity in 2000, such a proposal would not be

14 acceptable now.

15       In *Duran v. U.S. Bank National Association*, 203 Cal. App. 4th 212, the

16 appellate court examined a phased trial plan in which an initial trial of roughly a

17 score of plaintiffs was held and the results were then treated as binding on the more

18 than 200 non-participating plaintiffs.  In reversing the judgment at trial, the court's

19 unequivocal conclusion was that the plan did not comport with due process:

20 "Fundamental due process issues are implicated not only by the unprecedented and

21 inconsistent use of statistical procedures in the liability and damages phases, but

22 also by the manner in which USB was hobbled in its ability to prove its affirmative

23 defense"—including through the introduction of evidence about plaintiffs other than

24 those selected to participate in the trial.  203 Cal. App. 4th at 254 & n.56; *see also*

25 *id.* at 259 ("USB claims the trial court's refusal to allow USB to introduce evidence

26

27 ───────────────
[14] Even with regard to the entities that chose to object, roughly two-thirds of such
28 entities opted to produce documents notwithstanding their objections.

to challenge the claims of the other 239 class members violated its due process rights.  We agree.").

Plaintiffs' proposal to limit Office Depot's ability to present evidence in its defense as to all Real Parties is squarely barred by *Duran*.  *See id.* at 260 ("Describing a party's fundamental right to present evidence at trial in a civil case, Witkin observes: 'One of the elements of a fair trial is the <u>right to offer relevant and competent evidence on a material issue</u>.'" (citation omitted)).  Put simply, Plaintiffs cannot have it both ways:  if they limit trial to their six "best" Plaintiffs, then the results of the trial will be limited to those six Plaintiffs as well.  For a trial to produce a "binding outcome" for all Real Parties, Office Depot must be permitted to conduct discovery, and to present evidence, as to all Real Parties.  Indeed, that is the precise result mandated by the CFCA itself, which provides that in any *qui tam* action brought under the CFCA, "the state, the political subdivision, or the qui tam plaintiff <u>shall be required to prove all essential elements of the cause of action, including damages</u>."  Cal. Gov't Code § 12654(c) (emphasis added).  Plaintiffs may not, based on evidence offered as to six Real Parties, impose CFCA liability on Office Depot as to more than 1,000 others.

**III.   If Phasing Becomes Necessary, Traditional Issue-Based Bifurcation To Resolve Common Issues Is the Best Means To Promote Efficiency and Prevent Prejudice.**

Consistent with the constitutional constraints identified by both state and federal courts, Plaintiffs may not use a trial of a limited number of Real Parties to determine Office Depot's liability as to all Real Parties.  Although there is no constitutional bar to proceeding with Plaintiffs' trial plan if the outcome is limited to those Real Parties whose claims are tried, there is also no benefit to such a trial in terms of case management and judicial efficiency.  Setting aside the complexity and likelihood of jury confusion inherent in the "Phase I" trial proposed by Plaintiffs,

1    *see supra* pp. 8-10, a trial of non-representative Real Parties would have no value as

2    a bellwether and no binding effect beyond the six Real Parties whose claims were

3    adjudicated.  As a practical matter, more trials—perhaps many more—would be

4    required before there was any chance of a global resolution of all the claims of all

5    the Real Parties.

6         Unlike the six-ring circus that Plaintiffs' proposal would result in, a more

7    traditional bifurcation—to first address common threshold issues that are potentially

8    dispositive—would have the virtue of being both efficient and consistent with due

9    process and precedent.  *See Gomez v. City of Torrance*, 438 F. App'x 626, 628 (9th

10   Cir. 2011) (finding "[t]he district court did not abuse its discretion in bifurcating the

11   trial into a statute of limitations phase and a liability phase because the statute of

12   limitations issue was dispositive");  *Jinro*, 266 F.3d at 998 (affirming bifurcation to

13   resolve contract interpretation first "because the validity of the contract directly

14   informed the resolution of the other claims");  *Clark*, 772 F. Supp. 2d at 1269

15   ("Bifurcation is particularly appropriate when resolution of a single claim or issue

16   could be dispositive of the entire case." (quoting *Drennan v. Md. Cas. Co.*, 366 F.

17   Supp. 2d 1002, 1007 (D. Nev. 2005))).  Indeed, it is issue-based bifurcation, not a

18   "Phase I" trial of all issues pertaining to a sub-group of plaintiffs such as Plaintiffs

19   propose, that is currently in use in the other CFCA trial Plaintiffs identify in support

20   of their proposal, *United States, et al., ex rel. Hendrix v. J-M Mfg. Co., et al.*, Case

21   No. EDCV 06-55-GW (PJWx) (C.D. Cal.).[15]  Plaintiffs themselves acknowledge

22   that an issues-based trial is appropriate under Rule 42(b):

23

24   _____

[15] The *Hendrix* bifurcation order demonstrates that the court in that case did not
contemplate a "binding resolution" of either liability or damages as to any particular
25   plaintiff, but instead envisioned that individual liability and damages issues would
be adjudicated through individual proof in a later trial.  *See* Ex. H to S. Hasegawa
26   Decl. [Dkt. No. 145-4] ¶ 9 ("If Plaintiffs are successful in the first phase, there will
be a second phase in which it is expected that, without limitation, the following
27   questions will be determined <u>with respect to each individual Plaintiff</u>." (emphasis
added)).

28

1    Another way to understand the preclusive effect is to treat the first-
2    phase trial as a trial of particular "separate issues" common to all
3    Real Parties (in the context of a trial of all issues as to discrete Real
4    Parties) as permitted by Federal Rule of Civil Procedure 42(b).  The
5    first-phase trial would be a trial of those issues as to all parties and
6    all Real Parties.

7    Pls.' Mem. at 11 n.3.  As noted above, however, the difference between a true
8    issues-based bifurcation, and what Plaintiffs propose—"a trial of all issues as to
9    discrete Real Parties"—is that without the participation of <u>all</u> Real Parties, a trial of
10   common issues cannot be binding on <u>all</u> Real Parties, or, consistent with due
11   process, on Office Depot as to all Real Parties.  *See In re Chevron*, 109 F.3d at
12   1020-21; *Duran*, 203 Cal. App. 4th at 260.

13       There is no dispute that certain predicate issues are common to the claims of
14   all Real Parties.  Those general issues, if not resolved as a matter of law before trial,
15   are amenable to resolution at a single trial in which all Real Parties would (via Mr.
16   Sherwin) participate—and by which all Real Parties would, as a result, be bound.
17   Such a trial would be streamlined because it would only address common issues that
18   have common answers; it would not require proof on issues that are individual to
19   each Real Party (such as whether false statements were made to a Real Party;
20   materiality; reliance; the interpretation of separate, one-off contracts; or damages).

21       As detailed above, *see supra* p. 3, the issues for which not only the question,
22   but also the answer, is common to all parties relate primarily to Office Depot's
23   contracts and Office Depot's internal conduct.  As a result, those issues could be
24   presented to a jury with testimony principally or exclusively from Office Depot
25   employees, with additional testimony potentially provided by the counterparties to
26   the two contracts at issue in Mr. Sherwin's complaint, U.S. Communities and L.A.
27   County.  Additionally, a trial focused on general issues would be shorter—and

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PHASING
23

therefore less burdensome to the jury, the Court, and the parties—than the trial of multiple multi-million-dollar claims proposed by Plaintiffs.

A bifurcation of general and specific issues would also minimize the risk of jury confusion.  Rather than being confronted with a complicated and confusing verdict form requiring resolution of nearly a score of distinct claims brought by half a dozen parties, with accompanying fact finding and damages calculations for each claim, the jury for a general-issues trial would only be required to answer a discrete number of special interrogatories.  The verdict form could then be used by the parties to make a much more informed evaluation of the strengths and weaknesses of all claims.

Further, rather than burdening any non-intervening Real Party with the time and expense of a full trial, at which it would have to prove up its individual claim, a bifurcated trial to resolve threshold issues at the outset would permit all Real Parties to make an informed decision on whether to present, in a later phase, individualized proof of liability and damages based on the general findings as applied to their individual circumstances.  At that stage, the parties and the Court could also properly discuss the use of additional case management resources to streamline the resolution of any remaining issues, including the appointment of a special master pursuant to Rule 53, or the referral of certain matters to the magistrate judge pursuant to 28 U.S.C. § 636.

## CONCLUSION

Given the possibility that the Court's resolution of various dispositive issues could radically narrow, or even eliminate, many of the parties and issues in this case, development of a trial plan at this stage is premature.  Regardless of the stage at which the Court addresses the trial plan, however, it is clear that Plaintiffs' trial plan cannot be adopted.  The plan is unconstitutional in conception and unworkable in execution, ensuring only that the Court, the parties, and the unfortunate jury will

expend enormous time and resources on a trial that, at most, will bind only the six Real Parties whose claims are presented, and serve only to delay resolution for the more than 1,000 purported Real Parties who Plaintiffs consider to be less than the "best."  Should bifurcation be necessary at all, a traditional bifurcation of common issues, consistent with settled practice in the Ninth Circuit, can be used to resolve threshold, potentially dispositive general issues for all Real Parties, thereby promoting the fundamental goal of securing a "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

Dated:  November 12, 2013        By:   */s/* Paul T. Hourihan

WILLIAMS & CONNOLLY LLP
Daniel F. Katz (*pro hac vice*)
Paul T. Hourihan (*pro hac vice*)
Beth A. Levene (*pro hac vice*)
William P. Ashworth (*pro hac vice*)
Juli Ann Lund (*pro hac vice*)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail:  dkatz@wc.com
            phourihan@wc.com
            blevene@wc.com
            washworth@wc.com
            jlund@wc.com

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS & LINCENBERG, P.C.
Gary S. Lincenberg (SBN 123058)
John K. Rubiner (SBN 155208)
Nilay U. Vora (SBN 268339)

1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone:  (310) 201-2100
Facsimile:   (310) 201-2110
E-mail: gsl@birdmarella.com
            jkr@birdmarella.com
            nuv@birdmarella.com

Attorneys for Defendant Office Depot, Inc.

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2013, I caused the foregoing document to be filed and served electronically through the CM/ECF system, and to be served via electronic mail, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), on the parties or counsel of record in this matter not designated to be served through the CM/ECF system, as set forth in the attached service list.

By:  /s/ Juli Ann Lund

Williams & Connolly LLP

**SERVICE LIST**

| | |
|---|---|
| Mark Allen Kleiman<br>Law Offices of Mark Allen Kleiman<br>2907 Stanford Avenue<br>Venice, CA 90292<br>Telephone No.: (310) 306-8094<br>Facsimile No.: (310) 406-8491<br>Email: mkleiman@quitam.org | Attorneys for Cities of Azusa, Colton, Corona, Davis, Fontana, Indian Wells, Los Angeles, Santa Maria, Shafter, and Woodland; Stanislaus County Office of Education, San Joaquin County Office of Education, Baldwin Park Unified School District, Elk Grove Unified School District, Merced Union High School District, Monrovia Unified School District, Rowland Unified School District, and Stockton Unified School District; and for Qui Tam Plaintiff David Sherwin<br><br>*[service via CM/ECF]* |
| Altomease R. Kennedy<br>McKnight & Kennedy LLC<br>Lee Plaza, Suite 1010<br>8601 Georgia Avenue<br>Silver Spring, MD 20910<br>Telephone No.:  (301) 565-5281<br>Facsimile:   (301) 565-5285<br>Email:<br>akennedy@mcknightandkennedy.com | Attorneys for Cities of Azusa, Colton, Corona, Davis, Fontana, Indian Wells, Los Angeles, Santa Maria, Shafter, and Woodland; Stanislaus County Office of Education, San Joaquin County Office of Education, Baldwin Park Unified School District, Elk Grove Unified School District, Merced Union High School District, Monrovia Unified School District, Rowland Unified School District, and Stockton Unified School District; and for *Qui Tam* Plaintiff David Sherwin<br><br>*[service via CM/ECF]* |
| Danny Yeh Chou<br>Kavita Narayan<br>Office of the County Counsel<br>70 West Hedding Street, East Wing, 9th Floor | Attorneys for County of Santa Clara<br><br>*[service via CM/ECF and email]* |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PHASING
27

| | |
|---|---|
| San Jose, CA 95110-1770<br>Telephone No.: (408) 299-5930<br>Facsimile No.: (408) 292-7240<br>Email: danny.chou@cco.sccgov.org<br>        kavita.narayan@cco.sccgov.org | |
| Laurie Rittenberg<br>Managing Assistant City Attorney<br>Los Angeles City Attorney's Office<br>800 City Hall East<br>200 N. Main Street<br>Los Angeles, CA 90012<br>Telephone No.: (213) 473-6848<br>Facsimile No.: (213) 473-6818<br>Email: Laurie.Rittenberg@lacity.org | Attorneys for City of Los Angeles<br><br>*[service via CM/ECF]* |
| G. Ross Trindle, III<br>Best Best & Krieger, LLP<br>300 South Grand Ave., 25th Floor<br>Los Angeles, CA 90071<br>Telephone No.: (213) 617-8100<br>Facsimile No.: (213) 617-7480<br>Email:  Ross.Trindle@bbklaw.com | Attorneys for Cities of Azusa, Colton, Corona, Davis, Fontana, Indian Wells, Shafter, and Woodland; and Elk Grove Unified School District.<br><br>*[service via CM/ECF]* |
| City of Santa Maria<br>Wendy Stockton<br>Telephone No.: (805) 925-0951<br>Facsimile No.: (805) 928-1275<br>Email:<br>wstockton@ci.santa-maria.ca.us | Attorney for City of Santa Maria<br><br>*[service via CM/ECF]* |
| Chesley D. Quaide<br>Atkinson, Andelson, Loya, Ruud & Romo<br>5075 Hopyard Road, Suite 210<br>Pleasanton, CA 94588<br>Telephone No.: (925) 227-9200<br>Facsimile No.: (925) 227-9202<br>Email: cquaide@aalrr.com | Attorneys for San Joaquin County Office of Education, Stanislaus County Office of Education, Stockton Unified School District, and Merced Union High School District<br><br>*[service via email]* |

| | |
|---|---|
| Eric R. Havian<br>Stephen Hasegawa<br>Edward H. Arens<br>Phillips & Cohen LLP<br>100 The Embarcadero, Suite 300<br>San Francisco, CA 94105<br>Telephone No.: (415) 836-9000<br>Facsimile No.: (415) 836-9001<br>Email:  erh@pcsf.com<br>            ssh@pcsf.com<br>            eha@pcsf.com | Attorneys for the County of Santa Clara; the Cities of Azusa, Colton, Corona, Davis, Fontana, Indian Wells, Los Angeles, Santa Maria, Shafter, and Woodland; Stanislaus County Office of Education, San Joaquin County Office of Education, Baldwin Park Unified School District, Elk Grove Unified School District, Merced Union High School District, Monrovia Unified School District, Rowland Unified School District, and Stockton Unified School District; and for Qui Tam Plaintiff David Sherwin<br><br>*[service via CM/ECF]* |
| Robert J. Nelson<br>Lexi J. Hazam<br>Lin Y. Chan<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111-3339<br>Telephone No.:(415) 956-1000<br>Facsimile No.: (415) 956-1008<br>Email:  rnelson@lchb.com<br>            lhazam@lchb.com<br>            lchan@lchb.com | Attorneys for the County of Santa Clara; the Cities of Azusa, Colton, Indian Wells, Los Angeles, and Santa Maria; Stanislaus County Office of Education, San Joaquin County Office of Education, Merced Union High School District, and Stockton Unified School District; and for Qui Tam Plaintiff David Sherwin<br><br>*[service via CM/ECF]* |
| Dean R. Derleth<br>City Attorney's Office<br>400 South Vicentia Avenue<br>Corona, CA 92882<br>Telephone No.: (951) 279-3525<br>Facsimile No.: (213) 617-7480<br>Email:  dean.derleth@ci.corona.ca.us | Attorney for the City of Corona.<br><br>*[service via CM/ECF]* |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PHASING